UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

BRAINWAVE SCIENCE, INC,

COGAN, J.

Case Number: CV 21 - 4402

Plaintiff,

-v-

**COMPLAINT FOR THEFT OF
TRADE SECRETS**

**JURY DEMAND**

ARSHEE, INC., DR. LAWRENCE A. FARWELL,

DR. THIERRY MAISON and

BRAIN FINGERPRINTING FOUNDATION,

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   AUG - 5 2021   ★

Defendants.

BROOKLYN OFFICE

---------------------------------------------------------------X

Plaintiff Brainwave Science, Inc. ("Plaintiff" or "BWS") has developed a technology which it hopes will assist authorities in conducting humane questioning of subjects and exonerating wrongfully accused or convicted persons. The technology (iCognative®) involves measuring brainwave ("P300") responses to ascertain whether certain information is or is not present within a person's brain.  Confirming the existence of information known only to a guilty party will allow investigative agencies to conduct more focused investigations. Alternatively, confirming the absence of information necessarily known by a guilty party will allow investigative agencies to quickly clear innocent suspects and even exonerate wrongfully-convicted persons.

Complaint - 1
No.

Dr. Lawrence Farwell ('Farwell") was employed by BWS' predecessor in interest, Brainwave Science, LLC ("BWS, LLC") as Chief Scientific Officer from 2012 until November 2016. During this time, Farwell conveyed several patents related to P300 technology to BWS LLC. Subsequent to his separation from BWS, LLC, Farwell published defamatory statements about BWS, including assertions that BWS did not hold legal title to the afore-referenced patents. BWS subsequently initiated a declaratory action in New York State. That action remains pending. The subject patents have since expired.

While the underlying technology utilizing P300 "brainwaves" is not proprietary to BWS, the company has expended significant time and resources in developing proprietary code and user interface(s) to implement the technology within a system that is accurate, fast and more-readily utilized by investigators in the field. Defendant Dr. Thierry Maison ("Maison") is a former Chief Technology Officer for BWS.    From June 2013 until February 2019, Maison led BWS' Development Team's efforts in refining the algorithms and source code used by BWS' system and providing "back end" programming.  Maison also served as the architect for BWS' user interfaces.

BWS went to significant lengths to protect the intellectual property created and refined by Maison and his team during his employment with BWS.   Upon hire, Maison entered into an Employment Agreement, Non-Disclosure and Non-Competition Agreement and Confidentiality and Rights Agreement.   Upon separation, Maison entered into a Separation Agreement wherein Maison explicitly acknowledged his ongoing obligations under the Employment Agreement, Non-Disclosure and Non-Competition Agreement and Confidentiality and Rights Agreements.

In July 2020, BWS' outside counsel forwarded a dunning notice from a manufacturer of headset and other peripherals.  The dunning notice was directed to Farwell and Maison jointly. The sender had mistakenly believed that our counsel represented Farwell.  The dunning notice

Complaint - 2
No.

indicates that Farwell, Maison and their respective companies were acting in concert in ordering components necessary to develop a P300-related system.

In April 2021, BWS submitted final documents to bid on a tender for sale of its iCognative® system to a law enforcement agency in Bangladesh.  BWS was advised by its Bangladesh sales partner that Farwell submitted a competing bid to the same Bangladesh agency in conjunction with New York company, Arshee, Inc ("Arshee").  BWS received reports from the potential client that the user interface utilized by Farwell's and Arshee's product was identical to the interface designed and implemented by Maison during his employment with BWS.  BWS' technology team members subsequently located an online demonstration video made by Farwell in August 2019.  In the video, Farwell is seen demonstrating a system with a nearly identical user interface to that designed by Maison for BWS.  On June 28, 2021, upon being confronted with the findings of BWS' investigation, Maison admitted to, and provided evidence of, his transfer of code and user interfaces to Farwell. BWS' development team subsequently engaged an outside Code Similarity Checker, Codequiry®, to perform a "Measure Software Similarity" analysis to confirm whether and/or the degree to which Farwell's "Brain Fingerprinting" software is copied from BWS' iCognative®. Codequery's analysis indicates a 99% likelihood of "plagiarism" by Farwell's software.

By correspondence dated June 30, 2021, BWS placed Arshee, and its Bangladesh Partner, Tracer Electrocom, on notice that the system it was marketing and distributing on behalf of Farwell and Brain Fingerprinting Foundation incorporated BWS' Trade Secrets which had been stolen or appropriated, obtained, or converted without BWS' authorization.  To date, neither Arshee nor Tracer Electroform have responded to the correspondence.   Upon information and belief, both Arshee and Tracer Electroform continue to market and distribute the system incorporating BWS'

Trade Secrets which had been stolen or appropriated, obtained, or converted without BWS' authorization.

