# Paul Forrest Tomkins, Esq.
11 Broadway, Suite 615, New York, NY 10004
607-221-1279 - pault@pftlaw.com

September 16, 2021

Honorable Brian M. Cogan
United States District Court Judge
U.S. Eastern District, New York
225 Cadman Plaza East
Brooklyn, NY 11201

                        RE:    Brainwave Science, Inc. v. Arshee, Inc. et al
                                Case Number: 1:21-cv-04402-BMC
                                **Initial Status Conference**

Dear Judge Cogan,

      Pursuant to the Court's direction, please allow this correspondence to serve as the Plaintiff's and Defendants' joint letter to chambers in advance of the Initial Status Conference scheduled to be held telephonically on September 21, 2021 at 1:30 PM.

## Represented Parties

      Plaintiff Brainwave Science, Inc. appears by the undersigned Paul F. Tomkins, Esq. Defendants Brain Fingerprinting Foundation, Lawrence A. Farwell and Thierry Maison appear by the undersigned Joseph W. Carbonaro, Esq. Service upon Arshee, Inc. was delayed as their corporate address was incorrectly reported to the New York Secretary of State. Arshee, Inc. was ultimately served pursuant to NY BCL 306 by service upon the New York Secretary of State on August 31, 2021. To date, Arshee, Inc. has neither appeared in this action nor otherwise been in contact with the undersigned.

## Summary of Factual and Procedural History

      As outlined within Plaintiff's Complaint, Brainwave Science, Inc. ("BWS") is in the business of developing and marketing a technology which allows investigators to verify whether a test subject "recognizes" a particular stimulus. The technology (iCognative®) involves measuring brainwave ("P300") responses to photographs displayed in succession on a computer

screen. Confirming the existence of information known only to a guilty party will allow investigative agencies to conduct more focused investigations. Alternatively, confirming the absence of information necessarily known by a guilty party will allow investigative agencies to quickly clear innocent suspects and even exonerate wrongfully convicted persons.

The utilization of P300 "brainwaves" to determine the presence or absence of information within a subject's mind is not proprietary to BWS. P300 brainwave testing techniques are the subject of several now-expired patents and have been addressed within numerous publicly available scientific studies and journal publications. However, as with many new or emerging scientific innovations, the challenge in bringing P300 technology to market lies not within the technology itself but in creating a mechanism or system which allows a user to utilize the technology without years of training or technical expertise. The ultimate goal is to accomplish within the P300 field what Microsoft Windows® has accomplished within the field of microcomputing - creating a P300 system that can be utilized by investigators in the field as opposed to neuroscientists with years of training.

BWS expended substantial time and resources to in developing proprietary code and user interface(s) to implement P300 technology within a system that is accurate, scaled and more-readily utilized by investigators without extensive scientific training. These efforts included engaging Defendant Dr. Thierry Maison ("Maison") as Chief Technology Officer for BWS. From June 2013 until February 2019, Maison led BWS' Development Team's efforts in refining the algorithms and source code used by BWS' system and providing "back end" programming. Maison also served as the lead architect for BWS' user interfaces. As outlined within its Complaint, BWS, LLC and BWS took substantial measures to protect its developed software, user interfaces and code/algorithms. These measures included maintaining and operating all code relating to its programs on "the cloud" to avoid potential copying by clients and competitors. BWS also required all employees, vendors, sales partners and potential clients to execute confidentiality and non-disclosure agreements prior to operating the system.

