UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
BRAINWAVE SCIENCE, INC.

                                    Plaintiff,

- against -

                                    21-cv-4402 (BMC)

ARSHEE, INC., DR. LAWRENCE A.
FARWELL, DR. THIERRY MAISON and
BRAIN FINGERPRINTING FOUNDATION

                                  Defendants.
-----------------------------------------------------------X

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE FOR A TEMPORARY INJUNCTION

Dated: New York, New York
November 19, 2021

**Paul Forrest Tomkins, Esq**.
*Attorney for Plaintiff, Brainwave Science, Inc.*
11 Broadway, Suite 615
New York, NY 10004
(607) 221-1279
pault@pftlaw.com

# LEGAL ARGUMENT

Injunctive relief is appropriate where the party seeking the injunction shows "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd,* 598 F.3d 30, 35 (2d Cir. 2010). For the reasons set forth below, Plaintiff reiterates that it has satisfied these requirements, as well as those required for relief under the Defend Trade Secrets Act (18 U.S.C. § 1832 et seq.) ("DTSA") and should be granted the temporary injunction as requested within its moving papers.

**I.     Plaintiff has demonstrated that it is likely to succeed on the merits of its claim.**

> *A. Defendant Maison admits that he violated the Defend Trade Secrets Act by <u>acquiring</u> and <u>using</u> the Plaintiff's proprietary code.*

In support of their argument that Plaintiff has not demonstrated a likelihood of success on the merits, Defendants contend that the "disputed software was complied with software already in the public domain and is not a trade secret." (ECF #24, Page 8). Defendants' own supporting affidavits belie this contention. Within his November 12, 2021 affidavit, Defendant Maison states:

> I found the entire BWS source code located in a publicly accessible directory with a google search. I created a copy and hosted it in a Visual Studio cloud-based development environment… Recognizing the [publicly accessible] software, I admitted to Mr. Tomkins only that I made a copy of it and used the non-proprietary portion of the software. (ECF 24-2, ¶21).

Defendant Maison, who previously served as the Chief Architect of Plaintiff's system, is asking this Court to believe that he did not access Plaintiff's system in connection with his former employment relationship with Plaintiff. Rather, Defendant Maison incredibly contends, that he

*Brainwave Science, Inc. v. Arshee et al (21-cv-4402 (BMC)*
*Plaintiff's Reply Memorandum of Law*
*Page 1 of 9*

located the "entire BWS Source Code" by way of a "google search" and thereafter downloaded same from an unnamed source. This assertion is incredible on its face. More importantly, contrary to Defendants' contentions, it constitutes an admission that Defendants have violated the Defend Trade Secrets Act. The Defend Trade Secrets Act provides, in relevant part that

> An owner of a trade secret that is **misappropriated** may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce. 18 U.S.C. § 1836(b)(1) (emphasis added).

The term "**misappropriation**" includes, in relevant part

> (A) **acquisition** of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (B) disclosure or **use** of a trade secret of another without express or implied consent by a person who—
> > (i) used improper means to acquire knowledge of the trade secret [or]
> > (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
> > > (I) derived from or through a person who had used improper means to acquire the trade secret;
> > > (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret [or]
> > > (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret…(18 U.S.C. §1839(5)(A-B) (emphasis added).

In short, Defendant Maison, by knowingly <u>acquiring</u> [downloading] Plaintiff's proprietary code, committed a misappropriation of Plaintiff's Trade Secrets as defined by the Defend Trade Secrets Act (18 U.S.C. §1839(5)(A)). Likewise, by knowingly <u>using</u> Plaintiff's proprietary code, Defendant Maison committed a misappropriation of Plaintiff's Trade Secrets as defined by the Defend Trade Secrets Act (18 U.S.C. §1839(5)(B)).

