UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X   Civil Action No.: 21-CV-4402 (BMC)
BRAINWAVE SCIENCE, INC.,
   Plaintiff,

-against-


ARSHEE, INC., DR. LAWRENCE A.
FARWELL, DR. THIERRY MAISON and
BRAIN FINGERPRINTING FOUNDATION,
   Defendants.
------------------------------------------------------X


DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) and IN SUPPORT OF DEFENDANT ARSHEE, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)


                RESPECTFULLY SUBMITTED

                CARBONARO LAW, PC
                Attorneys for the Defendants
                757 Third Avenue, 20th Floor
                New York, New York 10017
                (212) 888-5200
                Fax: (212) 898-0394
                Email: joe@jcarbonarolaw.com

## INTRODUCTORY STATEMENT

Defendants Dr. Lawrence Farwell, Dr. Thierry Maison, Brain Fingerprinting Foundation and Arshee, Inc. bring this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2). It will be established that in this trade secret infringement case, the Court does not have personal jurisdiction over the Defendant Arshee, Inc., and that accordingly, it has no jurisdiction over the remaining Defendants who are undisputedly not domiciled in New York State.

In addition, Defendant Arshee, Inc. moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that as to Arshee, the Complaint does not plead plausible facts under the *Iqbal-Ashcroft* standard sufficient to establish that it violated the Defense of Trade Secrets Act, the only cause of action pleaded in the Complaint.

## STATEMENT OF FACTS

With respect to the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), the Defendants respectfully refer the Court to the Declaration of Abul Kalam Azad. For purposes of the motions to dismiss, it is relevant to note that Arshee, Inc. ("Arshee") is a broker. It acts only as an intermediary between the Bangladeshi government and various technology-related companies who sell their products to Bangladesh. See, *Arshee Declaration* at ¶5-6, ECF# 24-3. Arshee is not a technology company in the sense that it does not develop new technologies, does not compare and contrast technologies and most importantly, does not "filter" products its customers sell to ensure that they are not violating the Defense of Trade Secrets Act. *See, Id.*

As the Azad Declaration makes clear, Arshee was once actively conducting business from the State of New York. It stopped doing so in 2015. In 2016, Mr. Azad incorporated as "Arshee, Inc." in the State of Washington. Since that time, it has done all business as a

2

Washington State corporation of the same name. None of Arshee's customers are New York companies. It transacts no business in or through the State of New York. Arshee maintains no contacts with New York State which could be considered sufficient to establish personal jurisdiction over it. *See, Azad Declaration* at ¶8-10.

When Arshee did business with Farwell and Maison, it did so as Arshee, Inc. of Washington State. Counsel refers the Court to Defendants' *Exhibits 1-5*, all of which establish that at all times relevant to this action, "Arshee" was the Arshee of Washington State. Of particular importance, *Exhibits 4 and 5* are, respectively bid documents bearing the name Arshee with its Shorline, Washington address and an authorization from Dr. Farwell granting Arshee, Inc. of Shoreline Washington to act as his agent in the Bangladesh transaction. As Exhibit 3 shows, Arshee, Inc. of New York was sold to Arshee of Washington State and therefore has no owner or value at this time.

Attached as *Exhibit 2* is a notice from the New York State Department of Taxation and Finance showing a tax deficiency from 2014. It is addressed to Arshee in Shorline, Washington, not Jamaica, New York or other New York location. This supports Azad and Arshee's contention that it stopped doing business in New York in 2015, with 2014 being the final tax year, for which it was billed. Subsequent to that year, Arshee owed no tax to the State of New York since it did no business there.

Attached hereto as *Exhibit 1* is a certificate from the State of Washington showing that Arshee, Inc. was incorporated there in 2016. Arshee affirms that he has done business only from Washington State since that time. Notably, Farwell, Brain Fingerprinting Foundation and Maison are domiciled outside of New York, respectively in Washington State and Massachusetts. New York State played no role in the Bangladeshi bid or any conduct surrounding this action.

As it relates to Arshee's Rule 12(b)(6) motion to dismiss, the Court will note when examining the Complaint that in the introductory/narrative portion, Plaintiff alleges that

> BWS was advised by its Bangladesh sales partner that Farwell submitted a competing bid to the same Bangladesh agency *in conjunction with* New York company, Arshee, Inc ("Arshee"). BWS received reports from the potential client that the user interface utilized by Farwell's and Arshee's product was identical to the interface designed and implemented by Maison during his employment with BWS. (emphasis added).

