Hon. Brian M. Cogan
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201



*rec. p drive 2/28

February 26, 2022

Re: *Brainwave Science, Inc. v. Arshee, Inc., Farwell, Maison, and Brain Fingerprinting Foundation*    21-cv-4402

Your Honor:

I am writing to report serious violations of the New York Rules of Professional Conduct and of the laws and rules pertaining to conduct in US federal courts by Plaintiff's attorney, Paul Tomkins, and to request that you administer appropriate sanctions for the same.

Mr. Tomkins has violated the following Rules of Professional Conduct. Tomkins' transgressions documented herein are in **_bold and underlined_**.

> RULE 3.3
>
> CONDUCT BEFORE A TRIBUNAL
>
> (a) A lawyer shall not knowingly:
>
> (1) **_make a false statement of fact_** or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
>
> RULE 3.4
>
> FAIRNESS TO OPPOSING PARTY AND COUNSEL
>
> A lawyer shall not:
>
> (a)    (4) **_knowingly use perjured testimony_** or false evidence;
>
> (d) in appearing before a tribunal on behalf of a client:
>
> (1) **_state or allude to any matter_** that the lawyer does not reasonably believe is relevant or that **_will not be supported by admissible evidence_**;
>
> RULE 8.4 MISCONDUCT
>
> A lawyer or law firm shall not:
>
> (c) **_engage in conduct involving dishonesty, fraud, deceit or misrepresentation_**;
>
> (d) **_engage in conduct that is prejudicial to the administration of justice_**

The facts are as follows.

1. In a hearing on November 30, 2021 in the present case, Judge Cogan asked how much profit accrued from sale of iCognative brainwave systems by Mr. Tomkins' client, Brainwave Science, Inc.

   **Mr. Tomkins stated that his client had sold iCognative systems for a cost of about $400,000 per license, and each sale included several licenses, and that more than one such sale had taken place.**

   **All parts of that statement are entirely false.**

1

Mr. Tomkins knows his statement is false, and knew it at the time.

Brainwave Science, Inc. has never sold a license for an iCognative system (or any other brainwave system) for $400,000 (or anything remotely approaching that figure). They have not sold multiple licenses to the same customer for that price, or for any price. They have not made similar sales to multiple customers.

To my knowledge, Brainwave Science, Inc. has never sold any of their iCognative systems to anyone. As the inventor and world's leading expert in Brain Fingerprinting and the individual who has successfully implemented Brain Fingerprinting at the FBI, the CIA, the US Navy, and in national counterterrorism and law enforcement agencies around the world, I am in a position to know. BWS Inc. has supplied some of their brainwave systems to a few potential clients for the purposes of demonstration, but nothing remotely resembling what Mr. Tomkins claimed has ever occurred.

Mr. Tomkins' false statement is material to the case at hand. He made the statement in answer to the only question the judge asked during the hearing. The hearing was about (false) allegations by Mr. Tomkins' client that the Defendants (including myself) had misappropriated his client's trade secrets embodied in the brainwave systems specified in Mr. Tomkins' false statement, and thereby cost the Plaintiffs potential sales and money. The amount of money accruing from sales was an important part of the judge's deliberations regarding alleged damages.

2. Mr. Tomkins' lie to the judge in the hearing described above was not an isolated, accidental, or random incident. It was a carefully planned, strategic deception. In Mr. Ika's affidavit, Mr. Ika's touting of BWS Inc.'s success in the marketplace was confined to this: "[unnamed and unspecified] Agencies and educational institutions within several countries have successfully conducted testing and validation studies on our system." It is not an accident that Mr. Ika did not claim that BWS Inc. had sold its system to multiple customers, each one of which purchased multiple systems for $400,000 each, as Tomkins did. Such a statement, in writing in an affidavit, would have inevitably been proven false, and Mr. Ika would have unquestionably committed perjury. (Mr. Ika made several other demonstrably and unequivocally false statements in his affidavit. These I will address elsewhere and will not discuss here, except for one, which is discussed immediately below.) **Tomkins strategically told his substantive and material lie in a situation where it would be heard and relied upon by the judge, and yet he was not under oath, and it was not in writing.**

4. **In the above referenced hearing on November 30, 2021 in the present case, Krishna Ika ("Ika") lied under oath. When asked both by our attorney Joseph Carbonaro and by Judge Cogan whether BWS Inc. system included any open-source or public domain components, Ika repeatedly answered "No."**