Given Defendants' misconduct and repeated attempts continue to market and distribute a system incorporating BWS' Trade Secrets which had been stolen or appropriated, obtained, or converted without BWS' authorization, BWS seeks, *inter alia*, injunctive relief and otherwise alleges as follows:

**PARTIES**

1.      Plaintiff Brainwave Science, Inc., ("BWS") is a Delaware Corporation duly registered as a Foreign Corporation within the State of Massachusetts.  BWS maintains a principal place of business at 257 Turnpike Rd, Southborough, Massachusetts, 01772.

2.      Upon information and belief, Defendant Arshee, Inc. ("Arshee") is a New York Corporation with a principal place of business at 106-14 156th Street, 1 Floor, Jamaica, New York, 11433.

3.      Upon information and belief, Defendant Dr. Lawrence A. Farwell ("Farwell") is an adult resident of the State of Washington last known by BWS to be residing at 6838 47TH Avenue, Seattle, Washington, 98115.

4.      Upon information and belief, Defendant Dr. Thierry Maison ("Maison") is an adult resident of the State of Massachusetts last known by BWS to be residing at 7 Gloucester Drive, Franklin, Massachusetts, 02038.

5.      Upon information and belief, Defendant Brain Fingerprinting Foundation. ("BFF") is a Washington State entity with a principal place of business at 14903 72nd Avenue West, Edmonds, Washington 98026.  Upon further information and belief, Defendant Farwell serves as the Chief Executive Officer ("Governor") for Defendant Brain Fingerprinting Foundation.

Complaint - 4
No.

## JURISDICTION AND VENUE

6.     The Court has federal-question jurisdiction under 28 U.S.C. § 1331, by virtue of Plaintiff's

claim alleging a violation of the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1832-1839. 18

U.S.C. § 1836(c) specifically provides for federal-court jurisdiction in this case.

7.     The Court has supplemental jurisdiction over Plaintiff's state and common law claims

under 28 U.S.C. § 1367(a), as such claims form part of the same case or controversy under Article

III of the United States Constitution.

8.     The Court has personal jurisdiction over the parties, and venue in this judicial district is

proper under 28 U.S.C. § 1391(b)(2) or 28 U.S.C. § 1391(b)(3). Upon information and belief, a

substantial part of the events or omissions giving rise to the claim occurred within the judicial

district of this Court.   If, and to the extent that, it is determined that a substantial part of the events

or omissions giving rise to this claim did not occur within a particular jurisdiction, venue is proper

under 28 U.S.C. § 1391(b)(3).

## FACTS

9.     BWS is in the business of development, marketing and sales of technology solutions to

international government agencies, and their respective vendors, in the National Security,

Counterterrorism, Border Security, Human and Drug Trafficking, Criminal Justice, and

Immigration Control sectors.

10.    Brainwave Science, Inc., has developed a technology to assist authorities in conducting

humane questioning of subjects and exonerating wrongfully accused or convicted persons. The

technology, iCognative®, involves measuring "P300" brainwave responses to confirm that certain

information is or is not present within a person's brain.

11.     The underlying technology utilizing P300 "brainwaves" is not proprietary to BWS. However, BWS has expended significant time and resources in developing proprietary code and user interface(s) to implement the technology within a system that is accurate, fast and more-readily utilized by law enforcement investigators in the field.

12.     Farwell served as BWS, LLC's Chief Scientific Officer from 2012 until November 2016. Farwell also maintained a minority membership interest in the company during this time period and was fully aware of the measures taken by BWS LLC to protect its trade secrets.

13.     Maison served as the Chief Technology Officer for BWS from June 2013 to February 2019. As Chief Technology Officer, Maison led BWS' Development Team's efforts in refining the algorithms used by BWS' system and provided "back end" programming.  Maison also served as the architect for BWS' user interfaces. Maison, who had more than thirty-five years of engineering experience in the areas of telecommunications, medical imaging, information technology, and identity security, maintained primary responsibility for development of BWS' proprietary code and user interfaces.

14.     The proprietary system developed by Maison and BWS' technology team successfully addressed a number of problems which had previously prevented the effective use of P300-related technology by field agents.    For instance, the code/algorithms developed by Maison and the technology team eliminated "noise" which could provide false positive or negative responses.