Defendant Dr. Lawrence Farwell ('Farwell") was employed by BWS' predecessor in interest, Brainwave Science, LLC ("BWS, LLC") as Chief Scientific Officer from 2012 until in our about November 2016. Upon being engaged by BWS LLC, Farwell conveyed several patents and intellectual property related to P300 technology to BWS, LLC. In or about June of 2016, BWS, LLC's management and associates received correspondence from a previously unknown entity, Life Science and Technology, LLC (LST). Within that correspondence, LST asserted that it was the rightful owner of the afore-referenced patents and intellectual property. During its subsequent investigation, BWS, LLC learned that Farwell had surreptitiously filed documents with the USPTO on behalf of BWS, LLC reconveying those patents to LST. Within subsequent sworn statements, Farwell acknowledged that he himself had authored the cease and desist and demand for damages purportedly sent to BWS, LLC by LST. Farwell was subsequently discharged and removed from BWS, LLC for fraud. After his separation from BWS, LLC, Farwell published defamatory statements about BWS, LLC and BWS, including allegations that BWS did not hold legal title to the afore-referenced patents and intellectual property. BWS subsequently initiated a declaratory action in New York State in connection with its agreements with Farwell to acquire

the afore-referenced patents and intellectual property. While the patents have since expired, that action remains pending.

As outlined within its Complaint, in April 2021, BWS submitted final documents to bid on a tender for sale of its system to a law enforcement agency in Bangladesh. BWS was advised by its Bangladesh sales partner that Farwell submitted a competing bid to the same Bangladesh agency in conjunction with New York company, Defendant Arshee, Inc ("Arshee") and a Bangladesh company, Tracer Electrocom (Tracer). Public filings for both Tracer and Arshee list a Mr. Abdul Azad ("Azad") as registered agent and "contact person". Upon information and belief, Azad also serves as the Principal Secretary for the Bangladesh Government.

BWS' Bangladesh sales partner reported that the user interface utilized by Farwell's and Arshee's product was identical to the interface designed and implemented by Maison during his employment with BWS. During its subsequent investigation, BWS located an online demonstration video made by Farwell wherein Farwell is seen demonstrating a system with a nearly identical user interface to that designed by Maison for BWS. Maison subsequently admitted to, and provided evidence of, his transfer of code and user interfaces to Farwell subsequent to Maison's 2019 separation from BWS. BWS' development team subsequently engaged an outside Code Similarity Checker, Codequiry®, to perform a "Measure Software Similarity" analysis to confirm whether and/or the degree to which Farwell's "Brain Fingerprinting" software is copied from BWS' iCognative®. Codequery's analysis indicates a 99% likelihood of "plagiarism" by Farwell's software.

## Jurisdiction, Venue and Legal Basis for Claims

Plaintiff brings the present action under the "Defend Trade Secrets Act" (18 U.S.C. 1832). Plaintiff alleges that the "BWS Trade Secrets", which include, but are not limited to, its code and user interfaces, constitute trade secrets within the meaning of 18 U.S.C. § 1839(3) because they derive independent economic value as a result of not being generally known, and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use.

As outlined within its Complaint, this Court has federal-question jurisdiction under 28 U.S.C. § 1331, by virtue of Plaintiffs claim alleging a violation of the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1832-1839. This Court has personal Jurisdiction over the parties, and venue in this Judicial district is proper under 28 U.S.C. § 1391(b)(2) or 28 U.S.C. § 1391(b)(3). Upon information and belief, a substantial part of the events or omissions giving rise to the claim occurred within the Judicial district of this Court. If, and to the extent that, it is determined that a substantial part of the events or omissions giving rise to this claim did not occur within a particular Jurisdiction, venue is proper under 28 U.S.C. § 1391(b)(3).

## Contemplated Motions

Plaintiff's and Defendant's Counsel have had brief opportunity to discuss this case since Defendant's Counsel's appearance on September 13, 2021. We will attempt to resolve any disputes relating to discovery and interim relief prior to the September 21, 2021 conference. Plaintiff's contemplated requests for relief include:

a) an interim Order enjoining Defendants from the continued possession, use, or disclosure of BWS Trade Secrets and other confidential information;

b) an Order requiring Defendants to identify all persons and entities to whom they have disclosed BWS Trade Secrets, the date of such disclosure, and the method and means of disclosure;

c) an Order requiring Defendants to preserve all electronic and other evidence and

d) a protective Order prohibiting, or otherwise providing parameters for, disclosure to third parties of proprietary code and other trade secret materials exchanged in discovery or settlement negotiations.