*Brainwave Science, Inc. v. Arshee et al (21-cv-4402 (BMC)*
*Plaintiff's Reply Memorandum of Law*
*Page **2** of 9*

B. *Defendants admit they have violated the Defend Trade Secrets Act by <u>disclosing and acquiring</u> Plaintiff's Source Code.*

Defendant Maison acknowledges that he shared portions of the misappropriated code with his co-defendants. Defendant Maison attempts to justify disclosing "the entire BWS Source Code" by assuring this Court that "the Proprietary portion of BWS software was deleted and replaced with [Defendants'] development…" (ECF 24-2, ¶21) This justification fails on two fronts. First, as outlined *supra*, Defendant Maison violated the Defend Trade Secrets Act by <u>acquiring and using</u> "the entire BWS Source Code" – irrespective of whether he ultimately deleted those portions of the code he believed to have been created by the Plaintiff. Secondly, Defendant Maison's purported deletion of that portion of the misappropriated system code developed by Plaintiff, even if demonstrated to be true, does not render the remaining compilation of code "in the public domain" and outside the scope of the DTSA. The Defend Trade Secrets Act broadly defines the term "trade secret" to include

> …all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, **compilations**, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing…(18 U.S.C. §1839(3) (emphasis added)

A trade secret is "any pattern, formula, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. *Elsevier v. Doctor Evidence, 2018 WL 557906 (S.D.N.Y. 2018).* "Trade secrets can "exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination,

*Brainwave Science, Inc. v. Arshee et al (21-cv-4402 (BMC)*
*Plaintiff's Reply Memorandum of Law*
*Page 3 of 9*

affords a competitive advantage and is a protectable trade secret. Id citing *Integrated Cash Mgmt. Serv., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 174 (2d Cir. 1990).

Plaintiff disputes Defendants' assertion that the misappropriated code disclosed between the Defendants omitted all of Plaintiff's proprietary code. (See Affidavit of Tushar Kendre (hereinafter "Kendre") at ¶4-¶7) However, even assuming, *arguendo*, that the misappropriated code disclosed between the Defendants omitted every line of Plaintiff's proprietary code, the resulting compilation and selection of "open source" code is nonetheless protectable as a Trade Secret. We need to look no further from the Defendants' own conduct to confirm the "competitive advantage" obtained by Defendants from doing so. Defendants admitted use of Plaintiff's source code in building their system – as opposed to locating, assembling and compiling their own source code from publicly available "open source" repositories - evinces their own belief that the <u>compilation</u> of "open-source code" within the misappropriated source code offered Defendants a competitive advantage.

### C. The Court Maintains Personal Jurisdiction over Arshee.

"It is fundamental that a court must acquire personal jurisdiction over a defendant before it can render a judgment against that defendant". <u>Aybar v Aybar</u>, *169 AD3d 137, 142 [2d Dept 2019],* <u>lv to appeal dismissed,</u> *33 NY3d 1044 [2019], and* <u>lv to appeal granted,</u> *34 NY3d 905 [2019], and* <u>affd,</u> *2021 NY Slip Op 05393 [Ct App Oct. 7, 2021].*

By application filed October 28, 2021, Plaintiff requested a Certificate of Default for Defendant Arshee's failure to Answer or otherwise respond to the Complaint served on August 31, 2021. (ECF #14). Arshee subsequently appeared and moved the Court for an extension of time

*Brainwave Science, Inc. v. Arshee et al (21-cv-4402 (BMC)*
*Plaintiff's Reply Memorandum of Law*
*Page **4** of **9***

to Answer or Respond to Plaintiff's Complaint. (ECF #18 and #19). Within its application and accompanying affirmations, Arshee acknowledged that it had incorporated within the State of New York and had been served by and through the New York Secretary of State as required by the New York Business Corporation Law (ECF #19, Page 3, ¶2-3). Arshee moved the Court to exercise its "broad equitable powers" to allow Arshee an opportunity to respond based, in part, upon its representation that "[t]he impact of the delay on the Plaintiff [would be] minimal since one firm will represent all three Defendants and can, in most instances, act as swiftly for one as it can for all three." (ECF #19, Page 3, ¶1). Approximately one hour thereafter, the Court Ordered that "Arshee may have until 11/30/2021 to **answer**, provided that it gets on board with the discovery schedule presently in place." (emphasis added) (ECF #19).