This claim, made "upon information and belief," is likely little more than a guess or surmise. There is no proof whatsoever that Arshee engaged in this conduct. Again, nowhere in Plaintiff's papers, including the Complaint, does Plaintiff allege a specific act or instance where Arshee brokered a similar deal for the same technology. Arshee's Declaration makes clear that he is a broker for various types of technology, not limited to brainwave science. See, *Azad Decl*. at ¶7.

Plaintiff mischaracterizes Arshee's role in the bidding process, misleadingly alleging that

> *Upon information and belief*, Farwell submitted a competing bid to the same Bangladesh agency *in conjunction with* New York company, Arshee, Inc ("Arshee"). Upon further information and belief, the President of Arshee, Mr. Abul Kalam Azad, is a Principal and "Special Envoy" at the Bangladesh Prime Minister's Office. (emphasis added) (Compl. at ¶21).

The implication behind the "in conjunction with" language is that Arshee was a type of partner with Farwell when in fact he was merely a broker. The same is true for the phrase "upon information and belief." While commonly used, it calls into question the basis for the allegation, especially when Plaintiff uses an equally vague term, "in conjunction with…" There is no explanation what "in conjunction with" means in the contest of this Complaint. The implication or suggestion that Arshee was partners with Farwell and/or Maison or that they were joint venturers is completely unfounded and Plaintiff neither expands upon it nor even alleges it. In

4

other words, there is no allegation that Arshee was working in concert with Farwell and Maison. The remaining allegations that pertain to Arshee claim that:

> 25. By correspondence dated June 30, 2021, BWS placed Arshee, and its Bangladesh Partner, Tracer Electrocom, on notice that the system it was marketing and distributing on behalf of Farwell and Brain Fingerprinting Foundation incorporated BWS' Trade Secrets which had been stolen or appropriated, obtained, or converted without BWS' authorization.
>
> 26. To date, neither Arshee nor Tracer Electroform have responded to BWS' correspondence.
>
> 27. Upon information and belief, both Arshee and Tracer Electroform continue to market and distribute the system incorporating BWS' Trade Secrets which had been stolen or appropriated, obtained, or converted without BWS' authorization.

Nothing in the above quoted paragraphs plausibly allege wrongdoing by Arshee. In sum and substance, Plaintiff merely alleges that Arshee was put on notice (which implies it was not already on notice) that Plaintiff claimed Drs. Farwell and Maison obtained alleged trade secrets without permission and that they did not respond to Plaintiff's correspondence. From these claims, Plaintiff leaps to the conclusion that Arshee is continuing to market and distribute BWS' software. No plausible factual allegation is made to support this claim. But taking the allegation as true, there is no claim that Arshee was aware of Farwell's code, the intricacies of the technology it was trying to sell on Farwell's behalf or that it continued to broker deals involving the BWS software, thereby allegedly violating the DTSA. None of that is pleaded in a plausible manner.

The claim that the product was "Farwell's and Arshee's" is demonstrably false. At no point in any of Plaintiff's submissions does it even suggest that Arshee had any involvement in the development of the product or that it knew the [Farwell/Maison] product might be similar to

5

a product being sold by a still-unknown competitor. It is implausible on its face to think that the broker in such a transaction would be informed that he was dealing in another company's trade secrets or that a broker would be able to discern this on his/her own. In short, it was impossible for Arshee to know of or to have been involved in any of the acts alleged against Farwell or Maison since it is not alleged to have come into the process until the attempted sale to the Bangladeshi government. At this point, the sale was voided and there is no allegation that Arshee engaged in another like it involving the same technology.

In the body of the DTSA cause of action, Plaintiff alleges

> *Upon information and belief,* Defendant Arshee Inc., at a minimum, is continuing in its efforts to market and distribute the BWS Trade Secrets despite now knowing the same to have been stolen, appropriated, obtained, or converted without authorization. (emphasis added) (See Compl., ¶27.)

The "information and belief" language again bespeaks of a guess, something that Plaintiff is merely assuming and is therefore not plausible. Moreover, there is no allegation in the Complaint that Arshee has in fact marketed or distributed the BWS product to anyone. The Court should keep in mind that Plaintiff knew when the Complaint was drafted that in order to establish personal jurisdiction, some facts showing not only a connection to the New York State were needed, but facts to make out a plausible claim that could survive a motion to dismiss.