**There are dozens if not hundreds of instances in the software proving that Ika's statement is unequivocally and demonstrably false.**

**As Ika is unfamiliar with the law and legal procedures, Tomkins undoubtedly prepared Ika extensively for his testimony. Ika's perjury almost certainly took place with Tomkins' knowledge, approval, collaboration, and coaching.**

> **Moreover, the respective lies by Tomkins and Ika were clearly part of a planned, coordinated effort to deceive the Court on the two closely related major issues before the court: Whether BWS has a viable, proprietary system, and whether BWS has a successful business involving selling that system. Tomkins and Ika's respective lies worked synergistically to deceive the Court in a clearly orchestrated manner into reaching a conclusion regarding both issues that was directly opposite to the actual facts.**

> With respect to the scientific protocols, algorithms, mathematics, statistics, and every aspect of the procedures for conducting a Brain Fingerprinting test, everything in the BWS software was derived from information I provided to BWS. This is and was in the public domain due to my colleagues and myself having implemented all of the above in software in several iterations, beginning in 1986 when I first invented the system, and including software that I shared with many others over the years. This includes colleagues including William Iacono at the University of Minnesota, my colleagues at the University of Illinois and Harvard, the FBI, the CIA, the US Navy, and many others. All of above were also disclosed in patents wherein I am the inventor that have now expired. All of the above were also disclosed in scientific publications by myself and colleagues on our research at the FBI, the CIA, the US Navy, and elsewhere, including Farwell and Donchin (1986; 1988; 1991), Farwell and Smith (2001) Farwell (2012), and Farwell et al. 2013; 2014). Others including Dr. Iacono and colleagues also included much of the same in scientific publications.

> The above features were implemented using several open-source and public-domain software packages, as explained by Dr. Thierry Maison in his affidavit.

> Moreover, upon a more thorough examination of the relevant evidence, the Court will realize that Dr. Maison was telling the truth when he said he downloaded the code in question from an open source on the internet where BWS had (intentionally or unintentionally) allowed it to be uploaded.

5. **In summary of the above, Ika and Tomkins have lied to the judge in an attempt to present BWS Inc. as a successful company that has been successfully selling and implementing a proven, proprietary software package at major government agencies and taking in millions of dollars in revenues. Factually, BWS Inc. has never sold any of their systems to any government agency, and does not have a system that is either proven or proprietary.**

6. **Moreover, the respective lies by Tomkins and Ika were clearly part of a planned, coordinated effort to deceive the Court on the two closely related major issues before the Court: Whether BWS has a viable, proprietary system, and whether BWS has a successful business involving selling that system. Tomkins and Ika's respective lies constituted a conspiracy of deception developed by Tomkins to deceive the Court in a clearly orchestrated manner.**

7. Ika's Affidavit contained several other blatantly false statements, and many misleading ones. I will address these at another time.

8. Tomkins' transgressions have been prejudicial to the administration of justice. The Court issued a preliminary injunction in reliance on lies by both Ika and Tomkins, without the

3

benefit of the actual facts. If Tomkins and Ika had not lied, the outcome would likely have been different. If Tomkins' lie and Ika's perjury were allowed to stand throughout the case, the outcome would likely be a serious miscarriage of justice.

The accompany Affidavit reiterates the above and provides additional relevant facts.

In light of these transgressions by Plaintiff's Attorney Paul Tomkins, I respectfully request that you apply appropriate sanctions.

Respectfully yours,

*Lawrence A. Farwell*

Lawrence A. Farwell

Date: February 26, 2022

Email: brainwave@larryfarwell.com
Website: https://farwellbrainfingerprinting.com
Phone: +1 206-905-1009
Mobile: +1 2-6-250-5516
Address: 28375 Sandy Beach Lane NE
       PO Box 547
       Kingston, WA 98346


cc: Paul Tomkins, Esq.
    Dr. Thierry Maison
    Arshee, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

BRAINWAVE SCIENCE, INC.

    Plaintiff                               Affidavit of Dr. Lawrence A. Farwell in

                                                Support of Motion for Sanctions

               - against -

                                              Civil Action No.: 21-cv-4402 (BMC)

ARSHEE, INC., DR. LAWRENCE A.
FARWELL, DR. THIERRY MAISON and
BRAIN FINGERPRINTING FOUNDATION

                      Defendants.