15.     BWS, LLC and BWS took substantial measures to protect its developed software, user interfaces and code/algorithms.  BWS LLC and BWS located its office space and headquarters with its affiliate company, Government Works, Inc., a prime contractor for CMS and vendor for the Department of Commerce, Department of Veterans Affairs, Department of Energy and Defense Information Systems Agency.  At all relevant times hereto, the shared facility also housed

servers, network hardware and a direct Verizon MPLS Circuit to CMS.  The physical security precautions at the location included visitor control systems, alarming / self-locking doors and live security personnel.  BWS LLC and BWS limited access to its developed software, user interfaces and code/algorithms on a "need to know" basis.  All employees, vendors, sales partners and potential clients are required to execute confidentiality and non-disclosure agreements.

16.     On September 23, 2013, Maison entered into an Employment Agreement, Non-Disclosure and Non-Competition Agreement and Confidentiality and Rights Agreement with BWS, LLC. Paragraphs 5 and 6 of the Non-Disclosure and Non-Competition Agreement provide that all inventions, "know-how" etc. developed by Maison in the course of his employment remain the property of BWS.

17.     While employed by BWS, LLC and BWS, Maison was given high-level access to a wide variety of BWS' most confidential, proprietary, and trade secret information ("BWS Trade Secrets").  These BWS Trade Secrets include, but were not limited to, intellectual property related to BWS' new and developmental products and operations information. Maison was given high-level access to this information for the sole purpose of discharging his responsibilities for BWS, LLC and BWS.

18.     In February 2019, Maison entered into a Separation Agreement with BWS.  Maison was paid substantial consideration in exchange for his execution of the Separation Agreement wherein Maison acknowledged his continuing obligation(s) to comply with the terms of the Employment Agreement, Non-Disclosure and Non-Competition Agreement and Confidentiality and Rights Agreements.

19.     In July 2020, BWS' outside counsel forwarded a dunning notice from a manufacturer of headset and other peripherals.  The dunning notice was directed to Farwell and Maison jointly.

The sender had mistakenly believed that BWS' counsel represented Farwell.  The dunning notice indicates that Farwell, Maison and their respective companies were acting in concert in ordering components necessary to develop a P300-related system.

20.     In April 2021, BWS submitted final documents to bid on a tender for sale of its iCognative® system to a law enforcement agency in Bangladesh.

21.     Upon information and belief, Farwell submitted a competing bid to the same Bangladesh agency in conjunction with New York company, Arshee, Inc ("Arshee").   Upon further information and belief, the President of Arshee, Mr. Abul Kalam Azad, is a Principal and "Special Envoy" at the Bangladesh Prime Minister's Office.

22.     BWS received reports from the potential client that the user interface utilized by Farwell's and Arshee's product was identical to the interface designed and implemented by Maison during his employment with BWS.

23.     BWS' technology team members subsequently located an online demonstration video made by Farwell in August 2019.   In the video, Farwell is seen demonstrating a system with a nearly identical user interface to that designed by Maison for BWS.

24.     On June 28, 2021, upon being confronted with the findings of BWS' investigation, Maison admitted to, and provided evidence of, his transfer of code and user interfaces to Farwell. BWS' development team subsequently engaged an outside Code Similarity Checker, Codequiry®, to perform a "Measure Software Similarity" analysis to confirm whether and/or the degree to which Farwell's "Brain Fingerprinting" software is copied from BWS' iCognative®. Codequery's analysis indicates a 98-99% likelihood of "plagiarism" by Farwell's software.

25.     By correspondence dated June 30, 2021, BWS placed Arshee, and its Bangladesh Partner, Tracer Electrocom, on notice that the system it was marketing and distributing on behalf of Farwell

and Brain Fingerprinting Foundation incorporated BWS' Trade Secrets which had been stolen or appropriated, obtained, or converted without BWS' authorization.

26.     To date, neither Arshee nor Tracer Electroform have responded to BWS' correspondence.

27.     Upon information and belief, both Arshee and Tracer Electroform continue to market and distribute the system incorporating BWS' Trade Secrets which had been stolen or appropriated, obtained, or converted without BWS' authorization.

28.     In the course of its investigation, BWS has also learned that Farwell has also surreptitiously distributed or licensed copies of a system, incorporating the BWS Trade Secrets, to the Clinical Legal Studies Department at University of Canterbury, New Zealand.