## Defendant Farwell and Maison's Position

As indicated above, counsel for defendants Farwell, Maison and the Brain Fingerprinting Foundation appeared only two days ago and has had little time to review this matter in great detail. With that in mind, defense counsel's understanding is that much of the intellectual property alleged to belong to BWS was in the public domain when utilized by these defendants. The brainwave science technology was *ab initio* developed by defendant Farwell alone and then patented by him. He wrote about it in scientific journals and disclosed the underpinnings of the technology in detail before ever meeting or contracting with BWS. Defendant Maison utilized technology that defendant Farwell had already placed in the public domain. Defendants may take the position that there was nothing unique about the combination of technologies, methods, software and intellectual property taken from the public domain to transform it into a new, protected form of IP. The systems that Farwell and Maison used prior to involvement with BWS have all the same features as those used by BWS, as did dozens of systems used by others.

There is also a question as to the consideration received by Farwell and Maison. While I have yet to review documents that are relevant to this potential defense, Farwell and Maison may take the position that BWS breached its contract with them by failing to pay agreed upon consideration.

With respect to any technology, intellectual property or existing patents BWS in fact owns, Farwell and Maison have no interest in using these and would agree not to do so if the parties can agree upon and specifically define exactly what IP is owned by BWS, what is owned by Farwell/Maison and what is in the public domain and therefore not protected by law. As a preliminary matter, it is my belief that these defendants would agree, as part of a global settlement, to an Order prohibiting them from using BWS's IP under these conditions. The impediment may

be reaching an agreement with BWS in regard to precisely what they rightfully own and can protect from use by others. Any agreement would have to permit Drs. Farwell and Maison to use the brain fingerprinting technology in their own businesses. I would also note, as stated in the Complaint, these defendants are individuals and have very limited funds for purposes of paying money damages. Frankly, any money judgment would be difficult to impossible to enforce because there is nothing to seize or attach. Obviously, no insurance policy covers the acts alleged in the complaint. For that reason, the most practical settlement, if one is to be reached, would be by way of equitable remedies.

The Court should also know that there is a parallel action between BWS, as plaintiff, and Farwell, as defendant, pending in New York County Supreme Court. The undersigned attorneys also represent their respective clients here in that action. There have also been arbitration proceedings brought by various parties in which counsel for Farwell and Maison herein was not involved. Hence the "global settlement" contemplated above would have to include all pending actions and proceedings between these parties.

Finally, with respect to potential motions, it may well be that defendants will move for summary judgment after completion of discovery. I should hope to avoid any disputes with counsel for BWS as we work cooperatively to complete discovery, but I am cognizant that certain material we may request might well be subject to a protective order due to its sensitive and confidential nature. We would consent to such an order should the Court be inclined to grant it.

Defendants reserve the right to move to change venue. Farwell and Brain Fingerprinting Foundation are domiciled in Washington State; Maison is domiciled in the State of Massachusetts, as is BWS. Farwell and Maison are unsure of where defendant Ashree is domiciled or whether it even has a principal place of business to invoke venue in this District. Venue may be more proper in the District of Massachusetts or elsewhere. Upon further investigation, defendants will determine if such a motion is proper and/or advantageous.

Thank you for your attention to this matter.

    Respectfully,

    *Paul F. Tomkins*
    _____
    Paul F. Tomkins, Esq.
    *Attorney for Plaintiff Brainwave Science, Inc.*
    *11 Broadway, Suite 615*
    *New York, NY 10004*
    *(607) 221-1279*


    /s/Joseph W. Carbonaro

    Joseph W. Carbonaro, Esq.
    *Attorney for Defendants Brain Fingerprinting Foundation,*
    *Lawrence A. Farwell and Thierry Maison*
    757 Third Avenue, 20th Floor
    New York, NY 10017
    (212) 888-5200