Defendant Arshee is a domestic New York Corporation. Arshee was incorporated within the State of New York, designated a New York Agent for service of process and has not been voluntarily or involuntarily dissolved since its formation in 2008. (See November 19, 2021 Affidavit of Paul Tomkins (hereinafter "Tomkins" at ¶2)). Arshee has held itself out to be a resident of the State of New York as recently as April 28, 2021 in bidding documents submitted to the Bangladeshi Government (Tomkins at ¶3). Furthermore, Arshee took no steps to deny that it was a New York Corporation in pre-suit communications with Plaintiff's Counsel. While Arshee denies receipt of the mailed copies of Plaintiff's Counsel's pre-suit June 30, 2021 correspondence, it acknowledges receipt of same by email (ECF #19-1, ¶8). The correspondence, which was sent to Arshee by email and US Mail, clearly references Arshee's New York State corporate address as reported by Arshee to the New York Secretary of State. Arshee neither replied to that correspondence nor took any steps to advise Plaintiff that it was asserting itself to be a resident of another state. (Tomkins at ¶4)

*Brainwave Science, Inc. v. Arshee et al (21-cv-4402 (BMC)*
*Plaintiff's Reply Memorandum of Law*
*Page 5 of 9*

D. *Defendant BFF's, Maison's and Farwells' challenge to the personal jurisdiction of this Court, made within the context of its motion response, is untimely and wholly improper.*

Plaintiff's August 5, 2021 Complaint (ECF #1) was served upon all named Defendants on or before August 31, 2021 (ECF # 11, 12, 15, 16). Defendants Brain Fingerprinting Foundation ("BFF"), Dr. Lawrence Farwell ("Farwell") and Dr. Thierry Maison ("Maison") appeared in this action on September 13, 2021 and, following their application for same, were granted an extension of time to Answer, move or otherwise respond to the Complaint until October 12, 2021 (ECF #9). Defendants neither filed a responsive pleading by October 12, 2021 nor moved the Court for additional time to complete same. Defendants ultimately filed and served an Answer on October 18, 2021 (ECF #13). Defendants' Answer, in response to Plaintiff's assertion that "The Court has personal jurisdiction over the parties, and venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) or 28 U.S.C. § 1391(b)(3)" responds with an unqualified and unparticularized denial. (ECF #1, ¶8 and ECF #13 ¶8). Defendants' Answer also includes a Counterclaim by Farwell wherein he alleges that he was not compensated as agreed for his conveyance of certain patents to Plaintiff. (ECF #13 ¶55-61). While not particularized within Defendants' Answer, the Agreement underlying that counterclaim is governed by a New York choice of laws and jurisdiction clause wherein Farwell and Plaintiff "irrevocably submit[ted] to the exclusive jurisdiction of any state or federal courts sitting in New York, New York. (Tomkins at ¶5).

Defendants BFF, Maison and Farwell, by and through their counsel, filed an untimely Answer which includes an unqualified and unparticularized one-word Denial to Plaintiff's assertion that the Court maintained personal jurisdiction over the then Answering Defendants. In so pleading, Defendants were necessarily claiming that their denial had "evidentiary support or

*Brainwave Science, Inc. v. Arshee et al (21-cv-4402 (BMC)*
*Plaintiff's Reply Memorandum of Law*
*Page 6 of 9*

[was] likely [to] have evidentiary support after a reasonable opportunity for further investigation or discovery" (F.R.C.P. Rule 11(b)(3)). If this was indeed the case, then then-Answering Defendants were required to file a motion asserting this defense by the extended deadline established by the Court and before Answering Plaintiff's Complaint. As clearly and unequivocally set forth by the Federal Rules of Civil Procedure, "A motion asserting [a defense of improper venue or lack of personal jurisdiction] must be made before pleading if a responsive pleading is allowed. (F.R.C.P Rule 12(b)(2-3). Answering Defendants elected not to do so but now request that the Court consider the potential for Defendants to pursue such a motion in its analysis of the likelihood of success of Plaintiff's underlying claim. It is respectfully asserted that this request is untimely, inappropriately brought within the context of a motion response and should be denied.