Azad's customers are technology companies who wish to sell their products to various Bangladeshi governmental entities. Arshee is not responsible for inspecting those products for DTSA purposes. See, *Azad Declaration* at ¶6-7. Accordingly, it has no knowledge as to the intricacies of each technology product for which it brokers the sale.

## LEGAL ARGUMENT

### Personal Jurisdiction over Defendant Arshee has not Been Achieved and this Action Must be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(2).

In regard to the issue of personal jurisdiction over defendant Arshee[1], the Second Circuit has explained that

> Determining personal jurisdiction over a foreign defendant in a federal-question case requires a two-step inquiry: first, Court of Appeals looks to the law of the forum state to determine whether personal jurisdiction will lie, and, if jurisdiction lies, the Court considers whether the district court's exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168. (2d Cir. 2013)

In the instant case, the Court must first look to New York's long arm statute to determine if jurisdiction exists pursuant to the forum state. Citing New York *CPLR Section 302(a)(10)*, the Second Circuit noted,

> To establish personal jurisdiction under New York's long-arm statute, two requirements must be met: (1) defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity. *Id.*

In relevant part, New York's long-arm statute provides for jurisdiction over a non-domiciliary when it:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

---

[1] For purposes of this argument, Arshee contends that for all intents and purposes of this action, it was acting as Arshee, Inc., a Washington State corporation and, for reasons explained infra, Arshee, Inc. incorporated in New York is an inactive corporation with no assets or owner and does not confer jurisdiction over Arshee as a New York domicile.

7

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
> 4. owns, uses or possesses any real property situated within the state.

None of these conditions are present with respect to Defendant Arshee, or any Defendant. There is no showing Arshee or the other Defendants transacted business within the State to supply goods or services; no evidence or allegation is presented which shows a tortious act committed outside New York State which caused injury within the State and there is no evidence or allegation that Arshee or any Defendant owns, uses or possesses real property within New York State.

As here, *Licci* is a federal question case involving the federal Anti-Terrorism Act Alien Tort statute. The first question of whether Arshee transacted business within New York is resolved by virtue of Arshee's Declaration and his testimony at the evidentiary hearing, as well as a complete lack of factual allegations in the Complaint that could establish jurisdiction. Arshee has consistently stated that he does no business in New York. Nothing to call Arshee's position into question has been put before the Court other than bare-bones allegations, all made upon "information and belief." There is no allegation, nor can there be, that Arshee purposely availed itself of carrying on its activities in New York State. The evidence is that Arshee is a Washington State corporation that does business either from Washington or Bangladesh. There is no claim that any of its business was transacted in New York. Since Arshee does no business in New York, Plaintiff cannot meet the second prong of the test, that is, that the claim asserted must arise from the business activity that is the subject of the action. Here there is no New York-

based business activity from which the claim could possibly arise. Not a single element of the Plaintiff's cause of action is related to New York. *See, Compl., passim*. At a minimum, establishing jurisdiction "requires a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." *Id.*, 169. Plaintiff cannot meet this standard. Accordingly, the Plaintiff fails to clear the first hurdle of establishing jurisdiction under the New York long-arm statute.

Even if Plaintiff were to satisfy the conditions of New York's long-arm statute, it must also satisfy federal due process standards. The Second Circuit further explained that

> Due process considerations require that the defendant 'have certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154 (internal quotation marks omitted). Where, as in this case, the plaintiffs ask the district court to assert specific jurisdiction over the defendants, the jurisdictional inquiry focuses on the 'affiliation between the forum and the underlying controversy.' *Goodyear Dunlop Tires Operations S.A. v. Brown,* —— U.S. ——, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011) (internal quotation marks and brackets omitted). *Id*. at 169-170. Citations in original.