--------------------------------------------------------- X

Dr. Lawrence A. Farwell, being duly sworn, declares under penalty of perjury as follows:

1. I, Dr. Lawrence A. Farwell, PhD, am submitting this Affidavit in support of a motion for sanctions against Plaintiff's Attorney Paul Tomkins.

2. In a hearing on November 30, 2021 in the present case, Judge Cogan asked how much profit accrued from sale of iCognative brainwave systems by Mr. Tomkins' client, Brainwave Science, Inc.

**Mr. Tomkins stated that his client had sold iCognative systems for a cost of about $400,000 per license, and each sale included several licenses, and that more than one such sale had taken place.**

**All parts of that statement are entirely false.**

Mr. Tomkins knows his statement is false, and knew it at the time.

Brainwave Science, Inc. has never sold a license for an iCognative system (or any other brainwave system) for $400,000 (or anything remotely approaching that figure). They have not sold multiple licenses to the same customer for that price, or for any price. They have not made similar sales to multiple customers.

To my knowledge, Brainwave Science, Inc. has never sold any of their iCognative systems to anyone. As the inventor and world's leading expert in Brain Fingerprinting and the individual who has successfully implemented Brain Fingerprinting at the FBI, the CIA, the US Navy, and in national counterterrorism and law enforcement agencies around the world, I am in a

1

position to know. BWS Inc. has supplied some of their brainwave systems to a few potential clients for the purposes of demonstration, but nothing remotely resembling what Mr. Tomkins claimed has ever occurred.

Mr. Tomkins' false statement is material to the case at hand. He made the statement in answer to the only question the judge asked during the hearing. The hearing was about (false) allegations by Mr. Tomkins' client that the Defendants (including myself) had misappropriated his client's trade secrets embodied in the brainwave systems specified in Mr. Tomkins' false statement, and thereby cost his clients potential sales and money. The amount of money accruing from sales was an important part of the judge's deliberations regarding alleged damages.

In reality, Mr. Tomkins' client's entire brainwave system was a copy of a system that I invented, patented, and developed, and had been using since the 1980s. In particular, I provided Mr. Tomkins' client with all the details of a system I developed in 2007. I provided his client with all the algorithms, experimental protocols, specifications, methods, and everything they needed to build the system to imitate what my original system accomplished. The central contention of this lawsuit is equivalent to some businessman with zero knowledge, expertise, experience, credentials, education, or aptitude in aeronautics or airplanes accusing the Wright brothers of stealing the intellectual property of the airplane from him.

I would have no imaginable reason for misappropriating Mr. Tomkins' client's untested and unproven system, when I had a brainwave system of my own that I had developed, published in the scientific journals, tested and proven at the FBI, the CIA, and the US Navy, and successfully applied in the field, a system that had been ruled admissible as scientific evidence in court. Brainwave's system has achieved none of these.

The following relevant facts currently stand as undisputed. Mr. Tomkins has had multiple opportunities to dispute these facts, and never has done so. His response to being confronted with the facts has consistently been to obfuscate and attempt to redirect and change the subject, citing other, irrelevant or marginally relevant facts (and in some cases lies).

I. Regarding Dr. Lawrence Farwell:
   a. Dr. Farwell is a Harvard graduate with a PhD in biological psychology and a former research associate at Harvard Medical School.
   b. Dr. Farwell is the inventor of Brain Fingerprinting, as per the Patents and peer-reviewed publications cited below. Dr. Farwell has published extensively on Brain Fingerprinting in leading peer-reviewed scientific journals.
   c. Dr. Farwell was selected by *TIME* magazine as one of the top innovators this century, "the Picassos or Einsteins of the 21st Century."
   d. Dr. Farwell has conducted Brain Fingerprinting research at the FBI, the CIA, and the US Navy and published the results in peer-reviewed scientific journals.
   e. Dr. Farwell has successfully applied Brain Fingerprinting science in real-world criminal cases.

2

    f. The science and technology of Brain Fingerprinting that Dr. Farwell invented and developed and his expert testimony on it have been ruled admissible in court.

    g. Dr. Farwell has successfully practiced his profession as a forensic neuroscientist, and specifically as the world's leading expert in the Brain Fingerprinting science and technology that he invented, for over 25 years.