29.     Also, upon information and belief, Farwell surreptitiously distributed or licensed copies of a system, incorporating the BWS Trade Secrets, to the Forensic Science Laboratory for the Government of Delhi, India.  Upon information and belief, that agency paid Farwell in excess of $60,000.00 for the system incorporating the BWS Trade Secrets.


## FIRST CAUSE OF ACTION
### (Theft of Trade Secrets:  Defend Trade Secrets Act, 18 U.S.C. § 1832, *et seq.*)

30.     Plaintiff repeats and realleges each allegation above as though set forth fully herein.

31.     The BWS Trade Secrets constitute trade secrets within the meaning of 18 U.S.C. § 1839(3) because they derive independent economic value as a result of not being generally known, and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use.

32.     Plaintiff has taken reasonable measures to protect the secrecy of the BWS Trade Secrets, including limiting access to individuals and entities subject to duties of confidence and

with a need to know specific BWS Trade Secrets, restricting access to computer systems and physical locations where the BWS Trade Secrets are stored, and using passwords and physical security measures to restrict access to the BWS Trade Secrets.

33.     Defendant Maison's misappropriation of the BWS Trade Secrets was without BWS' permission

34.     Defendant Maison's use and disclosure of the BWS Trade Secrets was against BWS' express instructions to, and agreement with, Defendant Maison.

35.     Defendant Farwell, as a former executive and minority member of BWS, LLC, was fully aware of measures taken by BWS in order to protect the secrecy of BWS' trade secrets.

36.     Defendant BFF, by and through Defendant Farwell, received, purchased or, at a minimum, possessed, the BWS Trade Secrets knowing the same to have been stolen, appropriated, obtained, or converted without authorization.

37.     Upon information and belief, Defendant Arshee Inc., at a minimum, is continuing in its efforts to market and distribute the BWS Trade Secrets despite now knowing the same to have been stolen, appropriated, obtained, or converted without authorization.

38.     Plaintiff has suffered, is suffering, and will continue to suffer irreparable harm as a result of Defendants' misappropriation and ongoing possession, use, and/or disclosure of the BWS Trade Secrets. Upon information and belief, Defendants do not have the financial wherewithal to satisfy a monetary judgment for all of the damages suffered by BWS, such that BWS has no adequate remedy at law and is entitled to an injunction requiring return of and prohibiting any further use or disclosure of the BWS Trade Secrets or any information derived therefrom, pursuant to 18 U.S.C. § 1836(b)(3)(A).

39.     Plaintiff is entitled to recover an award of damages for actual loss caused by Defendants' unauthorized misappropriation, disclosure, and/or use of the BWS Trade Secrets, including, but not limited to, lost market share and profits.

40.     Plaintiff is further entitled to recover any unjust enrichment not already computed with actual loss that was received by Defendant as a result of unauthorized misappropriation, disclosure, and/or use of the BWS Trade Secrets.

41.     Because Defendants willfully and maliciously misappropriated the BWS Trade Secrets, BWS is entitled to recover an award of exemplary damages up to two times the sum of actual loss and unjust enrichment damages and an award of its attorney's fees pursuant to 18 U.S.C. § 1836(b)(3)(C)-(D).

42.     Finally, Defendants have caused and will continue to cause serious and irreparable damage to BWS for which BWS is without adequate remedy at law. BWS is entitled to an injunction preventing Defendants or anyone benefiting from their unlawful acts from continuing to possess, or use information derived from, the stolen BWS Trade Secrets.

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, BWS requests that this Court enter judgment against Defendants awarding:

1.  A judgment against Defendant for injunctive and equitable relief;

2.  A monetary judgment in an amount to be determined at trial;

3.  An Order requiring Defendants to identify all persons and entities to whom they have

disclosed BWS Trade Secrets, the date of such disclosure, and the method and means of disclosure;

4.  An Order enjoining Defendant from the continued possession, use, or disclosure of BWS Trade Secrets and other confidential information;

5.  Costs of suit, including attorney's fees under 18 U.S.C. § 1836(b)(3)(D);

6.  Exemplary damages under 18 U.S.C. § 1836(b)(3)(C);

7.  Interest, costs, and such other relief as the Court may deem just and equitable.


Dated this 19th Day of July, 2021

By:  *Paul F. Tomkins*
_____
Paul F. Tomkins, Esq.
NDNY, Bar Roll No. 513006
*(pro hac vice petition to be submitted)*
11 Broadway, Suite 615,
New York, NY 10004
Telephone: (607) 221-1279
pault@pftlaw.com

Complaint - 12
No.