II. **Plaintiff has demonstrated that it is suffering, and will continue to suffer, irreparable harm in the absence of injunctive relief.**

Defendants' misappropriation of Plaintiffs' trade secrets has produced, and will continue to produce, an indeterminate amount of loss to the Plaintiff's goodwill. "It is clear that irreparable harm **is presumed** where a trade secret has been misappropriated". *Lumex v. Highsmith 919 F Supp 624, 628 (E.D.N.Y. 1996).(emphasis added).* Plaintiff does not sell its software "off the shelf". Its business model involves sale of its systems by way of proposals or bids, coordinated with commission-based local sales partners, before international government agencies and vendors. These commission-based sales partners assist Plaintiff in completing the necessary steps to effect each bid – including making contact with local officials, submitting required documentation, procuring performance bonds and other guarantees, conducting demonstrations

*Brainwave Science, Inc. v. Arshee et al (21-cv-4402 (BMC)*
*Plaintiff's Reply Memorandum of Law*
*Page **7** of **9***

and preparing and ultimately submitting the final bid. (ECF 20-2, ¶24). Defendants' misappropriation of Plaintiffs' trade secrets has caused substantial frustration on the part of its existing sales partners who expend substantial resources, and extend their own goodwill, in coordinating Plaintiff's bids. (ECF 20-2, ¶26). If Defendants are permitted to continue marketing software containing Plaintiff's misappropriated trade secrets, Plaintiff will continue to sustain irreparable loss of goodwill and potential business opportunities.

## CONCLUSION

The facts germane to this application are not in dispute. Defendants admit to misappropriating the "entire BWS Source Code" from an unauthorized source. Defendants further admit to incorporating a substantial portion[1] of the misappropriated code within their own program. Defendants' position diverges from Plaintiff's position, as well as established law, with respect to what constitutes a protectable trade secret. Defendants assert that Plaintiff's trade secrets are "limited to [Plaintiff's] complete product [] and any portion of it which is proprietary" (ECF #24, Page 14). This position is in direct opposition to the specific language of 18 U.S.C. §1839(3) which extends trade secret protection to, among other things, compilations, programs and codes. Defendants' contention that it removed all portions of Plaintiff's proprietary code from Defendants' product, even if true, would not result in the remaining compilation of "public domain" elements falling outside the scope of our legal protections for trade secrets. *Elsevier v. Doctor Evidence, 2018 WL 557906 (S.D.N.Y. 2018).*

Defendants assert that they "have no objection to an injunction that prevents them from selling [Plaintiff's] software or any portion thereof shown to be a trade secret" but argue that the

---

[1]Defendant Maison asserts that what he perceived as the "Proprietary portion of BWS software was deleted and replaced with [Defendants'] development (ECF #24-2 ¶22) but that "As a general matter, there is very little about the BWS system that could be considered new or proprietary (ECF #24-2 ¶24).

*Brainwave Science, Inc. v. Arshee et al (21-cv-4402 (BMC)*
*Plaintiff's Reply Memorandum of Law*
*Page 8 of 9*

Court should not prevent Defendants "from distributing, marketing, or selling their products which do not include [Plaintiff's] software or any portion of it which is a trade secret." (ECF #24, Page 14). Plaintiff concurs and asks that the Court grant the injunctive relief as requested within Plaintiff's moving papers. Given Defendants' admissions that they have incorporated code misappropriated from the Plaintiff within their own program, the relief requested therein is both equitable and eminently reasonable.

Dated this 19th Day of November, 2021

Respectfully,

*Paul F. Tomkins*

_____
Paul F. Tomkins, Esq.
*Attorney for Plaintiff Brainwave Science, Inc.*
*11 Broadway, Suite 615*
*New York, NY 10004*
*(607) 221-1279*

*Brainwave Science, Inc. v. Arshee et al (21-cv-4402 (BMC)*
*Plaintiff's Reply Memorandum of Law*
*Page 9 of 9*