Here, there is no affiliation between the forum and the underlying controversy. As noted in Defendants' memo in opposition to the motion for a preliminary injunction, the controversy took place either in Washington State or Massachusetts. The various claims of misappropriation of Plaintiff's trade secrets allegedly took place in Massachusetts, where Defendant Dr. Maison worked for Plaintiff. It is here that he is alleged to have accessed software and downloaded it. Dr. Farwell, a Washington State resident, performed work for BWS in Massachusetts or, alternatively, in Washington State, where he resides. Arshee is also a Washington State resident who was merely the broker between Farwell/Maison and the Bangladeshi government. There is

no evidence that Arshee undertook any act related to this action in New York State. Unless it is established that Arshee is a New York domiciliary, there can be no personal jurisdiction over it.

Under the *International Shoe* standard, it would offend traditional notions of fair play and substantial justice to require Arshee and the other Defendants to defend this action in a State where they have no contacts and do not fit within the requirements of CPLR 302. To establish personal jurisdiction over a non-domiciliary defendant, due process requires a plaintiff to allege that: (1) the defendant has "certain minimum contacts" with the relevant forum, and (2) the exercise of jurisdiction is reasonable in the circumstances. *Eades v. Kennedy, PC L. Offs*., 799 F.3d 161 (2d Cir. 2015). The Complaint makes no such allegations other than that Arshee once used an address in Jamaica, New York to do business. As will be shown, Arshee no longer does business from that location and has not done so since 2015, when Mr. Azad, its owner and operator, moved to Washington State. Azad's Declaration shows that he splits his time between Washington and Bangladesh and conducts business only from those two locations.

Arshee may technically appear to be an "active" corporation according to the New York Secretary of State's records; to the contrary, Arshee, as a New York corporation, is completely inactive. Arshee conducts business as a Washington State corporation as established by reference to its Washington State certification of incorporation (See, *Exhibit 1*) and the tax documents sent to Arshee in Washington for taxes due for the year 2014. (See, *Exhibit 2*).

Moreover, as established by *Exhibit 3*, 100% of Arshee/New York stock was transferred by Mr. Azad to Arshee/Washington. *See, Exhibit 3*. Thus, while still on record with the Secretary of State's office, Arshee is a defunct entity without value or even an owner.[2] It is hard to see how jurisdiction can be conferred on this basis alone without violating principles of due

---

[2] A letter from Mr. Azad's CPA is part of Exhibit 3 and shows Azad's intent to formally dissolve Arshee.

10

process and fundamental fairness. Arshee/New York is nothing more than a piece of paper *without a true owner or any value* that sits somewhere in the files of the Secretary of State. It has not done business as Arshee/New York since 2014. The New York State Department of Taxation and Finance billed Arshee only for taxes allegedly owed for that year. See, *Exhibit 2*.

"It is the activities of a corporation, rather than the occasional meeting place of policy making the directors of the corporation which indicate the corporation's principal place of business." *Kelly v. United States Steel Corporation*, 284 F. 2d 850 (3rd Circuit, 1960). While not directly addressing the question of personal jurisdiction, Courts have analyzed the issue of an inactive corporation's principal place of business by asking where it conducted its last transaction.

> In *Pinnacle Consultants, Ltd. v. Leucadia National Corp.,* 101 F.3d 900, 907 (2d Cir.1996), this Court held that an inactive corporation's principal place of business is the state in which it last transacted business. *See also Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.,* 933 F.2d 131, 141 (2d Cir.1991) ("[W]hen a corporation has ceased business activity, diversity jurisdiction ... is determined not only by its state of incorporation, but also by the place it last transacted business"). Since 1995, Parke has been inactive, engaged only in winding down its affairs in Georgia by hiring an attorney to collect its accounts receivable in that state and in defending itself in this New York action. Although Parke's sole officer and director presently lives in New York and he receives the corporation's mail there, these contacts do not alter its citizenship because the corporation is not transacting business through these activities. *Circle Indus. USA, Inc. v. Parke Const. Grp., Inc.*, 183 F.3d 105, 108 (2d Cir. 1999).

*Defendant* Arshee (i.e., the entity whose actions are set forth in the Complaint) last transacted business in the State of Washington. For all intents and purposes, Arshee/New York no longer exists, lacking an owner and having no value; nor did Arshee/New York engage in any of the acts alleged in the Complaint. The Defendant Arshee, sued here as Arshee, Inc., is a

11

Washington State corporation as of the time this action was commenced and for all times relevant to the action.  See, *Exhibits 1-3, 4-5*.