II. Regarding the BWS system: Unlike the genuine Farwell Brain Fingerprinting that Dr. Farwell has developed and implemented in the US and throughout the world, the BWS product that Mr. Tomkins, Brainwave Science, LLC, Brainwave Science, Inc., and Ika have been attempting to market, the BWS system:

    a. Has not been shown to be an effective implementation of the Brain Fingerprinting scientific technology that was invented by Harvard-trained neuroscientist Dr. Farwell, who was selected by TIME magazine as one of the top innovators this century, "the Picassos or Einsteins of the 21st Century."

    b. Has not been shown to meet the 20 Brain Fingerprinting Scientific Standards that Dr. Farwell has published and that are met by Dr. Farwell's versions of the technology. There is no evidence anywhere that the counterfeit product and faux training by unqualified individuals that BWS Inc. is offering meet these standards.

    c. Has not been tested and proven at the CIA, the FBI, and the US Navy.

    d. Has never been applied in real-world criminal cases, including serial killer JB Grinder and innocent murder convict Terry Harrington.

    e. Has not been proven over 99% accurate in research at the FBI, the CIA, the US Navy, and elsewhere published in the top peer-reviewed scientific journals. There is no evidence anywhere that what BWS Inc is offering has achieved such accuracy in scientific studies or field applications.

    f. Has never achieved 99% accuracy, or any other proven level of accuracy, in any published research, forensic applications, field applications, or in any other context.

    g. Has not been featured in major national and international news media, including CBS Evening News, ABC World News, CNN, PBS, BBC, CBS 60 Minutes, ABC Good Morning America, the Discovery Channel, The New York Times, The Washington Post, TIME Magazine, and US News and World Report.

    h. Has not been proven to be capable of detecting bomb makers, criminals, and terrorists, in peer-reviewed publications.

    i. Lacks the qualities and achievements of the genuine Brain Fingerprinting invented and developed by Dr. Farwell, as listed herein and in the Exhibits.

    j. Has produced no evidence that the unproven technology BWS Inc is offering achieves the same accuracy, reliability, or validity of the genuine Brain Fingerprinting practiced by Dr. Farwell and other competent, trained, and credentialed scientists.

III. Regarding Mr. Ika and the BWS employees: Neither Mr. Ika nor anyone else one employed by Brainwave Science, LLC, Brainwave Science, Inc.:

   a. Has ever been trained in Brain Fingerprinting by a qualified Brain Fingerprinting expert such as Dr. Lawrence Farwell or FBI forensic scientist Dr. Drew Richardson;

   b. Has ever conducted and published Brain Fingerprinting research or any research in detection of concealed information using iCognative or any other process;

   c. Has ever successfully applied Brain Fingerprinting, iCognative, or any technology for detection of concealed information in real-world cases;

   d. Has ever conducted Brain Fingerprinting or any other research for the FBI, the CIA, or the US Navy;

   e. Is qualified to conduct a scientific Brain Fingerprinting test that meets the Brain Fingerprinting Scientific Standards; or

3. Mr. Tomkins' lie to the judge in the hearing described above was not an isolated, accidental, or random incident. It was a carefully planned, strategic deception. In Mr. Ika's affidavit, Mr. Ika's touting of BWS Inc.'s success in the marketplace was confined to this: "[unnamed and unspecified] Agencies and educational institutions within several countries have successfully conducted testing and validation studies on our system." It is not an accident that Mr. Ika did not claim that BWS Inc. had sold its system to multiple customers, each one of which purchased multiple systems for $400,000 each, as Tomkins did. Such a statement, in writing in an affidavit, would have inevitably been proven false, and Mr. Ika would have unquestionably committed perjury. (Mr. Ika made several other demonstrably and unequivocally false statements in his affidavit. These I will address elsewhere and will not discuss here, except for one, which is discussed immediately below.) **Tomkins strategically told his substantive and material lie in a situation where it would be heard and relied upon by the judge, and yet he was not under oath, and it was not in writing, so as to minimize the chance that he would be caught lying.**

4. **In the above referenced hearing on November 30, 2021 in the present case, Krishna Ika ("Ika") lied under oath. When asked both by our attorney Joseph Carbonaro and by Judge Cogan whether BWS Inc. system included any open-source or public domain components, Ika repeatedly answered "No."**

   **There are dozens if not hundreds of instances in the software proving that Ika's statement is unequivocally and demonstrably false.**