*Exhibit 4* is a bank guarantee issued for purposes of the sale of Farwell's software to Bangladeshi governmental agencies.  It is issued to Arshee, Inc. of Shoreline, Washington. Likewise, *Exhibit 5* is a manufacturer's authorization from Dr. Farwell to the Bangladeshi government authorizing Arshee to act on Farwell's behalf with respect to the Bangladeshi sale.

In conclusion, the Plaintiff's have not obtained jurisdiction over Defendant Arshee and accordingly, this action as to Arshee must be dismissed on that basis and as to the other Defendants pursuant to 28 USC Section 1391(b)(2) and Section 1391 (b)(3) as jurisdiction is lacking as to any defendant.

<u>The Complaint Does not Allege Plausible Facts that Arshee violated the Defense of Trade Secrets Act and as to Arshee, the Action Must Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6).</u>

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face,". A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

In *Ad Lightning Inc. v. Clean.io, Inc.*, No. 19-CV-7367 (JPO), 2020 WL 4570047, at *1– 2 (S.D.N.Y. Aug. 7, 2020), the Court addressed a case brought under the DTSA.  In ruling on a

motion to dismiss pursuant to Rule 12(b)(6), the Court first explained the "plausibility" standard required at the pleading stage.

> A plaintiff facing a motion to dismiss under Rule 12(b)(6) must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint need not contain "detailed factual allegations," but it must offer something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "[N]aked assertion[s]" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557). Nor will "a formulaic recitation of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555). Instead, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This requires more than the "sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Put simply, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).
> …
> To state a claim for misappropriation under the DTSA, a plaintiff must allege that it possessed a trade secret that the defendant misappropriated." *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020) (citing 18 U.S.C. § 1836(b)(1)). Clean argues both that Ad Lightning has insufficiently alleged that it possessed a trade secret and that there are no alleged facts supporting a claim of misappropriation. *Id*. at 2.
> …
>
> As defined by the DTSA, misappropriation is the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means[, or] disclosure or use of a trade secret of another without express or implied consent by a person who ... used improper means to acquire knowledge of the trade secret." *18 U.S.C. § 1839(5)*. "The DTSA, therefore, contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *Integro USA, Inc. v. Crain*, No. 19-CV-8752, 2019 WL 6030100, at *2 (S.D.N.Y. Nov. 14, 2019) (internal quotation marks and citation omitted).

As applied to the movant, Defendant Arshee, there is no plausible allegation in the Complaint to allow the Court to draw a reasonable inference that it violated the DTSA.  As discussed in the Statement of Facts, there is no claim that Arshee misappropriated a trade secret, no claim that it knew the product it tried to sell for Dr. Farwell had allegedly been misappropriated, no allegation that Arshee knew the alleged trade secret was acquired by improper means or without the consent of the entity to which it belonged.  In short, there is no allegation as to Arshee that it acquired, disclosed or used a trade secret.

In the narrative portion of the Complaint at page 3, Plaintiff paints with a broad brush when it claims that Farwell

> submitted a competing bid to the same Bangladesh agency in conjunction with New York company, Arshee, Inc. ("Arshee"). BWS received reports from the potential client that the user interface utilized by *Farwell's and Arshee's product* was identical to the interface designed and implemented by Maison during his employment with BWS.  (emphasis added).

There is no allegation in Complaint that Arshee was in any way involved with Farwell, Maison or BWS prior to the Bangladesh bidding process.  There is no claim that Arshee misappropriated the alleged trade secrets or knew that Farwell or Maison had done so.  Rather, Plaintiff lumps Arshee in with Farwell but fails to even allege any particular relationship or arrangement between the two.

Plaintiff's allegation that it wrote a "cease and desist" letter to Arshee (Compl. at pg. 3) which Arshee did not answer proves nothing.  Then, Plaintiff uses "information and belief" language to broadly allege that "Arshee and Tracer Electroform continue to market and distribute the system incorporating BWS' Trade Secrets which had been stolen or appropriated, obtained or converted without BWS' authorization."  First, it is common to use the phrase "upon information and belief" when there is little or no basis in fact for what follows those words.  Plaintiff is then

14

equally adroit with its use of language, claiming that Arshee and Tracer Electroform (who is not a party for reasons unknown) continue to market the system incorporating BWS' Trade Secrets which had been stolen or obtained without its permission. Plaintiff does not allege that Arshee or Tracer Electroform stole, misappropriated, appropriated, obtained or converted the purported BWS trade secret, only that it "continued to market and distribute" the BWS system that it claims contain trade secrets. This is not the same as saying that Arshee continued to market and distribute a system it knew had been misappropriated by others or that it, Arshee, had done so itself; rather, Plaintiff crafts its language carefully not to make that allegation, presumably because its information and belief is unsound.