   With respect to the scientific protocols, algorithms, mathematics, statistics, and every aspect of the procedures for conducting a Brain Fingerprinting test, everything in the BWS software was derived from information I provided to BWS. This is and was in the public domain due to my colleagues and myself having implemented all of the above in software in several iterations, beginning in 1986 when I first invented the system, and including software that I shared with many others over the years. This includes colleagues including William Iacono at the University of Minnesota, my colleagues at the University of Illinois and Harvard, the FBI, the CIA, the US Navy, and many others. All of above were also disclosed in patents wherein I am the inventor that have now expired. All of the above were also disclosed in scientific publications by myself and colleagues on our research at the FBI, the CIA, the US Navy, and elsewhere, including Farwell and

4

Donchin (1986; 1988; 1991), Farwell and Smith (2001) Farwell (2012), and Farwell et al. 2013; 2014). Others including Dr. Iacono and colleagues also included much of the same in scientific publications.

The above features were implemented using several open-source and public-domain software packages, as explained by Dr. Thierry Maison in his affidavit.

Moreover, upon a more thorough examination of the relevant evidence, the Court will recognize the fact that Dr. Maison was telling the truth when he said he downloaded the code in question from an open source on the internet where BWS had (intentionally or unintentionally) allowed it to be uploaded.

5. **In summary of the above, Ika and Tomkins have lied to the judge in an attempt to present BWS Inc. as a successful company that has been successfully selling and implementing a proven, proprietary software package at major government agencies and taking in millions of dollars in revenues. Factually, BWS Inc. has never sold any of their systems to any government agency, and does not have a system that is either proven or proprietary.**

6. **Moreover, the respective lies by Tomkins and Ika were clearly part of a planned, coordinated effort to deceive the Court on the two closely related major issues before the Court: Whether BWS has a viable, proprietary system, and whether BWS has a successful business involving selling that system. Tomkins and Ika's respective lies worked synergistically to deceive the Court in a clearly orchestrated manner.**

7. **The Court issued the preliminary injunction in reliance on lies by both Ika and Tomkins, without the benefit of the actual facts.**

8. Ika's Affidavit contained several other blatantly false statements, and many misleading ones. I will address these at another time.

9. The following facts are relevant to the motives involved in Ika and Tomkins conspiring to deceive the Court as described above.

10. I testified against Ika in a fraud case in Dubai that ended up in several jurisdictions. Ika demanded that I change my sworn testimony, and I refused.

11. Authorities in South Africa, Pakistan, Nigeria, and Thailand have also accused Ika and BWS Inc. of fraud involving fraudulently claiming to have sufficient expertise, knowledge, and technology to effect a technology transfer of my Brain Fingerprinting invention to government agencies. This alleged fraud included faking demonstrations of "brainwave analysis" that involved no brainwave analysis, but only display of previously prepared graphics files, claiming to represent me (Dr. Lawrence Farwell, the inventor of Brain Fingerprinting) when they did not, and several other equally fraudulent actions.

12. In the event that Ika is brought to justice for his alleged crimes involving fraud related to Brain Fingerprinting in South Africa, Pakistan, Nigeria, Thailand, and/or elsewhere, I, Dr. Lawrence Farwell, as the inventor and world's leading expert on Brain Fingerprinting, will almost certainly be called again as a witness against Ika.

13. Ika has filed six lawsuits in five different state and federal jurisdictions designed to be as inconvenient an expensive as possible for me and my colleagues. One has been

5

dismissed, as it was obviously in the wrong jurisdiction, one has been dismissed for lack of subject matter jurisdiction, one was an attempt by Ika to initiate an arbitration wherein the potential arbitrators elected not to proceed due to lack of the preconditions for arbitration having been met. In one remaining case the court is considering dismissing it as well. One case, in state court in New York, remains in dispute, along with the current case.

14. By prevailing in a lawsuit, Ika would eliminate – or at least intimidate, discredit, or coerce -- the major past and likely future witness against him in criminal proceedings (myself), and would also eliminate the major competitor to his company, a competitor who, unlike Ika and BWS Inc., actually has a viable, proven product, relevant expertise, and a track record of success.

15. All of the above is relevant for the following reason: Ika and Tomkins know that they have zero chance of prevailing on the merits in any of the cases. Their only chance of prevailing is to force me and my colleagues to spend so much money that we can no longer afford to proceed, and then to win by default. This is exactly what they are attempting to do in the case of Brain Fingerprinting Foundation.