The allegations in the Complaint describing Drs. Farwell's and Maison's involvement should be viewed against allegations made against Arshee. While Plaintiff goes to great length to describe Farwell and Maison's experience and involvement with brain fingerprinting technology and how they were involved with BWS, there is no such claim against Arshee. The next time the Complaint mentions Arshee is at ¶22-23. The Complaint alleges that "upon information and belief" Farwell submitted a competing bid to the Bangladesh agency "in conjunction with" New York company Arshee, Inc. ("Arshee"). The Complaint gratuitously mentions that Arshee's President, Mr. Abul Kalam Azad, is a Principal and 'Special Envoy' at the Bangladesh Prime Minister's Office." None of this constitutes a plausible allegeation that Arshee violated the DTSA. Again, Plaintiff is careful to claim only that Farwell and Arshee submitted the bid "in conjunction" with each other. This has no meaning within the context of the DTSA. The phrase "in conjunction" as used here is vague and does not describe the relationship between Arshee and Farwell. If Plaintiff could allege that Arshee was actively involved in misappropriating, using or converting the BWS technology such to violate the

15

DTSA, it would have said so here. Instead, Plaintiff can only allege that Arshee worked "in conjunction" with Farwell to submit a bid. As Mr. Azad has explained in his Declaration in Opposition to the Motion for Preliminary Injunction, he is only a broker and has only a rudimentary understanding of the product Farwell wished to submit for bid to the Bangladeshi government. Mr. Azad's alleged position as a special envoy to the Bangladesh Prime Minister's Office actually supports the proposition that Azad is a well-connected broker who understands the workings of that country's government. It does not bear whatsoever on whether Arshee can be held liable for a violation of the DTSA.

At ¶25, Plaintiff reiterates what it said in the narrative portion of the Complaint, specifically that Arshee was marketing a system on behalf of Farwell that it claimed contained BWS trade secrets and that Arshee did not respond in any way to the letter. Notably, the letter was sent to Arshee *after the fact* (i.e., not until late June, 2021), meaning after the bid had been submitted. This adds nothing to the plausibility of the Complaint as to Arshee.

Beyond that, Arshee is not mentioned again by name in the remainder of the Complaint. Rather, Plaintiff alleges generally that "Defendants willfully and maliciously misappropriated the BWS Trade Secrets…" and that Defendants have caused and will continue to cause serious and irreparable damage to BWS…" See, *Compl,* at ¶41-42.

To summarize, with respect to Arshee, Plaintiff alleges:

1. Arshee submitted a competing bid "in conjunction" with Farwell;
2. Upon information and belief, that Arshee continues to market the BWS product without proof or example of Arshee doing so;
3. That Arshee did not respond to a cease and desist letter written after the final bidding documents had been submitting in April, 2021.

The Complaint is fatally flawed in that Plaintiff cannot and does not allege that Arshee was involved in the misappropriation of trade secrets.  If Plaintiff could so allege, it would have done so.  It is in the record to date that Arshee is a broker and nothing more.  See, *Azad Declaration* (ECF#24-3).

## CONCLUSION

With respect to Arshee the Complaint does not meet the *Iqbal-Ashcroft* standard to survive a Rule 12(b)(6) motion to dismiss.  It makes no plausible claims that Arshee engaged in misappropriating trade secrets, nor does it allege, even vaguely, that Arshee and/or Mr. Azad knew Farwell and/or Maison had (allegedly) misappropriated trade secrets.  Accordingly, the Court should dismiss the cause of action against Defendant Arshee.

Dated: New York, New York
      November 30, 2021

    Respectfully Submitted,

    CARBONARO LAW, PC
    Attorneys for the Defendant
    UNITY IMPORT & EXPORT, LLC
    757 Third Avenue, 20th Floor
    New York, New York 10017
    (212) 888-5200
    joe@jcarbonarolaw.com

By:    *Joseph W. Carbonaro*
      Joseph W. Carbonaro

To: Paul Tomkins, Esq.
    11 Wall Street
    New York, New York