16. There is no imaginable reason for including Brain Fingerprinting Foundation as a defendant, other than the fact that, as a (not-for-profit) corporation, it cannot appear pro se. This means that continuing to pursue multiple lawsuits, no matter how frivolous and lacking in basis in fact or law, can potentially result in a decision in favor of BWS Inc. simply because the other side exhausts their limited funds. On the other hand, if I, Dr. Lawrence Farwell, an individual, am the defendant, along with Dr. Maison, we can continue indefinitely pro se.

17. Tomkins and Ika's including Brain Fingerprinting Foundation as a defendant in the case is an abuse of the justice system in an attempt to force forfeiture of a case that they know they have no chance of winning on the merits, and to force such forfeiture against a party against whom they have no basis in fact or law to pursue a suit.

18. Any attempt by Ika and Tomkins to prolong this case – by opposing the motion to dismiss the case against Brain Fingerprinting Foundation, or seeking further discovery, or any other ploy to prolong the involvement of Brain Fingerprinting Foundation in the case beyond the tenure of Defendants' attorney Joseph Carbonaro in the case – must be recognized as a transparent scheme to require Brain Fingerprinting Foundation to spend money that it does not have on retaining another attorney, and thereby to force forfeiture of the case by Brain Fingerprinting Foundation when there clearly is no basis in fact or law for Brain Fingerprinting Foundation to lose the case or for BWS Inc. to win any part of its case against Brain Fingerprinting Foundation..

19. Much more is at stake here than the question of whether I or some Indian businessman makes money on my invention of Brain Fingerprinting. With regard to the benefit to mankind, that consideration is trivial at best. Fortunately, so far, Ika, Tomkins, and Brainwave Science, Inc. have done little damage to the cause of justice and global security. This case could change that dramatically. So far, Ika and his employees have failed totally for many years to defraud government agencies into engaging them to effect a technology transfer of a critically important forensic science technology – my invention of Brain Fingerprinting. This has included the fraudulent claim that they are qualified

and capable not only of practicing and implementing my invention, but also of training others to do so. This includes two patently fraudulent claims: (1) That the totally untested and unproven iCognative system, which has never been tested in the laboratory and published in the scientific journals or applied successfully in real-world criminal cases, is a viable forensic science technology; and (2) that BWS Inc.'s "trainers" – who have never conducted a single Brain Fingerprinting test that meets the established Brain Fingerprinting scientific standards, either by conducting it in the laboratory and publishing in a peer-reviewed journal, or by conducting a successful field test on real-world criminal or terrorist suspects – are capable of training potential clients up to the level of skilled forensic scientists competent to conduct forensic neuroscience tests upon which peoples' lives and freedom depend.

If Ika's, Tomkins', and Brainwave Science, Inc.'s efforts to defraud government agencies ever succeed, this will be a disaster for the cause of justice and global security. If any government agency engages Ika and BWS Inc. to effect a technology transfer of their untested and unproven system and their "training" by totally unqualified trainers, and said agency attempts to implement what they received from BWS Inc. in the real world of counterterrorism and criminal investigations and relies on the results, the outcome will be that people lacking the requisite training and expertise will attempt to apply an untested and unproven technology in situations where lives and freedom depend on the result. It is not an exaggeration to point out that the most likely outcome of such an endeavor will be that grave miscarriages of justice will ensue, innocent people will die needlessly, and terrorists and criminals will get away with murder.

I say that not simply as a litigant in a civil case with my own self-interest at stake, but more importantly as a forensic scientist and counterterrorism expert who has experienced first-hand over a period of decades the necessity for effective and competent practice of forensic science by properly qualified, credentialed, and trained experts, in order to establish justice and prevent such disasters.

If this Court plays a part in such an outcome, then this Court and the American justice system will have been abused by criminals in committing their crimes of, at a minimum, fraud, resulting in dire consequences for the unfortunate direct and collateral victims and casualties of that fraud.

20. For this reason, I ask the Court to exercise its discretion and administer the appropriate sanctions for the above described offenses by Attorney Paul Tomkins.

[Signature page immediately follows.]

*Lawrence A. Farwell*

Lawrence A. Farwell

Date: February 26, 2022

Email: brainwave@larryfarwell.com
Website: https://farwellbrainfingerprinting.com
Phone: +1 206-905-1009
Mobile: +1 2-6-250-5516
Address: 28375 Sandy Beach Lane NE
　　　　　PO Box 547
　　　　　Kingston, WA 98346

cc: Paul Tomkins, Esq.
　　Dr. Thierry Maison
　　Arshee, Inc.

8