RECEIVED IN PRO SE OFFICE
**MARCH 2, 2022**
VIA BOX.COM @ 11:17 PM
*Rec. in p drive 3/3/22 rg

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------

X BRAINWAVE SCIENCE, INC.

Plaintiff

                              Affidavit in Support of Additional Counterclaims of Dr. Lawrence A. Farwell -- Answer to Complaint

- against -                Civil Action No.: 21-cv-4402 (BMC)

ARSHEE, INC., DR. LAWRENCE A. FARWELL, DR. THIERRY MAISON and BRAIN FINGERPRINTING FOUNDATION

Defendants.

-------------------------------------------------------- X

Defendant Dr. Lawrence A. Farwell, being duly sworn, declares under penalty of perjury as follows:

## I.    Parties and Non-Parties Referenced Herein

1.1    Dr. Lawrence A. Farwell ("Dr. Farwell") is a resident of Tulalip, Snohomish County, Washington.

1.2    Upon information and belief, Life Science and Technology, LLC is a Wyoming LLC with primary and only office in Edmonds, Snohomish County, Washington.

1.3    Upon information and belief, Ron Kirkendorfer, a resident of Washington, is the President of Life Science and Technology, LLC ("LST").

1.4    Upon information and belief, Krishna Ika ("Ika") is a resident of Southborough, Massachusetts.

1.5    Upon information and belief, Brainwave Science, Inc. ("BWS Inc.") is a foreign corporation with offices in Southborough, Massachusetts, solely owned by Ika.

1.6    Upon information and belief, eHealthcareWorks Corp. ("HCW") is a foreign corporation with offices in Southborough, Massachusetts, controlled by Ika.

1.7    Upon information and belief, Brainwave Science, LLC ("BWS LLC") is a foreign corporation with offices in Southborough, Massachusetts, with ownership as follows: 49% eHealthcare Works Corp, 5% Dr. Farwell, and 44% Brain Fingerprinting Laboratories, Inc.

1.8    Upon information and belief, American Scientific Innovations, LLC ("ASI") was a foreign limited liability company with offices in Seattle, Washington at the times of all

transactions involving ASI mentioned herein, whereof Ben Bryant, a resident of Washington, was the president and only authorized representative.

1.9    Upon information and belief, Brain Fingerprinting Laboratories, Inc. ("BFL Inc.") is a foreign corporation with offices in Seattle, Washington, controlled and largely owned by Dr. Farwell.

1.10    Upon information and belief, Brain Fingerprinting, LLC  ("BF LLC") is a foreign limited liability company with offices in Seattle, Washington, controlled by Dr Farwell.

1.11    Upon information and belief, Government Works, Inc. ("GOV") is a foreign corporation with offices in Southborough, Massachusetts, controlled by Ika.

1.12    Dr. Lawrence Farwell and Brain Fingerprinting Laboratories, Inc. collectively are referred to herein as the "Minority Shareholders" or "Farwell Shareholders" in BWS LLC.

1.13    Upon information and belief, Paul Tomkins ("Tomkins") is corporate attorney for BWS Inc.

1.14    Upon information and belief, Neuro Science Technologies, LLC ("NST") is an Iowa limited liability company, with Kirkendorfer as its President.

1.15    Upon information and belief, Subu Kota ("Kota") is a resident of Boston, Massachusetts.

1.16    Brain Fingerprinting Foundation was a non-profit Washington corporation founded by Dr. Farwell in 2017 and dissolved in 2021. Dr. Farwell was its sole member and sole representative. Brain Fingerprinting Foundation did not conduct any business or activities of any kind related to the subject matter of this case.

1.17    Krishna Ika, Brainwave Science, LLC, Brainwave Science, Inc., eHealthcareWorks Corp., Government Works, Inc., Tomkins, one or more undisclosed silent partners (hereinafter "Silent Partner," including singular and plural, to be revealed by Ika and/or in discovery), one or more undisclosed financiers of BWS, LLC, BWS, Inc. and/or Ika (hereinafter "Financier," including singular and plural, to be revealed by Ika and/or in discovery) shall  all collectively be referred to herein as the "Ika Parties."  Ika, BWS LLC, BWS Inc., HCW, and GOV are also referred to herein as the "Known Ika Parties."

## II.    <u>SUMMARY AND INTRODUCTION</u>

2.1 This Summary and Introduction summarizes the relevant facts.  Details are provided in subsequent sections, along with ample documentation in the form of exhibits.  These will demonstrate that all of the statements made in this Summary and Introduction are demonstrably and unequivocally true and factual.

2.2 As the inventor and world's leading expert in Brain Fingerprinting, and the individual who has successfully implemented Brain Fingerprinting at the FBI, the CIA, the US Navy, and in law enforcement and counterterrorism agencies around the world, Dr. Lawrence Farwell was the primary witness in a fraud suit against Ika, BWS LLC, and BWS Inc. spanning several countries and jurisdictions.

2.3 Ika and BWS Inc. also stand accused of fraud in South Africa, Pakistan, Nigeria, and Thailand, in each case involving Ika and his employees (a) falsely representing themselves as experts in

forensic neuroscience, event-related brain potentials, and Brain Fingerprinting competent to implement a technology transfer of Brain Fingerprinting technology to government agencies and to train agency personnel in the same; and (b) attempting to sell a counterfeit "Brain Fingerprinting" training and technology that does not in fact meet the established Brain Fingerprinting Standards.

2.4 The current fraud that Ika and the other Ika Parties have been attempting to perpetrate in various countries is the continuation and culmination of a racketeering enterprise that Ika and some of the Ika Parties began in 2012 and 2013. The purpose of the enterprise was to fraudulently gain control of the patents for Dr. Farwell's invention of Brain Fingerprinting, eliminate Dr. Farwell from participation, and then defraud government agencies in various countries by Ika falsely representing himself and his employees as experts in forensic neuroscience, psychophysiology, event-related brain potentials, and Brain Fingerprinting capable of effecting a technology transfer of Brain Fingerprinting to said agencies, and to sell them a counterfeit system, and faux "training" thereon by unqualified "trainers," that did not meet the Brain Fingerprinting Scientific Standards established by Dr. Farwell and his colleagues in the scientific literature.

2.5 A settlement involving only Dr. Farwell and NST and Brainwave Science, Inc. will be inadequate to redress the crimes and torts perpetrated by the other Ika Parties, namely Ika, BWS LLC, HCW, and GOV (the Known Ika Parties). The Known Ika Parties set up BWS Inc. for fraudulent purposes as described herein, one of which was to file frivolous lawsuits against Dr. Farwell and the patent owners, knowing that BWS Inc had no chance of winning the suits. The suits served the purpose of forcing Dr. Farwell and the patent owners to expend money and other resources, while minimizing the risk to the Known Ika Parties, particularly Ika, BWS LLC, HCW, and GOV. Since BWS Inc. is a shill company with no legitimate business activities and no assets, losing a lawsuit with a substantial judgment against BWS Inc. would not actually cost the Ika Parties anything. Justice requires that Ika, BWS LLC, HCW, GOV, and Tomkins be held accountable for their crimes and torts against Dr. Farwell and LST. I therefore hereby move that BWS LLC, HCW, and GOV be included as parties to this lawsuit.

2.6 When Ika first contacted Dr. Farwell and proposed a business arrangement, he and the other Ika Parties concealed from Dr. Farwell the fact that Kota, an individual who had pleaded guilty and been convicted of attempting to sell stolen high-tech secrets to the Soviet Union – essentially the same crime for which Ika's original racketeering organization was founded and which it has since attempted to perpetrate in multiple countries – would later be identified by BWS LLC as a board member and officer of BWS LLC.

2.7 The steps in said racketeering scheme were as follows:

2.7.1 Ika and other Ika Parties fraudulently induced Dr. Farwell and his company, Brain Fingerprinting Laboratories, Inc. to enter into an LLC agreement with BWS LLC, to be controlled by Ika, by among other things concealing the involvement of Kota and his criminal record and the plans to fraudulently gain control of the Patents and to misappropriate Dr. Farwell's and BFL Inc.'s equity in BWS LLC.

2.7.2 Ika and other Ika Parties fraudulently induced Dr. Farwell to sign three Draft Documents that outlined the terms for transfer of the Patents to BWS LLC, but did not yet include any consideration flowing to the apparent "assignors," because that had not yet been negotiated. The Draft Documents were never intended by Dr. Farwell, who signed them, or by ASI, the undisputed owner of the patents, to be patent assignments. The Draft Documents were not

executed by or even known to ASI. Dr. Farwell was not a member, owner, officer, or agent of ASI and did not have authority to bind ASI. Then Ika's attorney fraudulently recorded the Draft Documents at the USPTO as "patent assignments" to BWS LLC so as to gain control of the Patents without being required to execute any documents requiring compensation for the same. Then Ika refused to sign any documents requiring any compensation to the patent owners (or anyone else) in exchange for ownership of the patents by BWS LLC, which he controlled. When Dr. Farwell discovered the erroneous recording of the Draft Documents at the USPTO, he and BFL Inc. signed and recorded a Correction that clarified ASI's continuing, uninterrupted ownership of the Patents and the fact that the Draft Documents bearing his signature were null and void, were not valid patent assignments, and had no legal binding effect. Thus, the ownership of the Patents always remained with ASI, and the Ika Parties' initial scheme to fraudulently gain control of the Patents failed.

2.7.3   Ika and other Ika Parties purported to deprive the Minority Shareholders of some of their equity in BWS LLC by the following scheme. Dr. Farwell and BFL Inc. (the Minority Shareholders) initially owned 49% of BWS LLC. HCW, controlled by Ika, owned 51%. The initial agreement required HCW, controlled by Ika, to provide sufficient financing for the LLC. Ika told the Minority Shareholders that he and HCW had run out of money, that they would have to take on a Silent Partner and sell him equity to finance the company, and that HCW and BFL Inc. would both be diluted proportionally and would both give up ownership proportionally. (Dr. Farwell's ownership was non-dilutable.) Ika then purported to sell equity of BFL Inc. and HCW to an independent Silent Investor (who he implied was Kota). In fact, however, said equity was transferred to an entity controlled and/or owned by Ika. Thus Ika's scheme diluted BFL Inc. but in reality did not diminish Ika's effective ownership of BWS LLC. BFL Inc.'s equity was apparently reduced from 44% to 16% by this scheme, leaving the Minority Shareholders with a total of 21%.

2.7.4   Ika and other Ika Parties then conspired to deprive the Minority Shareholders of their remaining equity in BWS LLC by the following additional scheme. The BWS LLC agreement required consent of all members to any amendments. Ika purported to unilaterally amend the BWS LLC agreement to allow himself as managing member, along with the majority members he controlled, to expel members if, in his sole and absolute discretion, they had done certain things that he interpreted as detrimental to the LLC. Then he called a meeting of the members – consisting solely of himself and Kota as corporate secretary – and purported to expel Dr. Farwell and BFL Inc. as members in BWS LLC, and to transfer their ownership interest to himself and entities that he controlled, all without consent or due process.

2.7.5   Ika and other Ika Parties then implemented yet another scheme to eliminate any ownership by Dr. Farwell and BFL Inc. of the functional entity and to fraudulently gain control of the Patents. They formed a new corporation, Brainwave Science, Inc. (BWS Inc.) BWS Inc. was formed for four purposes, all of them fraudulent, as follows.

2.7.5.1 The first fraudulent purpose of establishing BWS Inc. was to eliminate the Minority Shareholders as owners of the functional corporate entity. (Ika must have known, and his attorney acknowledged, that his scheme to expel the Minority Shareholders without consent or due process was illegal and would not stand.) BWS Inc. had entirely non-overlapping ownership with BWS LLC. BWS LLC is owned by Dr. Farwell, BFL Inc., HCW, and an unidentified Silent Partner whose shares HCW held in trust. Ika has no ownership in BWS LLC. BWS Inc. is owned solely by Ika. By transferring the assets of BWS LLC to BWS Inc.

without any compensation to the owners of BWS LLC, Ika purported to eliminate the Minority Shareholders as owners of the functional corporate entity.  The assets of BWS LLC could be transferred to an entity solely owned by Ika without compensation to the owners of BWS LLC must constitute one of two scenarios: (a) Ika already owned or controlled all of the owners of BWS LLC except Dr. Farwell and BFL Inc., in which case sale of equity to the Silent Partner (and concomitant dilution of HCW along with BFL Inc.) was a sham set up by Ika to defraud Dr. Farwell and BFL Inc. of their equity, or (b) Ika also defrauded the Silent Partner out of his equity in BWS LLC by forming the new corporation and transferring the assets. In either case, Ika and other Ika Parties committed fraud by forming BWS Inc.

2.7.5.2   Reference is made to US Patents #7,689,272, #5,363,858, #5,406,956, and #5,467,777, (collectively, the "Patents"). Dr. Farwell, the inventor of the Patents, assigned the Patents and all associated intellectual property to ASI. He assigned #5,363,858, #5,406,956, and #5,467,777 (the "Brain Fingerprinting Patents" or the "Expired Patents") in 2003 and #7,689,272 in 2010.  He has had no ownership in the Patents or any associated intellectual property since then.  It is undisputed that ASI owned the Patents in 2013, prior to the Draft Documents.

2.7.5.3   The second purpose of establishing BWS Inc. was to fraudulently gain ownership of the Patents.  There are no documents filed at the USPTO (or anywhere else) that even mention BWS Inc. in connection with ownership of the Patents.  There are no documents anywhere that might imaginably be construed as to assign the Patents to BWS Inc.

In different legal actions Ika, Tomkins, BWS LLC, and BWS Inc. have made contradictory claims regarding assignments the ownership of the Patents.  Both of the contradictory accounts are demonstrably and unequivocally false.

The claims in the BWS Inc. – Farwell Arbitration are as follows.  In this regard, it was not an accident that BWS Inc. had a similar name and identical initials to BWS LLC.  In said arbitration and other legal actions described below, Ika and other Ika Parties have abbreviated Brainwave Science Inc. as "BWS."  Then they have stated that "BWS" obtained the Patents in 2013 by assignment from ASI.  BWS Inc. stated the following in its Notice in the BWS Inc. – Farwell Arbitration: "Claimant Brainwave Science, Inc. ('BWS') is a Delaware corporation…" "American Scientific Innovations, LLC… assigned BWS all rights, title and interest in… patents [the Patents]… on June 17, 2013." "BWS maintains that it lawfully acquired the subject intellectual property [the Patents]…[through said transaction]."  Said statements are blatantly false.

Brainwave Science, Inc. ("BWS" in the definition of said Notice) was not even mentioned in the documents cited in the Notice as purportedly assigning the Patents to it.  Said documents referred to Brainwave Science, LLC.  "BWS" [Inc.] could not possibly have "lawfully acquired" the Patents in 2013 because it did not exist until several years later.  It is striking that Ika and his attorneys presume that the arbitrators and judges in the this and the other lawsuits wherein Ika and Tomkins attempted similar verbal sleight of hand would not have the mental acuity to recognize the difference between two different entities with the same initials (and non-overlapping ownership).  BWS Inc. has no evidence whatsoever that BWS LLC, ASI, or any other entity ever assigned the Patents to it. No entity ever executed and recorded at the USPTO any documents – valid or not – that even mention BWS Inc.

The second false account Ika, Tomkins, and BWS Inc. have given regarding ownership of the Patents is that ASI assigned the Patents to BWS LLC (not BWS Inc.) in 2013, and at some later time BWS LLC assigned the Patents to BWS Inc.  This apparently is their contention in the present Motion to Intervene.  Neither of the alleged assignments in this account ever took place in reality.

(a) The Unexecuted ASI-BWS Draft Document purportedly assigning said Patents (to BWS **LLC**, not BWS **Inc**.) in 2013 was not executed by or even known to ASI, the undisputed owner of the Patents at that time, included no consideration flowing to the apparent "assignor," and could not possibly have transferred ASI's Patents to BWS LLC or any other entity.

(b) Even if the Patents had been assigned to BWS LLC by ASI (which they demonstrably were not), there is no evidence that BWS LLC ever assigned the same to BWS Inc.  There are no documents filed at the USPTO that even mention BWS Inc. in reference to the Patents.

2.7.5.4 The third fraudulent purpose for establishing BWS Inc. was to provide a vehicle to defraud government agencies in various countries by Ika falsely representing himself and his employees as experts in forensic neuroscience, psychophysiology, event-related brain potentials, and Brain Fingerprinting capable of effecting a technology transfer of Brain Fingerprinting to said agencies, and to sell them a counterfeit system, along with faux "training" thereon by unqualified "trainers," that did not meet the Brain Fingerprinting Scientific Standards established by Dr. Farwell and his colleagues in the scientific literature.  Ika and BWS Inc. currently stand accused of such fraud in South Africa, Pakistan, Nigeria, and Thailand for attempting to implement this scheme.

2.7.5.5 The fourth fraudulent purpose for establishing BWS Inc. was to file patently frivolous legal actions against Dr. Farwell, the primary witness in the first fraud case against Ika, BWS LLC, and BWS Inc. and, as the inventor and world's leading expert in Brain Fingerprinting, the potential expert witness best positioned to testify to expose the fraud that Ika and the Ika Parties have attempted and are attempting in various countries, including those named above, when and if said countries bring Ika and other Ika Parties to justice.  Said frivolous lawsuits, including the present lawsuit, constitute witness tampering and an attempt, as part of the Ika Parties' racketeering crimes, to intimidate, coerce, silence, retaliate against, and discredit past and potential future witness Dr. Farwell.   Said frivolous lawsuits are based on two demonstrably and unequivocally false premises:

(a) That Brainwave Science, Inc. acquired the Patents in 2013 -- when it did not yet exist -- through an unexecuted draft document (the Unexecuted ASI-BWS Draft Document) that did not mention Brainwave Science, Inc., was not executed by or even known to the undisputed patent owner at the time (ASI), had no provisions for consideration flowing to the apparent "assignor," and was never intended by either the signer or the undisputed patent owner to be recorded at the USPTO or to constitute a patent assignment;

(b) That Dr. Farwell's unequivocally and demonstrably true – and also privileged – statements were libelous, statements made as a witness in a sworn affidavit in a fraud suit against Ika, BWS LLC, and BWS Inc.

2.8 The above described activities of Ika and the Ika Parties constitute racketeering, as described below, because per 18 U.S.C. § 1961 they are "(B) indictable under…the following provisions of title 18, United States Code…section 1341 (relating to mail fraud)...section 1343 (relating to wire fraud), section 1503 (relating to obstruction of justice)...section 1510 (relating to obstruction of

criminal investigations)...section 1512 (relating to tampering with a witness...victim, or an informant)...section 1513 (relating to retaliating against a witness...victim, or an informant)" or "(D) any offense involving…fraud in the sale of securities…"

2.9 BWS Inc. has no business activities other than fraud, no lawful business activities, no clients, no customers, no revenues, no investors, no purchasers of equity, and no donors, and yet has sufficient funds to maintain Ika in a lavish lifestyle and to finance overseas trips for Ika and others to attempt to defraud government agencies around the world, and to hire a full-time attorney, Tomkins, with virtually no other responsibilities other than filing frivolous lawsuits against Dr. Farwell, the owners of the Patents, and others who do business with Dr. Farwell. The Financier, to be revealed in discovery, is the source of these funds. If money laundering is involved (which we do not, as of now, allege, pending discovery of the source of BWS Inc.'s funds and the involvement of the Financier), then this is another instance of racketeering per 18 U.S.C. § 1961, because the Ika's and the other Ika Parties' actions are "indictable under…the following provisions of title 18, United States Code …section 1956 (relating to the laundering of monetary instruments)…"

2.10 All of the Ika Parties know that their claims under the present lawsuit, three other currently ongoing frivolous lawsuits on the same issues described below, and a fifth lawsuit on the same issues in yet another jurisdiction that they filed and then dismissed, have no basis in fact or law. They know that they have no possibility of prevailing on the merits. Their transparent strategy is to use the funds provided by the Financier to force Dr. Farwell to expend all of his available resources in time and money defending lawsuits, and then to prevail by default because Dr. Farwell is unable to continue to finance his responses to the onslaught.

2.11 The Ika Parties are attempting to abuse the US justice system to eliminate Dr. Farwell in two different roles. (a) Dr. Farwell, as an expert witness with unique expertise and experience, is the one person who stands in the way of their attempts to defraud government agencies, misrepresent themselves as forensic neuroscience experts when they are not, and sell counterfeit products and false and inadequate training. (b) Dr. Farwell, as the inventor of Brain Fingerprinting and the individual who with his colleagues is successfully implementing Brain Fingerprinting in government law enforcement and counterterrorism agencies around the world, is also the one individual who is demonstrating by his actions the effective implementation of Brain Fingerprinting that the Ika Parties fraudulently claim to be capable of accomplishing, but aren't. The Ika Parties recognize that until they eliminate from the scene the genuine expert in Brain Fingerprinting, Dr. Farwell, it will be virtually impossible to defraud government agencies into hiring them as experts in Brain Fingerprinting, when they in fact have no such expertise. This is because anyone who does adequate due diligence will discover – as authorities in South Africa, Pakistan, Nigeria, and Thailand did – that Dr. Farwell is the genuine expert and Ika and his employees are frauds.

2.12 Because all of BWS Inc.'s claims in this lawsuit are false, frivolous, and entirely without basis in fact or law, the Ika Parties Ika, BWS LLC, BWS Inc., GOV, HCW, and Tomkins should be required to pay, and Dr. Farwell is entitled to receive, attorney's fees and costs.

2.13 Because the Ika Parties' actions constitute racketeering, as described in detail below, the Ika Parties Ika, BWS LLC, BWS Inc., GOV, HCW, and Tomkins should be required to pay, and Dr. Farwell "shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorneys fee," as per 18 U.S.C. § 1964, "Civil remedies."

2.14   The Ika Parties' scheme to defraud government agencies in various countries also included Ika, Tomkins, and BWS Inc. writing and causing to be delivered a blatantly libelous letter to one of Dr. Farwell's Brain Fingerprinting clients, a government agency in India, attempting to interfere with Dr. Farwell's business and personal relationships, existing contracts, and business activities. Said letter made false, defamatory, and blatantly libelous statements about Dr. Farwell and threatened civil and criminal action against Dr. Farwell's client for doing legitimate business with Dr. Farwell.

## III.   **FACTS**

3.1   As the inventor and world's leading expert in Brain Fingerprinting, and the individual who has successfully implemented Brain Fingerprinting at the FBI, the CIA, the US Navy, and in law enforcement and counterterrorism agencies around the world, Dr. Lawrence Farwell was the primary witness in a fraud suit against Ika, BWS LLC, and BWS Inc. in the United States District Court for the District of Delaware (*E. Hedinger AG and Hedinger Middle East DWC LLC  vs. Brainwave Science, LLC, Brainwave Science, Inc., and Krishna Ika*).  Said fraud suit also was pursued in several other jurisdictions.  In his privileged role as a witness, Dr. Farwell provided a sworn affidavit, the contents of which were truthful and within his knowledge and scientific field of expertise.

3.2   In addition to the above, government and non-government agencies have also accused Ika, BWS LLC, and BWS Inc. of fraud relating to false claims of expertise in Brain Fingerprinting science and ineffective and counterfeit related products in several other countries, including but not limited to Pakistan (Exhibits A and B), South Africa (Exhibits A and C), Nigeria (Exhibit A), and Thailand (Exhibit A).   In light of Dr. Farwell's unique expertise and his considerable knowledge of Ika's alleged crimes, Dr. Farwell may also be a witness in criminal prosecutions that are pursued against Ika, BWS LLC, and BWS Inc. in at least some and likely all of the above jurisdictions, if any, where such prosecutions occur.

3.3   Ika and BWS Inc., along with Ika's attorney Tomkins, have attempted to coerce and intimidate Dr. Farwell into changing his sworn testimony as a witness in Hedinger allegedly in order to conceal alleged fraud by Ika, BWS LLC, and BWS Inc.

3.4   Since Dr. Farwell refused, Ika, BWS Inc., and Tomkins have filed multiple patently frivolous lawsuits against Dr. Farwell and the owners of the Brain Fingerprinting patents, in a transparent attempt to coerce, intimidate, and discredit Dr. Farwell and to force him to expend his resources in time and money defending lawsuits so as to silence, compromise, intimidate, or discredit him as a witness against Ika in fraud cases in Pakistan, South Africa, Nigeria, Thailand, and/or other jurisdictions where Ika has been accused of fraud relating to Farwell's invention of Brain Fingerprinting.

3.5   The forum shopping and witness tampering that Ika, BWS Inc., and Tomkins are now attempting are part of a larger fraudulent scheme. Ika, BFL LLC, the Silent Partner, the Financier, Ika's various attorneys (including Tomkins in the later stages), and possibly one or more Co-Ika Parties (collectively, the Ika Parties) conspired to engage in racketeering and engaged in racketeering in the fraudulent scheme.  The main features of said fraudulent scheme are briefly summarized immediately below.  Details of said fraudulent scheme and exhibits documenting the same follow in subsequent sections.

3.5.1   The relevant portions of the federal RICO Act (18 U.S.C. §§ 1961–1968)  are as follows:

**§ 1961. Definitions**

(1) racketeering activity means…

(B) any act which is indictable under any of the following provisions of title 18, United States Code…section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant).

**§ 1962. Prohibited activities**

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprises affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

**§ 1964. Civil remedies**

(a) The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorneys fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

3.5.2   The Ika Parties fraudulently induced two Washington state residents, Dr. Farwell and BFL Inc., to invest in a security, specifically ownership in BWS LLC, and to execute the BWS LLC Agreement.  They concealed several relevant facts that would have influenced Dr. Farwell's

9

and BFL Inc.'s decision whether to purchase a security. They did not disclose that they would later state on the BWS LLC website and in correspondence with Dr. Farwell that Subu Kota was an officer (Secretary) and board member of BWS LLC, or that Kota was otherwise involved. This is relevant because Kota had pleaded guilty to attempting to sell stolen high-tech secrets to the Soviet Union, a crime very similar to the crimes of which Ika now stands accused in South Africa, Pakistan, Nigeria, and Thailand. They did not disclose that they planned the other fraudulent acts described below with a design to obtain control of the Patents without having to pay for them and to defraud Dr. Farwell and BFL Inc. and misappropriate of all of their original 49% interest (Dr. Farwell 5% non-dilutable and BFL Inc. 44%) in BWS LLC.

3.5.3   The Ika Parties conspired, in the course of negotiations, to obtain Dr. Farwell's signatures on three preliminary documents that concerned terms for the transfer of the Patents to BWS LLC, but lacked any mention of the yet-to-be-negotiated consideration for the same that would flow to the assignors in the actual patent assignments that might be executed by the proper parties when and if the negotiations for consideration were successfully completed. They then recorded these preliminary draft documents with the USPTO as "patent assignments," despite the facts that said documents were signed by undisputed non-owners of the Patents, the one document that mentioned the actual undisputed patent owner was not executed by or even known to the undisputed patent owner, and each of said documents failed on its face as a "patent assignment" because there was no consideration flowing to the apparent purported assignor.

3.5.4   When Ika had apparently succeeded in fraudulently obtaining ownership of the Patents without having to pay any consideration to the patent owner, he then refused to sign any documents calling for any consideration flowing from himself, BWS LLC, HCW, or any other entity in which he had ownership or control. Ika defaulted on his agreement to provide sufficient financing for BWS LLC until the company became profitable.

3.5.5   Dr. Farwell was paid $11,000 per month on some months, $8,000 per month on other months, and nothing on some months over the next several years, not as compensation for the Patents (which Dr. Farwell did had not owned since 2003), but as compensation for his expertise as the inventor and world's leading expert in Brain Fingerprinting.

3.5.6   When Dr. Farwell discovered that documents bearing his signature had been falsely and erroneously recorded at the USPTO, he and BFL Inc. signed and recorded at the USPTO a correction that clarified the continuous, uninterrupted ownership of the Patents by ASI and corrected the erroneous information contained in the three Draft Documents. (The Correction did not result in any change in ownership of the Patents, because ownership never ceased to rest with ASI.)

3.5.7   When the Ika Parties realized that their initial ploy to fraudulently obtain ownership of the Patents without paying any consideration had failed, they devised another scheme to accomplish essentially the same thing. The Ika Parties committed fraud in the inducement against Dr. Farwell and BFL Inc. for a second time, in a second series of transactions, as follows. Ika told Dr. Farwell that he did not have sufficient funds to fund the company as agreed, and that BFL Inc., Dr. Farwell, and HCW would have to sell equity to raise funds. He stated that BFL Inc. and HCW would be proportionally diluted. (Dr. Farwell's shares were non-dilutable.) Ika then pretended to sell some of BFL's equity to a purported independent

10

third party, the "Silent Partner," through HCW, and represented that HCW was doing the same. Through this process, in a series of transactions, Ika purported to reduce BFL Inc.'s ownership of BWS LLC from 44% to 18%, as documented in exhibits below. He purported in the same documents to reduce HCW's equity proportionally. However, he in fact transferred BFL Inc.'s and HCW's "sold" equity to himself or an entity he owned and controlled, and concealed this fact from Dr. Farwell and BFL Inc.

3.5.8   Ika and the other Ika Parties then devised a fraudulent scheme to deprive Dr. Farwell and BFL Inc. of their remaining equity in BWS LLC. This comprised the following steps. The BWS LLC agreement clearly stated that it could be modified only by agreement of all members (Exhibit AV). First, Ika purported to unilaterally change the LLC agreement to grant himself the authority to remove members from the LLC if, in his sole and absolute opinion, they had done certain things that in his opinion were detrimental to the company. Then he called a meeting to remove the Farwell Shareholders as members. Then he purported to remove the Farwell Shareholders as members, and to transfer all of their 21% interest in BWS LLC to himself and/or entities that he controlled, without due process and without any compensation to Dr. Farwell and BFL Inc. for their equity. Ika lacked the authority to remove Dr. Farwell and BFL Inc. as members. Moreover, there can be no question that neither Ika nor anyone else had the authority to misappropriate the Farwell Shareholders' equity and to transfer it to himself without compensation, whatever the purported justification. The only mechanism through which Dr. Farwell's and BFL Inc.'s equity could be transferred to Ika or entities he controlled without consent, due process, or compensation is theft. The above is delineated in detail in later sections of this document below and in the exhibits referred to herein. This attempt to misappropriate Dr. Farwell's and BFL Inc.'s equity in BWS LLC failed, as there clearly was no legal basis for Ika's and the other Ika Parties' actions, and as Dr. Farwell pointed out at the time, Ika and other Ika Parties committed several felonies in the course of the implementing the scheme described above.

3.5.9   When their attempt to misappropriate Dr. Farwell's and BFL Inc.'s equity in BWS LLC failed, the Ika Parties then devised yet another way to fraudulently deprive Dr. Farwell and BFL Inc. of their remaining equity in BWS LLC. BWS LLC was owned 5% by Dr. Farwell, 49% by BFL Inc. (or, if one considers the fraudulent transfer of equity described above to be legitimate, 16% by BFL Inc.), approximately 25% by HCW, and the balance by the Silent Partner. Ika personally owned none of BWS LLC. The Ika Parties formed a new company, BWS Inc. Ika and his attorneys told Dr. Farwell that this was a "reorganization," with no change in ownership, assets, or liabilities. The entire formation of BWS Inc., however, was fraudulent. Ika, who owned none of BWS LLC, owns all of BWS Inc. This means that, in addition to fraudulently eliminating Dr. Farwell's and BFL Inc.'s equity in BWS LLC, either one of two things took place. Either (1) Ika also defrauded the Silent Investor out of his equity in BWS LLC by forming a new entity, BWS Inc. in which the Silent Investor had no interest; or (2) the purported sales of equity that BFL Inc. was forced into by Ika's purported lack of funds to support the company's operations was a sham, and Ika was selling BFL Inc.'s equity to himself or an entity that he controlled, and pretending to sell HCW's equity proportionally, but actually only transferring it to an entity the same that he owned or controlled. Then this sham entity disappeared when BWS Inc. was formed, leaving Ika with 100% of the equity. In either case, this was a scheme to defraud Dr. Farwell and BFL Inc. of their equity in BWS LLC.

3.5.10  As described elsewhere herein, BWS Inc., in addition to the above, was established for three additional fraudulent purposes: (a) to fraudulently gain control of the Patents; (b) to provide a vehicle to defraud government agencies by falsely marketing Ika and his employees as experts in Brain Fingerprinting and attempting to sell a counterfeit product that does not meet the relevant scientific standards along with training by unqualified "trainers"; and (c) to intimidate, coerce, retaliate against, and discredit Dr. Farwell as a past and likely future witness against Ika in fraud cases.

3.6    Ika and BWS LLC accused Kota of being a part of the above described fraudulent scheme.  On the BWS website, Kota was listed as being a member of the board (Exhibits W, X, Y, and Z).  In correspondence with Dr. Farwell, Ika and his attorney identified Kota as the "Secretary" of BWS LLC (Exhibit K).  Ika has implied – but never to the undersigned's knowledge directly stated – that Kota was the Silent Partner and a major owner of BWS LLC. According to current knowledge and belief, Kota denies ever being an officer, board member, investor, owner, or member of BWS LLC or BWS Inc., and denies being involved in any way in any of the alleged fraud, alleged securities violations, alleged theft of the Minority Shareholders' equity, or any other alleged crimes of Ika, BWS LLC, and BWS Inc.

3.7    Prior to the present case, the demonstrably baseless and frivolous legal proceedings initiated by Ika, BWS Inc., and Tomkins comprise (1) An Arbitration Under the Commercial Rules of Arbitration of the American Arbitration Association,  AAA Case Number: 01-20-0005-4534, between Brainwave Science, Inc. (Claimant) and Lawrence A. Farwell, Individually, and Life Science and Technology, LLC (Respondents) (the "BWS Inc.-Farwell Arbitration"); (2) *Brainwave Science, Inc. vs. Farwell, et al., Supreme Ct. of the State of New York County of New York, Index No. 153867/2019* (the "New York suit"); (3) an intervention in a settled arbitration case between NST and Dr. Farwell (*Neuro Science Technologies, LLC vs. Farwell, Case No. 2:20-cv-1554, Fed Cir. 2020*, the "NST vs. LF Arbitration" and the "Motion to Intervene" therein); (4) a lawsuit filed by BWS Inc. against NST in the US District Court for Western Washington (*Brainwave Science, Inc. vs. Neuro Science Technologies, LLC and Ronald J. Kirkendorfer, no. 2:20-cv-01481*, the "BWS Inc. vs. NST Suit," all of which are ongoing; and (5) a case filed by Ika and BWS Inc. before the US District Court for Wyoming (*Brainwave Science, Inc. vs. Life Science and Technology, LLC, Case No. 19-CV-167-F* (the "Wyoming Suit") which has been dismissed without prejudice.

3.8    Ika, BWS LLC, BWS Inc., and Tomkins have maintained two patently false propositions: (1) That BWS Inc. owns the exclusive rights to Dr. Farwell's invention of Brain Fingerprinting as embodied in the Brain Fingerprinting Patents based on the following events: (a) Without the knowledge or consent of ASI, the undisputed owner of the patents at the time, Ika's attorney recorded at the US Patent and Trademark Office ("USPTO") a document that was not executed by or even known to ASI, and was signed only by  a member of BWS LLC (Dr. Farwell) who had no authority to sign on behalf of the undisputed owner of the Patents; (b) BWS Inc. owns the patents because they were assigned to BWS **LLC** -- even though they have never been assigned to BWS **Inc.**, and BWS LLC and BWS Inc. have totally non-overlapping owners; and (c) BWS Inc. still has exclusive rights to the invention embodied, disclosed, and enabled in the Expired Patents even though the Expired Patents have expired; (2) Ika and entities he owns or controls wholly own BWS LLC and BWS Inc., and Ika, BWS LLC, and BWS Inc. owe nothing to the Minority Shareholders (Farwell and BFL Inc.) for misappropriating their 49% equity in BWS LLC, based on the following events: (a) Ika unilaterally purported to amend the BWS

LLC agreement to grant himself the right to expel members at his sole and absolute discretion, despite clear language in said agreement that such modification could only be made with the consent of all members; (b) Ika purported to expel Dr. Farwell and BFL Inc., the other minority member of BWS LLC, without consent or due process; (c) Ika, BFL LLC, and BFL Inc. paid no compensation to said expelled members for their 49% equity in said BFL LLC; and (d) BFL LLC was dissolved and its assets transferred to BWS Inc., which is solely owned by Ika and in which the minority shareholders, Dr. Farwell and BFL Inc., have no interest.

3.9     Ika, Tomkins, and BWS Inc. have engaged in a pattern of practice of forum shopping the courts of the United States to find a forum that is most inconvenient to Dr. Farwell, notwithstanding the fact that many of the facts that gave rise to the Parties' disputes in each of these four ongoing actions are identical. Ika Parties know or should know that the four ongoing legal actions are without basis in fact or law, and that they have no chance of prevailing on the merits. Said lawsuits and Ika's attempt to intervene in this case are filed in bad faith with the purpose of attempting to exhaust the limited resources of Dr. Farwell, LST (the former Patent owner), and NST (the current Patent owner), in order to gain control of Dr. Farwell's invention and eliminate Dr. Farwell as a competitor in applying said invention and as an expert witness uniquely qualified to truthfully testify regarding the fraudulent nature of Ika's attempts to market himself and his employees as experts in Brain Fingerprinting capable of effecting a technology transfer of the same to a client.

3.9.1   For example, although the Wyoming suit was dismissed, it nevertheless served a purpose for the Ika Parties as a planned part of their fraudulent scheme. They filed the lawsuit against LST, in yet another inconvenient jurisdiction for Dr. Farwell, knowing that it was totally frivolous, and sought the same outcome as they sought in the New York case: a declaration that BWS Inc. had clear title to the Patents. Despite the fact that BWS Inc.'s case was totally without merit, Dr. Farwell was required to spend money petitioning to intervene in the case to prevent a decision by default that BWS Inc. owned the Patents and could prevent Dr. Farwell from practicing his invention. After Dr. Farwell had spent considerable time, effort, and money, but before the Court reached the inevitable conclusion that the case was frivolous, the Ika Parties dismissed the case. In a similar ploy, the Ika Parties called a meeting in Boston, ostensibly to negotiate a resolution of the various lawsuits. After Dr. Farwell had flown from London to Boston at his own expense and paid for his stay in Boston, they cancelled the meeting without reason or explanation, once again using trickery and deceit to cause Dr. Farwell to expend money. All of this reveals the Ika Parties' overall strategy, of which this lawsuit is a part, to exhaust Dr. Farwell's resources and thereby eliminate him as a witness in fraud cases against Ika and as a successful practitioner of his invention of Brain Fingerprinting (which, by contrast, they are not).

3.10    Statutory law and legal precedent, not to mention elementary logic and common sense, confirm the following indisputable truths. (1) If Person A legally assigns a patent to Person B, in a properly executed and undisputed transaction, properly recorded at the United States Patent and Trademark Office (USPTO), then Person B owns said patents and IP, and Person A cannot assign legally assign the same to Person C (or anyone). (2) If person D never has been assigned, never has had, never has claimed, and never has been said by anyone to have ownership of a patent and associated intellectual property, Person D cannot legally assign said patent to Person C (or anyone). (3) If Person B is the undisputed owner of a patent, said patent cannot be assigned by, and patent ownership is unaffected by, any document that is not executed by Person B. Specifically, patent

ownership cannot be assigned to Person C by a document that is not executed by a member, equity holder, officer, employee, agent, or any authorized representative of Person B, wherein the existence of said document and even the existence of Person C and any surrounding circumstances are not known to Person B, and furthermore wherein said document could not be a valid patent assignment because there was no consideration flowing to Person B.  Statements (1), (2), and (3) remain true regardless of what anyone says.

3.10.1   The above statements apply to the present case as follows.  (1) Dr. Farwell, inventor, assigned the Patents and associated IP to ASI in 2003, in a properly executed and undisputed transaction, properly recorded at the United States Patent and Trademark Office (USPTO).  Dr. Farwell could not assign said Patents and associated IP to BWS LLC (or anyone) in 2013, because he had no ownership interest in the same. The "LF-BWS Draft Document" referenced below, signed by Dr. Farwell in 2013, did not transfer any Patent ownership to BWS LLC. (2) BFL Inc. never has been assigned, never has had, never has claimed, and never has been said by anyone to have ownership of the Patents and associated intellectual property. The "BFL – BWS Draft Document" referenced below, signed by Dr. Farwell as Chairman of BFL Inc. in 2013, did not transfer any Patent ownership to BWS LLC. (3) ASI was the undisputed Patent owner in 2013.  The "Unexecuted ASI – BWS Draft Document" was not signed by ASI, or by any member, equity holder, officer, employee, agent, or any authorized representative of ASI. It was signed by Dr. Farwell as a draft document in the course of negotiations, and was never intended by either Dr. Farwell or ASI to be recorded at the USPTO. The existence of said document and even the existence of BWS LLC (the apparent "assignee") and any surrounding circumstances were not known to ASI, ASI never made any representations that might have been construed as granting Dr. Farwell the authority to assign ASI's Patents to anyone or granting BWS LLC the stature of a possible assignee of said Patents. Furthermore, said document could not be a valid patent assignment because there was no consideration flowing to ASI.

3.11   In normal human discourse, both in legal proceedings and elsewhere, it is an established principle that when Party X makes a demonstrably and unequivocally false statement, and Party Y states and thoroughly documents the indisputable fact that said statement is demonstrably and unequivocally false, it is incumbent on Party X to do one of two things: (1) acknowledge that said statement is false; or (2) present some new evidence and some new argument based thereon to support the view that said statement may not be entirely false.  At a minimum, it is incumbent on Party X to stop simply repeating the same false statement without any reference to or acknowledgement of reality.

3.11.1   The above applies to Ika, BWS Inc., and Tomkins as follows.  In the New York case, Ika made the patently false and frivolous statement that Dr. Farwell assigned the Patents in 2013 to BWS LLC by (a) signing the LF-BWS Draft Document on behalf of himself (an undisputed non-owner of the Patents); (b) signing the BFL – BWS Draft Document as Chairman of BFL Inc. (another undisputed non-owner of the Patents) and (c) signing the Unexecuted ASI – BWS Draft Document on behalf of ASI (the undisputed Patent owner), an entity in which he was not an owner, equity holder, member, officer, employee, agent, or any kind of authorized representative, and for which he had no authority or apparent authority to sign. These are facts regarding which ASI had never made any representations that might possibly be construed to the contrary.

3.11.2 Dr. Farwell stated and thoroughly documented, in the New York case, the indisputable fact that Ika's and Tomkins' above statement was demonstrably and unequivocally false, as summarized above and explained in detail below with reference to the corresponding exhibits.

3.11.3 Ika and Tomkins have taken an aggressively fact-resistant stance regarding these realities. Ika and Tomkins did not address the fact that their statement in the New York case had been definitively proven to be false. They made no attempt to address reality or the proven facts of the situation. They simply repeated the same false and frivolous statement, virtually word for word, in three subsequent and now ongoing legal cases (1) the BWS Inc.-Farwell Arbitration; (2) this attempt to intervene in the settled NST vs. Farwell arbitration that was recorded in the US District Court for Western Washington; and (3) their lawsuit against NST in the US District Court for Western Washington. (They also repeated it in the now dismissed Wyoming suit.) When Dr. Farwell documented in all three of these forums that Ika's and Tomkins' statement was demonstrably and unequivocally false, they again made no attempt to address the facts. They simply repeated the same false statement virtually word for word, again in each forum, with no mention of or reference to the actual facts of the situation.

3.11.4 Ika's and Tomkins' continuing, again and again in different forums, to repeat their blatantly false statement, which has been exposed as unequivocally and demonstrably false, without any attempt to address -- or even acknowledge the existence of -- the proven facts of the situation, defies not only the relevant laws, legal precedent, and normal legal procedures, but also elementary logic and common sense.

3.12   Even if one accepts BWS Inc.'s clearly untenable and frivolous premise that the three Draft Documents specified above (referred to in BWS Inc.'s documents as "Intellectual Property Acknowledgment and Assignment Agreements of June 17, 2013") were legal patent assignments and transferred ownership of the Patents, BWS Inc. has provided absolutely no evidence that BWS Inc. has or ever had any ownership interest in the Patents and associated IP.

3.12.1 Tomkins and Ika have manufactured a fiction that BWS Inc. owns the patents. In reality it does not and never did. BWS Inc. has offered absolutely no evidence that any patents ever were assigned to it, because such evidence does not exist. In the absence of any evidence, BWS Inc. has resorted to verbal trickery as its only resource to support the fiction it generated. BWS Inc.'s Notice of Arbitration (Supplement) (the "Notice") conflated two different entities with similar names and identical initials, Brainwave Science, Inc. and Brainwave Science, LLC." (For the sake of clarity and contrary to Tomkins' abbreviation, Brainwave Science, Inc. is referred to herein as "BWS Inc." and Brainwave Science LLC is referred to as "BWS LLC.")

3.12.2   Said Notice stated the following: "Claimant Brainwave Science, Inc. ('BWS') is a Delaware corporation…"

"On or about June 27, 2012, non-party entities American Scientific Innovations, LLC, Inc., Brain Fingerprinting Laboratories, Inc. and Dr. Lawrence Farwell assigned BWS all rights, title and interest in… patents [the Patents]…The June 27, 2012 assignments were memorialized within Intellectual Property Acknowledgment and Assignment Agreements on June 17, 2013. True and accurate copies of the Intellectual Property Acknowledgment and Assignment Agreements are attached hereto as Exhibit B…

"BWS maintains that it lawfully acquired the subject intellectual property…"

3.12.3 Setting aside the fact that said documents were not valid patent assignments (as described above), BWS Inc.'s above statements are a total fabrication that bears no resemblance to the

demonstrable facts. **None of the documents that BWS Inc. says transferred the patents to it (BWS Inc.'s Exhibit B) even mentioned BWS Inc. The entity mentioned in said documents was Brainwave Science LLC, not Brainwave Science, Inc. ("BWS" in Tomkins' terminology). "BWS" [Inc.] could not possibly have been the assignee of the Patents when those documents were recorded at the USPTO in 2013, because "BWS" [Inc.] did not exist in 2013.**

3.12.4  BWS Inc. and BWS LLC are different entities with entirely non-overlapping ownership. Ika personally owns none of BWS LLC. Ika personally owns all of BWS Inc. BWS LLC is owned by Dr. Farwell, BFL Inc., HCW, and an undisclosed Silent Partner of HCW. (Exhibits F and AW; note that the latter states the percentages of ownership based on purported dilution of BFL Inc. that BFL Inc. and Dr. Farwell dispute, as further discussed below.)

3.12.5  It is frankly insulting to the arbitrators and judges in the various cases for Tomkins and Ika to presume that they will not have the mental acuity to read abbreviations and distinguish between two different entities with the same initials and similar names (and non-overlapping ownership). Even if the patents had been assigned to BWS LLC (which they were not), that says nothing about their ever being assigned to BWS Inc. **Tomkins' trickery was to use the initials "BWS," which are common to BWS LLC and BWS Inc., to give the false impression that documents mentioning BWS LLC (and not BWS Inc.) assigned patents to BWS Inc.** (Note, once again, that said documents did not actually assign any patents to BWS LLC either.)

3.13  On or about May 8, 2013, the following members entered into a Restated Limited Liability Company Agreement (the "BWS LLC Agreement," Exhibit F): Dr. Lawrence A. Farwell, HCW (signatory: Krishna Ika), and Brain Fingerprinting Laboratories, Inc. (signatory: Dr. Lawrence A. Farwell).

3.14  As an incentive to invest in BWS LLC and thereby purchase a security, Ika Parties Ika, HCW, GOV, and BWS LLC falsely and fraudulently told the Minority Shareholders that Ika and HCW would finance BWS LLC until either a buyout by a large company, or an IPO, or major funding at a reasonable company valuation was obtained, and the Minority Shareholders would realize a substantial profit unless the company failed and went bankrupt.

3.15  As an incentive to invest in BWS LLC and thereby purchase a security, Ika Parties Ika, HCW, GOV, and BWS LLC falsely and fraudulently told the Minority Shareholders that their equity in BWS LLC would be safe from being assigned to anyone else for any reason; that there was no risk of their equity being assigned to anyone else or otherwise forfeited for any reason; that, although their equity would lose value if the company failed, as long as the company was successful their equity would retain its value, they would continue to own said equity, and they would receive a substantial return on their investment; and that, although their equity could be diluted with their consent when and if additional investors joined the LLC, their equity would never be diluted without their consent.

3.16  At the time of the Minority Shareholders' initial investment and for years thereafter, Ika Parties Ika, HCW, GOV, and BWS LLC concealed from the Minority Shareholders the identity of Ika's Silent Partner, Financier, investor, and equity holder and said partner's history, thus concealing from the Minority Shareholders significant, relevant, material information that would have influenced Minority Shareholders' decision to invest in BWS LLC.

3.17   At the time of the Minority Shareholders' initial investment and for years thereafter, Ika Parties Ika, HCW, BWS LLC, and GOV concealed from the Minority Shareholders the fact that soliciting their investment was part of a scheme, in conspiracy with others, perhaps including the undisclosed Silent Partner and the Financier, to gain control of Dr. Farwell's invention of Brain Fingerprinting and associated patents and intellectual property, then to deprive Dr. Farwell and BFL Inc. of any equity in the entity that controlled said invention or any share in the profits of said entity, and then to attempt to fraudulently sell an imitation of Dr. Farwell's invention of Brain Fingerprinting to foreign governments.

3.18   Ika Parties Ika, HCW, BWS LLC, and GOV committed fraud in the inducement in inducing Dr. Farwell and BFL Inc. to sign the BWS LLC Agreement and other prior and subsequent related and similar agreements, amendments, and re-statements, as described above.

3.19   In executing the BWS LLC Agreement, the Minority Shareholders, both Washington residents at the time, purchased a security upon false and fraudulent representations by Ika Parties Ika, HCW, GOV, and BWS LLC.

3.20   Upon information and belief, an undisclosed Silent Partner became a shareholder in BWS LLC subsequent to its formation, without disclosure of the identity or history of said partner to the Minority Shareholders, such that Ika, HCW, and the Silent Partner collectively owned a controlling interest in BWS LLC.

3.21   Ika Parties Ika, HCW, GOV, BWS LLC, and likely others including the Silent Partner and the Financier, conspired to fraudulently deprive Minority Shareholders of their equity in BWS LLC.

3.22   The BWS LLC Agreement (Exhibit F) stated the following: "Section 26. Amendments. This Agreement may be modified, altered, supplemented or amended pursuant to a written agreement executed and delivered by the Members."

3.23   Ika Parties Ika, GOV, and HCW, BWS LLC and likely other Ika Parties, unilaterally, without the consent of the Minority Shareholders, purported to amend the BWS LLC Agreement. The purported amendment granted the Managing Member, Ika/HCW, the authority to remove the Minority Shareholders as members and to transfer all of the Minority Shareholders' equity to Ika, HCW, the Silent Partner, and/or BWS LLC, without consent of the Minority Shareholders and without due process of law. The only stated requirement for so doing was that in the Managing Member's (Ika's) sole and absolute opinion the Minority Shareholders had engaged in certain actions – whether the Minority Shareholders had actually engaged in said actions or not, and whether Managing Member's opinion was in good faith or not.

3.24   Ika notified Farwell, but not Brain Fingerprinting Laboratories, Inc., of his intent to hold a meeting to grant himself the authority to remove the Minority Shareholders and misappropriate the Minority Shareholders' equity as described above. (Exhibit G).

3.25   Farwell replied that he would not participate in such a meeting, because to do so would clearly be committing a felony (Exhibit H).

3.26   Ika notified Farwell, but not Brain Fingerprinting Laboratories, Inc., that he had held said meeting and had granted himself the authority to misappropriate the Minority Shareholders' equity (Exhibit I).

3.27   Farwell replied that Ika, in so doing, had committed a number of felonies (Exhibit J).

3.28   Ika notified Farwell, but not Brain Fingerprinting Laboratories, Inc., that he had exercised his purported authority to remove the Minority Shareholders as members of BWS LLC and misappropriate all of the Minority Shareholders' equity, and that Minority Shareholders were no longer members of BWS LLC and no longer had any equity in BWS LLC (Exhibit K).

3.29   Ika Parties paid no compensation to Dr. Farwell and BFL Inc. for Dr. Farwell's and BFL Inc.'s equity in BWS LLC that Ika Parties misappropriated without consent or due process of law (Exhibit K).

3.30   Farwell replied that in misappropriating Farwell's and BFL Inc.'s equity in BWS LLC, Ika Parties had committed a number of felonies and a number of torts, and the misappropriation of Minority Shareholders' equity was not valid and would not stand (Exhibit L).

3.31   Upon information and belief, Ika Parties Ika, HCW, GOV, and BWS LLC, and likely other Ika Parties, then conspired to further defraud Dr. Farwell and BFL Inc. by dissolving BWS LLC and transferring its assets to a new company, BWS Inc.  The apparent motive for this was that Ika Parties must have realized that their scheme to misappropriate Minority Members' equity as described above was illegal and would not stand up in court, and dissolving BWS LLC and transferring its assets to BWS Inc was a second method to defraud the Minority Shareholders of their equity.

3.32   The BWS LLC Agreement stated the following: "Section 10. Capital Contributions, etc. (a) Capital Contributions of Members. Notwithstanding anything herein to the contrary, the Managing Member [HCW] shall make capital contributions to the equity capital of the Company as determined from time to time by the Managing Member; provided that such capital contributions shall be in amounts sufficient to satisfy any obligations to make any required payment pursuant to the terms of that certain Consulting Agreement between the Company and Neuroscience Inventions, LLC dated July 5, 2012."

3.33   Ika and HCW defaulted on their agreement to provide said capital contributions.  In so doing they defaulted on the BWS LLC Agreement.

3.34   On or about June 17, 2013, Ika Parties Ika, BWS LLC, HCW, and GOV developed a preliminary draft document for intellectual property (the "Unexecuted ASI-BWS Draft Document," Exhibit M).  The purpose of the Unexecuted ASI-BWS Draft Document was to outline the terms of an intellectual property assignment that could be executed by the authorized parties after all of the parties had reached an agreement on the compensation that would be exchanged for the assignment of intellectual property.  Dr. Farwell, acting in good faith but erroneously, and believing that (a) that this was simply a draft, as Ika Parties Ika, HCW, and GOV represented it, and (b) that he could persuade the authorized parties to execute a similar document once the compensation for the exchange of intellectual property had been agreed upon and the relevant documents executed, wrote his name on the Unexecuted ASI-BWS Draft Document without verifying who actually had the authority to execute the document.  In fact, Dr. Farwell did not have the authority to execute a document on behalf of American Scientific Innovations, LLC, the undisputed owner of the Patents at the time.  Dr. Farwell (Exhibit AE) and Ben Bryant, General Manager of ASI, (Exhibit AD) both executed sworn affidavits evidencing the same.

3.35    The Unexecuted ASI-BWS Draft Document was not notarized.  The signatures thereon were not witnessed.  This is consistent with the fact that the Unexecuted ASI-BWS Draft Document was a draft document and not a document intended to be recorded with the USPTO.

3.36    The spaces in the Unexecuted ASI-BWS Draft Document reserved for the description of ASI, the state where it was organized, and the address of ASI were left blank, as is common in an unexecuted draft document, and unheard-of in a legitimate document intended to be recorded with the USPTO.

3.37    On or about June 17, 2013, Ika Parties Ika, BWS LLC, HCW, and GOV developed a second preliminary draft document for intellectual property (the "BFL – BWS Draft Document," Exhibit N), which was signed by Ika representing HCW as general manager of BWS LLC and Dr. Farwell as chairman of BFL Inc..

3.38    On or about June 17, 2013, Ika Parties Ika, BWS LLC, HCW, and GOV developed a third preliminary draft document for intellectual property (the "LF – BWS Draft Document," Exhibit O), which was signed by Ika representing HCW as general manager of BWS LLC and Dr. Farwell.

3.39    Collectively, the Unexecuted ASI-BWS Draft Document, the BFL – BWS Draft Document, and the LF – BWS Draft Document, are referred to herein a the "Draft Documents."

3.40    At the time of the development of the Draft Documents, and for years thereafter and years before, Ika Parties Ika, HCW, BWS LLC, and GOV concealed from the Minority Shareholders the facts that a certain individual was Ika's Silent Partner and that they would later claim on the BWS LLC website and in correspondence that Subu Kota was also involved in BWS LLC, as described above. This is relevant because Kota had pleaded guilty to attempting to sell stolen high-tech secrets to the Soviet Union, a crime very similar to the crimes of which Ika now stands accused in South Africa, Pakistan, Nigeria, and Thailand.  The Ika Parties also did not disclose that fraudulently inducing Dr. Farwell and BFL Inc. to sign said documents was part of a scheme to gain control of Dr. Farwell's invention of Brain Fingerprinting and associated Patents, then to deprive Dr. Farwell and BFL Inc. of any equity in the entity that controlled said invention or any share in the profits of said entity, and then to fraudulently misrepresent themselves as experts in psychophysiology, forensic neuroscience, and specifically Brain Fingerprinting and to fraudulently attempt to sell an imitation, counterfeit version of Dr. Farwell's invention of Brain Fingerprinting to foreign governments.

3.41    Upon information and belief, American Scientific Innovations LLC, was founded in 2002, with Ben Bryant serving as General Manager.

3.42    Upon information and belief, at the time of the execution of all documents referenced herein that involve ASI, the only individual authorized to execute any agreement on behalf of ASI was the General Manager, Ben Bryant.  Dr. Farwell and Ben Bryant have executed sworn affidavits stating the same (Exhibits AE an AD respectively).

3.43    Upon information and belief, Dr. Lawrence Farwell has never been an employee, officer, agent, or member of ASI. Dr. Farwell and Ben Bryant have executed sworn affidavits stating the same (Exhibits AE an AD respectively).

3.44    Upon information and belief, Dr. Lawrence Farwell has never been authorized to execute any agreement on behalf of AIS, nor did Dr. Farwell ever have apparent authority to do so.  Dr.

Farwell and Ben Bryant have executed sworn affidavits stating the same (Exhibits AE an AD respectively).

3.45   On or about January 24, 2003, Dr. Lawrence A. Farwell, inventor, assigned his interest in the Brain Fingerprinting Patents and all associated "Brain Fingerprinting" intellectual property to ASI. (Exhibit P).  Dr. Farwell therefore subsequently had no ownership interest in said patents or associated "Brain Fingerprinting" intellectual property.  Any agreement between Dr. Farwell and Brainwave Science, LLC or any other party could not result in a change in ownership of said patents or any associated "Brain Fingerprinting" rights or intellectual property.

3.46   On or about April 2, 2010, Dr. Lawrence A. Farwell, inventor, assigned his interest in US Patent 7,689,272 to ASI (Exhibit Q). Dr. Farwell therefore subsequently had no ownership interest in the Patents or associated intellectual property.  Any agreement between Dr. Farwell and Brainwave Science, LLC or any other party could not result in a change in ownership of the Patents or associated intellectual property.

3.47   Brain Fingerprinting Laboratories, Inc. has never claimed and has never had any ownership interest in the Patents and could not assign any ownership interest in the Patents to BWS LLC or any other party.

3.48   Brain Fingerprinting, LLC has never claimed and has never had any ownership interest in the Patents and could not assign ownership interest in the Patents to BWS LLC or any other party.

3.49   Upon information and belief, at the time of the Unexecuted ASI-BWS Draft Document, the compensation to ASI for the intellectual property, and compensation to Dr. Farwell for services rendered were still under negotiation.  Dr. Farwell signed several documents that Ika had led him to believe were non-binding drafts, on the level of a letter of intent, that would be replaced by binding, properly written and executed documents that would be executed by the authorized parties only after appropriate compensation had been agreed upon for both Dr. Farwell's services and ASI's intellectual property.

3.50   Dr. Farwell was not concerned at the time of the Unexecuted ASI-BWS Draft Document about the precise wording of the Unexecuted ASI-BWS Draft Document, or about who had standing at ASI, because Ika had led him to believe that before the actual licensing or transfers of Patents to BWS would take place, formal agreements providing for compensation to Dr. Farwell, BFL Inc., and ASI would be executed, and all details could be corrected at that time.  Dr. Farwell wrote his name on said document in good faith, believing that it was a draft that would not be recorded at the USPTO.

3.51   The Unexecuted ASI-BWS Draft Document is null and void and has no legally binding effect because the signatory thereon, Dr. Farwell, was not a member, officer, board member, equity holder, agent, or representative of ASI, the apparent assignor, and had no authority to execute any agreement on behalf of ASI.  Both Dr. Farwell (Exhibit AE) and Ben Bryant (Exhibit AD), the General Manager and only authorized signatory for ASI, executed sworn affidavits evidencing these facts.

3.52   The Unexecuted ASI-BWS Draft Document was written, signed, and recorded at the USPTO without the knowledge or consent of the apparent assignor, ASI. ASI, who owned the Patents, and Dr. Farwell, who signed said Draft Document, never intended it to be recorded at the USPTO or to be employed as a means transfer any interest in the Patents and associated intellectual property.

3.53    The Draft Documents are null and void for at least four additional reasons: (1) said documents provided for no quid pro quo, no compensation to the respective apparent assignors, ASI, BFL Inc., and Dr. Farwell;  (2) Ika Parties Ika, HCW, BWS LLC, and GOV committed fraud in the inducement in inducing Dr. Farwell and BFL Inc. to sign the Draft Documents, as described herein; (3) In furtherance of said fraudulent inducement, Ika and HCW defaulted on the BWS LLC Agreement, as described herein; and (4) said documents were preliminary drafts, were not intended by the respective apparent assignors – Dr. Farwell, BFL Inc., and ASI -- to be recorded at the USPTO, and were recorded at the USPTO by BWS LLC without the knowledge or consent of the apparent assignors.

3.54    Aside from the status of the BFL – BWS Draft Document described above, the BFL – BWS Draft Document did not in any case transfer any interest in the Patents and associated intellectual property because BFL Inc. had no such interest.  BWS Inc. had never received a transfer of the Patents and associated intellectual property and never had or claimed any interest in the Patents and associated "Brain Fingerprinting" intellectual property.

3.55    Aside from the status of the LF – BWS Draft Document described above, the LF – BWS Draft Document did not in any case transfer any interest in the Patents and associated intellectual property because at the time of said document Dr. Farwell had no interest in the Patents and associated "Brain Fingerprinting" intellectual property. He had previously transferred the same to ASI, as described above.

3.56    As a consequence of the above, no ownership interests in any Patents or intellectual property was transferred by the Draft Documents.  Consequently, BWS LLC never owned any Patents, any "Brain Fingerprinting" intellectual property, any other related intellectual property, or any intellectual property relevant to the disputes specified herein.  (As described herein, BWS Inc. was not even mentioned in any of said documents, any patent assignments, or any other documents ever filed at the USPTO.)

3.57    The false, invalid, and erroneous recording of the Unexecuted ASI-BWS Draft Document gave the false appearance that BWS LLC owned ASI's Patents, whereas in fact since Dr. Farwell did not have the standing to sign for ASI, the ownership of the Patents and associated intellectual property always continued to rest with ASI.

3.58    Apparently believing that he had obtained all of ASI's interest in the referenced Patents without giving anything in return for it – as evidenced by the lack of compensation in the Unexecuted ASI-BWS Draft Document, the BFL – BWS Document, and the LF – BWS Document -- Ika then refused to sign any agreement for any compensation to ASI, Dr. Farwell, BFL Inc., or anyone else for the intellectual property embodied in the Patents.

3.59    The Brain Fingerprinting Patents have all expired. U.S. Patent 5,363,858 expired May 5, 2013. U.S. Patent #5,406,956 expired February 11, 2013.  U.S. Patent #5,467,777 expired September 15, 2014.

3.60    US Patent # 7,689,272 remains in force, and will expire June 7, 2022.

3.61    On or about October 29, 2013, in order to correct the erroneous, false, and unauthorized recording of the Draft Documents at the USPTO and to eliminate any doubt regarding the continued ownership of the Patents and all associated intellectual property by the rightful owner thereof, ASI, Dr. Farwell and BFL Inc. executed the Corrected Nunc Pro Tunc Intellectual

21

Property Acknowledgement and Assignment (the "Correction," Exhibit A) and recorded it at the USPTO.

3.62    ASI's ownership of the Patents does not depend on the Correction.  Since BWS LLC never owned any of the Patents or associated intellectual property, the Correction was unnecessary to secure ASI's uninterrupted ownership thereof.  The Correction did, however, notify the USPTO of the correct situation regarding the same.

3.63    In correspondence with BWS LLC, Dr. Farwell acknowledged that ASI owned and had always owned the Patents, and that the Unexecuted ASI-BWS Draft Document did not transfer ownership in the Patents and associated intellectual property (Exhibit H).

3.64    In correspondence with Dr. Farwell, BWS LLC through its attorney Moreno acknowledged that ASI owned and had always owned the Patents and associated intellectual property, and that the Unexecuted ASI-BWS Draft Document did not transfer ownership in the Patents and associated intellectual property to BWS LLC, and that BWS LLC never had any ownership of the Patents and associated intellectual property.  The "SECTION 18(e)(i) NOTICE - VOTE TO REMOVE MEMBER" from BWS' attorney Moreno to Dr. Farwell (Exhibit G) admitted as follows:

    a.   Said Letter acknowledges one fact that is in true and indisputable:

        "…the transfer" [of ] "the Patents and the Fingerprinting IP to the Company"…"was invalid because Farwell and BFL were not the rightful owners with the requisite right, title and interest to the transferred assets." (page 3, paragraph 4).

    One fact that the Letter clearly admits in the above section -- which is true, accurate, and indisputable -- is that there never existed a valid assignment of any of the Patents or IP to BWS LLC, and thus BWS LLC never owned any of the patents or IP.

    b.   BWS LLC further admits this in said Letter in the following section.

    "Company [BWS]…providing Farwell with equity in the Company, which has caused the Company substantial damage as it received no value in exchange for the equity provided to Farwell and BFL." (page 6, paragraph 1)

    The above statement admits one thing that is factual: The Company received no IP or interest in Patents in exchange for providing Dr. Farwell with equity in the company.  It is false, however, that the Company received no value.  On the contrary, the Company received the services and expertise of the inventor and world's leading expert in Brain Fingerprinting (Dr. Farwell).

3.65    In 2012-2016 BWS LLC and BWS Inc paid a retainer of between $8,000 and $11,000 per month to Dr. Farwell on some months, and nothing on other months.

3.66    Dr. Farwell was identified on BWS LLC's website as a Board Member and Officer (Chief Scientist) of BWS LLC (Exhibits V, W, X, Y, and Z).

3.67    In a transparent attempt to intimidate Dr. Farwell, BFL Inc., and ASI, Ika Parties Ika, GOV, and BWS LLC misrepresented the status in BWS LLC of two individuals on the BWS LLC website, www.brainwavescience.com. Said website misrepresented Trump advisor General Michael Flynn ("Flynn") and former FBI deputy director Brian McCauley ("McCauley") as

being a members of the Board of Directors (Exhibit Y). This misrepresentation took place in 2016, when Ika and BWS LLC were issuing threats and demands to Dr. Farwell and ASI related to ownership of the Patents (Exhibits G, H, I, J, K, and L).

3.68   Apparently to the same end as described in the paragraph immediately above, Ika Parties Ika, GOV, and BWS LLC misrepresented the status in BWS LLC of Subu Kota. They misrepresented Kota on their website as being on the Board of Directors of BWS LLC (Exhibits W, X, Y, and Z). In correspondence and communications to Dr. Farwell and BWS LLC, Ika and BWS Inc. through their attorneys also misrepresented Kota as being an Officer (Secretary) of BWS LLC (Exhibit K) and investor in BWS LLC (BWS LLC's attorney Tompkins' allegations in Dr. Farwell's deposition in the King County, Washington case). By falsely identifying Kota as being a board member, officer, a major equity holder, and by implication a participant in the alleged fraud and other alleged crimes of Ika and BWS LLC, BWS LLC and Ika damaged the reputation of Kota and attempted to defraud Dr. Farwell.

3.69   Upon information and belief, and contrary to information on the BWS LLC website (Exhibits W, X, Y, and Z) and in the news media (Exhibits AB and AC) and/or misinformation propagated to Dr. Farwell by Ika Parties (Exhibit K and allegations of BWS Inc.'s attorney Tomkins in Dr. Farwell's deposition in the King County, Washington case), Kota has never been a member, board member, equity holder, investor, or officer of BWS LLC or BWS Inc., and did not participate in any of the alleged fraud or other alleged crimes of Ika, BWS LLC, or BWS Inc. As described herein, Kota is not a part of this action or any other legal action involving the Dr. Farwell, or, to the knowledge of the Dr. Farwell, any other legal action involving any of the parties hereto. Upon knowledge and belief, Kota has committed no crimes or torts related to any of the parties hereto.

3.70   The misinformation presented on the BWS LLC website regarding alleged connections between BWS LLC and Flynn, McCauley, and Kota (Exhibits V and Y), and alleged participation at least of Kota in some of the alleged crimes of Ika and BWS LLC (Exhibits H, J, and K), damaged the reputations of Flynn, McCauley, and Kota, as reported in the press (Exhibits AA, AB, and AC). The same misinformation regarding the alleged connection of Dr. Farwell to all of the above also damaged the reputation of Dr. Farwell (Exhibit AB).

3.71   On or about March 15, 2015, ASI assigned the Patents to Life Science and Technology, LLC. Said assignment was properly executed by Ben Bryant, the General Manager and sole authorized signatory for ASI, and recorded with the US Patent and Trademark Office (Exhibits B, C, D, and E).

3.72   Dr. Farwell is not a member, officer, equity holder, board member, employee, or agent of LST. Dr. Farwell and the President of LST, Ron Kirkendorfer have so stated in sworn affidavits (Exhibits AE and AF respectively).

3.73   Ika Parties BWS LLC, BWS Inc, and Krishna Ika have falsely and fraudulently claimed that they own the Patents and the associated "Brain Fingerprinting" intellectual property disclosed and enabled therein.

3.74   Ika Parties Brainwave Science, LLC, Brainwave Science, Inc., and Krishna Ika have falsely and fraudulently claimed that they are offering for sale a viable product that embodies the intellectual property described in the Brain Fingerprinting Patents, whereas in fact they are attempting to market a counterfeit product that does effectively implement the invention

embodied in the Brain Fingerprinting Patents and does not meet the published and peer-reviewed Brain Fingerprinting Scientific Standards.

3.75    Ika Parties Brainwave Science, LLC, Brainwave Science, Inc., and Krishna Ika have made multiple false and fraudulent claims on their website (www.brainwavescience.com) and elsewhere regarding the Brain Fingerprinting science and technology that is embodied in the Brain Fingerprinting Patents and that Dr. Lawrence Farwell invented, developed, patented, published in the peer-reviewed scientific literature, successfully applied in criminal cases and in court, and continues to apply. This is documented in Exhibits S and U.

3.76    Ika Parties Brainwave Science, LLC, Brainwave Science, Inc., and Krishna Ika are falsely and fraudulently attempting to market a counterfeit product that does not have the qualities and attributes of the genuine Brain Fingerprinting invented by Dr. Lawrence Farwell and embodied in the Patents, is equivalent to Dr. Farwell's invention of "Brain Fingerprinting," and was formerly called "Brain Fingerprinting" (Exhibits S, T, and U).

3.77    The counterfeit product that Ika Parties Brainwave Science, LLC, Brainwave Science, Inc., and Krishna Ika have been attempting to market (Exhibits S, AG, AH, AI, AJ, AK, AL, AM, AN, AO, and AP):

   a.   Is not the Brain Fingerprinting scientific technology that was invented by Harvard-trained neuroscientist Dr. Farwell, who was selected by *TIME* magazine as one of the top innovators of our time, "the Picassos or Einsteins of the 21st Century."

   b.   Is not the specific scientific technique of Brain Fingerprinting that meets the 20 Brain Fingerprinting Scientific Standards that Dr. Farwell has published.  There is no evidence anywhere that the counterfeit product and faux training that BWS Inc. is offering meet these standards.

   c.   Has not been tested and proven at the CIA, the FBI, and the US Navy.

   d.   Has never been applied in real-world criminal cases, including serial killer JB Grinder and innocent murder convict Terry Harrington.

   e.   Has not been proven over 99% accurate in research at the FBI, the CIA, the US Navy, and elsewhere published in the top peer-reviewed scientific journals.  There is no evidence anywhere that what BWS Inc is offering has achieved such accuracy in scientific studies or field applications.

   f.   Has never achieved 99% accuracy, or any other proven level of accuracy, in any published research, forensic applications, field applications, or in any other context.

   g.   Has not been featured in major national and international news media, including *CBS Evening News, ABC World News, CNN, PBS, BBC, CBS 60 Minutes, ABC Good Morning America,* the *Discovery Channel, The New York Times, The Washington Post, TIME Magazine,* and *US News and World Report*.

   h.   Has not been proven to be capable of detecting bomb makers, criminals, and terrorists, in peer-reviewed publications.

   i.   Lacks the qualities and achievements of the genuine Brain Fingerprinting invented and developed by Dr. Farwell, as listed herein and in the Exhibits.

24

      j.   Has produced no evidence that the unproven technology BWS Inc is offering achieves the same accuracy, reliability, or validity of the genuine Brain Fingerprinting practiced by Dr. Farwell and other competent, trained, and credentialed scientists.

3.78    No one employed by or affiliated with Ika Parties Brainwave Science, LLC, Brainwave Science, Inc., and Krishna Ika (Exhibits S, AG, AH, AI, AJ, AK, AL, AM, AN, AO, and AP):

      a.   has ever been trained in Brain Fingerprinting by a Brain Fingerprinting expert;

      b.   has ever conducted or published Brain Fingerprinting research;

      c.   has ever successfully applied Brain Fingerprinting in real-world cases;

      d.   has ever conducted Brain Fingerprinting research for the FBI, the CIA, or the US Navy;

      e.   is qualified to conduct a scientific Brain Fingerprinting test that meets the Brain Fingerprinting Scientific Standards; or

      f.   has been featured in any of the major news sources mentioned above that have featured Dr. Farwell and his genuine Brain Fingerprinting invention.

3.79    Ika Parties have purported to practice, make, and use, and have attempted to sell, the intellectual property embodied in the Brain Fingerprinting Patents without compensation to ASI, the rightful owner of the Patents from the founding of BWS LLC and BWS Inc. until March 15, 2015, or LST, the rightful owner of the Patents since March 15, 2015.

3.80    As a result of the Ika Parties actions and conduct, Dr. Farwell's ability to practice, market, and sell his invention, to perform on existing Brain Fingerprinting contracts with government agencies and others, and to practice his lifetime profession have been damaged.

3.81    Unless Ika Parties are permanently enjoined from making false and fraudulent misrepresentations, Dr. Farwell will be irreparably harmed.

3.82    Ika Parties Ika, BWS LLC, and BWS Inc., along with Tomkins, have harassed Dr. Farwell's friends and associates, including but not limited to Nash Thompson (see Exhibit R).

3.83    From 2000 through 2006, Dr. Farwell held a service mark on "Brain Fingerprinting" registered with the USPTO (registration number 2308729). Said mark was cancelled October 21, 2006. Subsequently both Dr. Farwell and BWS LLC applied unsuccessfully for said mark (serial number 77247169 and serial number 85775316 respectively). "Brain Fingerprinting" is now in the public domain.

3.84    Ika Parties should have known in 2013, and knew and admitted in 2016, the following facts, all of which remained undisputed until 2019: the Unexecuted ASI-BWS Draft Document was not executed by ASI, the apparent "assignor" therein, who was then the undisputed owner of the Patents and all associated Brain Fingerprinting intellectual property, and was written, signed, and recorded at the USPTO without the knowledge or consent of ASI, and which consequently transferred no intellectual property to the Ika Parties; the LF-BWS Draft Document was signed by an "assignor" who did not possess the Patents or any associated Brain Fingerprinting intellectual property, having previously assigned the same to ASI, and consequently transferred no intellectual property to the Ika Parties; the BFL-BWS Draft Document was signed by an "assignor" who never had and never claimed any ownership of the Patents and associated Brain

Fingerprinting intellectual property, and consequently transferred no intellectual property to the Ika Parties; the Brain Fingerprinting Patents expired in 2013 and 2014 and consequently the Brain Fingerprinting intellectual property embodied and disclosed therein is now in the public domain. In a transparent attempt to prevent Dr. Farwell from practicing his invention, his profession and his business, and knowing all of the above facts, the Ika Parties filed a false and frivolous lawsuit in federal court in Wyoming (the Wyoming Suit) against LST, the owner of the Patents, based on false statements by Ika Parties that directly contradicted the above indisputable and previously undisputed facts.

3.85   Dr. Farwell is a Harvard graduate with a PhD in biological psychology and a former research associate at Harvard Medical School. Dr. Farwell is the inventor of Brain Fingerprinting, as per the Patents and peer-reviewed publications cited below. Dr. Farwell has published extensively on Brain Fingerprinting in leading peer-reviewed scientific journals (Exhibits AG, AH, AI, AJ, AK, AL, and AM).

3.86   Dr. Farwell has conducted Brain Fingerprinting research at the FBI, the CIA, and the US Navy and published the results in peer-reviewed scientific journals (Exhibits AG - AI, AK - AM).

3.87   Dr. Farwell has successfully applied Brain Fingerprinting science in real-world criminal cases (Exhibits AG - AI, AK - AL, AN).

3.88   The science and technology of Brain Fingerprinting that Dr. Farwell invented and developed and his expert testimony on it have been ruled admissible in court (Exhibits AN, AO).

3.89   Dr. Farwell has successfully practiced his profession as a forensic neuroscientist, and specifically as the world's leading expert in the Brain Fingerprinting science and technology that he invented, for over 25 years (Exhibits AG, AH, AI, AJ, AK, AL, AM, AN, AO, and AP).

3.90   Forensic Science Laboratory, New Delhi, India ("FSL") is a client of Dr. Farwell, having purchased a Brain Fingerprinting system and associated training by Dr. Farwell.

3.91   On or about May 14, 2019 Ika Parties Ika and BWS Inc falsely and fraudulently libeled Dr. Farwell in communications to Dr. Farwell's client FSL. Ika and BWS Inc falsely accused the Dr. Farwell of fraud, theft, sabotage, lying, dishonesty, bad faith, duplicity, unethical business practices, and other illicit and undesirable actions.

3.92   On or about May 14, 2019 Ika Parties Ika and BWS Inc wrote and caused to be delivered a letter ("Ika Parties' Libelous Letter," Exhibit AU) to Dr. Farwell's client FSL.

3.93   Ika Parties' Libelous Letter falsely, fraudulently, and libelously claimed that Dr. Farwell had stolen hardware comprising Ika Parties' Counterfeit Product from Defendant Brainwave Science, Inc.

3.94   Ika Parties' Libelous Letter falsely, fraudulently, and libelously claimed that Dr. Farwell had sold to Dr. Farwell's client FSL said allegedly stolen hardware (comprising an EEG headset, as described in documents accompanying Ika Parties' Libelous Letter). It would be ludicrous for Dr. Farwell -- the inventor and developer of the genuine Brain Fingerprinting, who had been applying and selling his genuine Brain Fingerprinting system for decades before Ika Parties BWS LLC and BWS Inc existed -- would steal and attempt to sell a counterfeit system such as Ika Parties' Counterfeit Product. Moreover, such an accusation must be false for the following reason. The headset that Dr. Farwell and his affiliated company Brain Fingerprinting, LLC sold to FSL (as part of the Farwell Brain Fingerprinting system purchased by FSL) was a custom headset ("Dr.

Farwell's Custom Headset") designed by Dr. Farwell and custom manufactured in the USA. Based upon information and belief, Ika Parties Ika, BWS LLC, and BWS Inc. only use and only have ever possessed entirely different headsets manufactured in Taiwan, and all of their software works only with said Taiwanese headsets and not with Dr. Farwell's Custom Headset. On information and belief, no one other than Dr. Farwell and his affiliated companies, Brain Fingerprinting, LLC and Brain Fingerprinting Laboratories, Inc., possesses Dr. Farwell's Custom Headset or any instantiation thereof. Ika Parties have never possessed any instantiation of Farwell's Custom Headset – the headset that Dr. Farwell sold to FSL. Consequently any allegation that Dr. Farwell stole from Ika Parties the Farwell's Custom Headset that he sold to FSL (or anyone else) must be false, fraudulent, and libelous or slanderous.

3.95   The allegation or implication that Dr. Farwell stole a headset from Ika Parties Ika and Brainwave Science Inc. is false and libelous with regard to the false accusation of theft.

3.96   The allegation or implication in Ika Parties' Libelous Letter that Dr. Farwell stole and then sold a headset from Ika Parties Ika and Brainwave Science Inc. is additionally false and libelous with regard to the false accusation that Dr. Farwell sold stolen goods.

3.97   Ika Parties' allegation or implication in Ika Parties' Libelous Letter that Dr. Farwell sold Ika Parties' Counterfeit Product to FSL is additionally false and libelous in that such a sale would never be undertaken by Dr. Farwell or any other legitimate forensic scientist with expertise in Brain Fingerprinting. In falsely alleging that Dr. Farwell sold Ika Parties' Counterfeit Product, Ika Parties Ika and BWS Inc. imply that in the course such sale Dr. Farwell must have misrepresented that Ika Parties' Counterfeit Product had value and was worth buying – which it does not and is not, and that Ika Parties' Counterfeit Product had his endorsement or was represented by him – which it does not and is not. Such representations or implications are damaging to Dr. Farwell's reputation, stature, and professional success as a forensic scientist and expert in genuine Brain Fingerprinting. No legitimate forensic scientist with expertise in Brain Fingerprinting would make such misrepresentations regarding Ika Parties' Counterfeit Product or any other product that fails to meet the Brian Fingerprinting Scientific Standards.

3.98   Ika Parties' Libelous Letter also threatened Dr. Farwell's client FSL with criminal prosecution for possession of stolen property, on the basis of having purchased the same from Dr. Farwell.

3.99   Ika Parties' Libelous Letter falsely and libelously stated that Dr. Farwell is being investigated by the FBI. No such investigation exists.

3.100 Ika Parties' Libelous Letter falsely stated that Defendant Brainwave Science, Inc. is actively and fully cooperating with a (non-existent) FBI investigation of Dr. Farwell. No such cooperation is taking place. No such investigation is taking place.

3.101 In the context of security clearances, Dr. Farwell has been investigated by numerous national and international law enforcement, intelligence, counterterrorism, and military agencies around the world, beginning with the FBI and the CIA in the early 1990s.

3.102 Throughout the last quarter of a century, including over 20 years prior to the existence of Ika Parties BWS LLC and BWS Inc., Dr. Farwell has cooperated and collaborated with national and international law enforcement, intelligence, counterterrorism, and military agencies around the world, beginning with the FBI and the CIA in the early 1990s, and has provided said agencies with his professional expertise as a forensic neuroscientist as well as his invention of Brain Fingerprinting.

3.103  Based upon knowledge and belief and as described below and documented in the Exhibits, Ika Parties Ika, BWS LLC, BWS Inc. and their employees have never collaborated with national and international law enforcement, intelligence, counterterrorism, or military agencies and provided said agencies with professional expertise in forensic neuroscience, because Ika Parties lack any training, certification, qualification, credentials, education, knowledge, or expertise in forensic neuroscience, and specifically in the forensic neuroscience of Brain Fingerprinting.

3.104  Ika Parties' Libelous Letter contained additional false, fabricated, and remarkably fanciful hearsay apparently designed to disparage and defame Dr. Farwell and his science and technology.

3.105  The actions of Ika Parties Ika and Brainwave Science, Inc., including but not limited to libeling Dr. Farwell and threatening Dr. Farwell's client FSL with criminal prosecution for doing business with Dr. Farwell, can only reasonably be understood as an attempt to interfere with Dr. Farwell's contract and business relationship with FSL and Dr. Farwell's other clients, to defame Dr. Farwell, and to disparage Dr. Farwell's science and technology.

3.106  In Dr. Farwell's professional opinion as the inventor of Brain Fingerprinting, the world's leading expert in the science of Brain Fingerprinting, and the most experienced expert in applying Brain Fingerprinting in criminal, counterterrorism, and counterintelligence cases with national law enforcement and national security agencies around the world, any misguided attempt by unqualified persons to apply counterfeit technology, such as Ika Parties' Counterfeit Product, which Ika Parties Ika, BWS LLC, and/or BWS Inc are attempting to market, in real criminal or counterterrorism cases would be a serious  threat to national security and justice.  Other experts agree with this opinion, as documented below, and no known Brain Fingerprinting expert disagrees with this assessment.

3.107  On or about March 18, 2019, Dr. Farwell received the first of a series of communications from Donald Buti Ramfolo ("Ramfolo"), and his associates Jacob Madikiza ("Madikiza"), and Christo Botes in South Africa regarding their plans to collaborate with Dr. Farwell and Brain Fingerprinting, LLC to bring Dr. Farwell's Brain Fingerprinting technology to South Africa. General Ramfolo is a Brigadier General (ret) Military Intelligence in South Africa.  Madikiza is a retired Deputy Director General, South African Secret Service. Some of these communications from General Ramfolo contained information regarding alleged fraud by Ika Parties Ika and BWS Inc involving the science and technology of Brain Fingerprinting that Dr. Farwell invented and developed.  General Ramfolo provided the facts contained in his sworn affidavit (Exhibit AR). See the Exhibit for details.  Madikiza did not provide an affidavit because he was not present at the meetings discussed, and all of the information he had constituted hearsay.  The affidavit of General Ramfolo contains the following facts.

3.108  Based upon information and belief and according to General Ramfolo, Ika Parties Ika, BWS LLC, and/or BWS Inc made false and fraudulent claims regarding Brain Fingerprinting and the Ika Parties' Counterfeit Product in an attempt to sell Ika Parties' Counterfeit Product to the South African government.

3.109  Based upon information and belief and according to General Ramfolo, when General Ramfolo asked Ika to provide information regarding the acceptance in court that Ika Parties Ika, BWS LLC, and/or BWS Inc claimed that Ika Parties' Counterfeit Product had achieved, the only references Ika Parties Ika, BWS LLC, and/or BWS Inc provided were to court cases in which Dr. Lawrence Farwell and his genuine Brain Fingerprinting science were involved, cases that predated the

existence of BWS LLC and BWS Inc. and had nothing to do with Ika, BWS LLC, BWS Inc, and Ika Parties' Counterfeit Product.

3.110 Over the last three years Dr. Farwell has collaborated with Waqar Aslam and Firas Hamdi ("Hamdi") the principals of Prime Technologies in Pakistan. Together they have successfully implemented Brain Fingerprinting science and technology in several law enforcement, intelligence, and counterterrorism agencies in Pakistan and assisted those agencies in solving criminal, counterterrorism, and counterintelligence cases. Mr. Hamdi has twice successfully completed training in Brain Fingerprinting science and technology that Dr. Farwell conducted.

3.111 According to Hamdi's sworn affidavit (Exhibit AS), he witnessed an attempt by Ika Parties Ika, BWS LLC, and/or BWS Inc to defraud an intelligence agency of the Pakistani government on or about April 15, 2019.

3.112 Based upon information and belief and according to Hamdi, Ika Parties Ika, BWS LLC, and/or BWS Inc through their representative attempted to sell said agency their counterfeit product, fraudulently represented that their product was the same as Dr. Farwell's Brain Fingerprinting, and fraudulently represented that they and their employees were qualified to practice forensic neuroscience, specifically Brain Fingerprinting, and to train others to do so.

3.113 Based upon information and belief and according to Hamdi, Ika Parties Ika, BWS LLC, and/or BWS Inc' representative, on instructions from Ika Parties Ika, BWS LLC, and/or BWS Inc, falsely represented to the Pakistani government that BWS represented Dr. Lawrence Farwell and his Brain Fingerprinting technology, whereas in fact Dr. Farwell has no relationship with BWS, and they do not have his Brain Fingerprinting technology.

3.114 Based upon information and belief and according to Brain Fingerprinting expert Hamdi, any attempt to apply Ika Parties' Counterfeit Product in law enforcement, counterterrorism, or intelligence operations would have "disastrous consequences." In his affidavit (Exhibit AS), Hamdi stated the following: "My experience in applying the genuine Farwell Brain Fingerprinting in collaboration with Dr. Farwell and agencies of Pakistan leads me to the conclusion that if Ika and BWS ever succeeded in selling their counterfeit technology and training by unqualified personnel to any major intelligence, counterterrorism, or law enforcement agency; this would be a major threat to national security and justice. There is no evidence that BWS' and Ika's counterfeit technology works at all, let alone with high accuracy. Their 'trainers' are not qualified to practice forensic neuroscience, specifically Brain Fingerprinting, let alone to train others to do so. Applying such an unproven and untested technology, and attempting to apply training by such unqualified personnel, would in my opinion be likely to have disastrous consequences for counterterrorism, counterintelligence, and law enforcement efforts."

3.115 On or about May 10, 2017, Dr. Farwell received the first of a series of communications regarding the science and technology of Brain Fingerprinting that Dr. Farwell invented and developed from Jose Kuruvilla ("Kuruvilla"), CEO of Mainland Security, Inc., with headquarters in Hong Kong and Thailand. Mr. Kuruvilla informed Dr. Farwell of the following facts.

3.116 Based upon information and belief and according to Kuruvilla, on or about May 1, 2017, Ika Parties Ika, BWS LLC, and/or BWS Inc attempted to defraud the government of Thailand by selling them their counterfeit technology and associated training by unqualified personnel.

3.117 Based upon information and belief and according to Kuruvilla, Ika gave a demonstration of their counterfeit technology in which he purported to be measuring and analyzing brainwaves and

achieving an accurate result with Ika Parties' Counterfeit Product, which Ika misrepresented as genuine Brain Fingerprinting.

3.118 Based upon information and belief and according to Kuruvilla, after placing a headset on a subject and running the software, Ika told the government of Thailand that they had collected sufficient data, and now they would analyze the data.  He said the results of the analysis of the data they had just collected would appear on the screen.

3.119 Based upon information and belief and according to Kuruvilla, Kuruvilla observed that Ika did not attempt to analyze the data as he falsely represented to the government he was doing.  Instead, he simply accessed and displayed a previously developed graphics file that appeared to show the results of a brainwave test.  Ika fraudulently represented that the previously produced graphics file was actually a representation of the results of computer analysis of the data that they had just purportedly collected. This is documented in Exhibit AT.

3.120 Based upon information and belief and according to Kuruvilla, Ika told Kuruvilla that they had bought the system they were presenting from Dr. Farwell and that they were still paying royalties to Dr. Farwell.  Dr. Farwell knows both of these statements to be false and fraudulent. Neither of those events ever happened.

3.121 Based upon information and belief and according to Kuruvilla, Ika lied to Kuruvilla in an attempt to sell the Ika Parties' Counterfeit Product. In a phone conversation with Dr. Farwell on or about May 12, 2019, Kuruvilla stated, "When people are lying I don't need a lie detector.  I told my people we will not do business with [Ika Parties Ika, BWS LLC, and/or BWS Inc]."

3.122 On or about June 28, 2017, Dr. Farwell received the first of a series of communications regarding the science and technology of Brain Fingerprinting that Dr. Farwell invented and developed from Bolaji Oye ("Oye"), Chief Operating Officer of Piqure Solutions LTD in Nigeria. He informed Dr. Farwell of the following facts:

3.123 Based upon information and belief and according to Oye, Ika Parties Ika, BWS LLC, and/or BWS Inc attempted to defraud the Nigerian Defense Intelligence Agency by selling them Ika Parties' Counterfeit Product and associated training by unqualified personnel.

3.124 Based upon information and belief and according to Oye, the Nigerian NSA, the Nigerian Defense Intelligence Agency, and Oye detected  and thwarted the attempted fraud by Ika Parties Ika, BWS LLC, and/or BWS Inc.

3.125 Oye stated the following in an email to Dr. Farwell on July 8, 2017.  "Just for your information, the Nigerian Government is about to be fleeced by Brainwave Science...This meeting I am having this morning will be the start of pulling the plug on BrainWave Science in Nigeria. We have already contacted the Nigerian NSA on this matter, but we are also approaching the DEFENCE INTELLIGENCE AGENCY (institution that wants to buy the item) to make them aware that BRAINWAVE SCIENCE [BWS Inc.] is all a con."  The Nigerian government recognized these facts, and did not purchase Ika Parties' Counterfeit Product.

3.126 Dr. Farwell founded Brain Fingerprinting Foundation in 2017 for the purpose of charitable activities.  I registered it as  a charity with the state of Washington. I obtained an EIN. I originally intended to obtain a 501(c) 3 status.  However, due to other, more pressing activities, I did not pursue that option.  I dissolved the entity in 2021.

3.127 Brain Fingerprinting Foundation has:

3.127.1.1    Never owned, bought, sold, acquired, represented, discussed, negotiated about, conveyed, or had anything to do with Brain Fingerprinting hardware or software, or any other scientific or other hardware or software;

3.127.1.2    Never made any representations to anyone regarding anything to do with Brain Fingerprinting science and technology or any other science or technology;

3.127.1.3    Never executed any contracts;

3.127.1.4    Never had any assets;

3.127.1.5    Never performed any services;

3.127.1.6    Never reported any income to the IRS, and never been required to report any income because there was none;

3.127.1.7    Never sent any letters or emails, or participated in any in-person or remote conferences, discussions, negotiations, or communications;

3.127.1.8    Never done anything that might imaginably be construed as infringing on BWS Inc.'s trade secrets (even if BWS Inc. had legitimate trade secrets), or otherwise damaging BWS Inc. or Ika.

3.128  The Complaint in the current case does not cite any actions by Brain Fingerprinting Foundation, any facts regarding how it might have damaged BWS Inc., or any reasoning for why it is included as a Defendant.

3.129  The only imaginable reason that BWS Inc., Ika, and Tomkins included Brain Fingerprinting Foundation as a defendant was to create the exact situation we are now facing.  Dr. Maison and I, as individuals, do not have sufficient funds to pay an attorney to pursue the case.  We can continue pro se.  Brain Fingerprinting Foundation, however, cannot appear pro se, and I cannot represent it as I am not an attorney.  This scheme by Tomkins sets up Ika to win a case by default where both Ika and Tomkins know that they could never win on the merits.

3.130  Moreover, since Brain Fingerprinting Foundation has been dissolved, it no longer exists, and cannot defend itself in any case.

3.131  Tomkins and Ika's including Brain Fingerprinting Foundation as a defendant in the case is an abuse of the justice system in an attempt to force forfeiture of a case that they know they have no chance of winning on the merits, and to force such forfeiture against a party against whom they have no basis in fact or law to pursue a suit.

3.132  The Brainwave Science website https://brainwavescience.com/ makes the following false and totally unsubstantiated claims.  ICognative has never been proven in the scientific laboratory, in peer-reviewed scientific publications, or in real-world applications to have achieved any of these claims. Specific, quantifiable, numerical claims that are false and unsupported by any scientific evidence or field experience are noted in **bold and underlined.**

At https://brainwavescience.com/icognative/:

**"RELIABLE**

31

"A noteworthy advancement from the polygraph, iCognative® detects whether certain specific information is known to a suspect with **over 99% accuracy**.

**"HIGH VALUE**

"The remarkable applications of iCognative®  maximize intelligence collection disciplines across various security verticals. Unlike fingerprints and DNA that are available only in 1-2% of the cases, **iCognative® is applicable in over 85% of cases**.

### "INTELLIGENT DETECTION

"iCognative® collects an advanced scientific brain response called the P300 to analyze patterns of semantic memory recognition. Proprietary algorithm processes intelligently detect specific information stored in the brain.

"iCognative® technology scientifically, accurately, and humanely detects concealed information, such as the details of criminal or terrorist activities, stored in the brains of the perpetrators non-invasively, and eliminates torture in all investigations, be it civil or criminal."

At https://brainwavescience.com/why-icognative/ :

### "PRECISION, ACCURACY, RELIABILITY

"Relies on brain information processing that detects distinct change in electrical activity when a human brain responds to the sight of familiar stimuli

**"Results always have high accuracy rates with over 99% statistical confidence**

**"Zero false positives and negatives**

"Purpose-built to eliminate countermeasures"

At https://brainwavescience.com/icognativetraining/:

### "Get security experts with real-world experience

"A noteworthy advancement from the polygraph, **iCognative® detects whether certain specific information is known to a suspect with over 99.9% accuracy**."

3.133  The following quotation at https://brainwavescience.com/testimonial/ is false and fraudulent.  General Al Eid never said such a thing, and never endorsed iCognative. General Al Eid has been working for years with Defendant Dr. Lawrence A. Farwell  to implement the genuine Farwell Brain Fingerprinting – not iCognative – in Saudi Arabia. This false information on the BWS website is damaging to General Al Eid's reputation and business activities, and by association to Dr. Farwell's reputation and business activities, as the association between Dr. Farwell and Dr. Al Eid is well known in the international counterterrorism and forensic science communities.

The BWS website falsely attributes the following quotation to Dr. Adel Al Eid:

**"Dr Adel Al Eid (Former Brig. Gen at National Information in Ministry of Interior, Saudi Arabia)**

"iCognative empowers investigators to accurately measure information hidden in a suspect's brain, leading accurately to the terrorists who schemed, contributed or carried out any act of terrorism or a criminal offence even before it happens. This technique enables counter terrorism officials to scientifically test suspected terrorists and to indict or exonerate them based on the information stored in their brains, even if a suspect has participated in a sleeper cell."

4.0 In my, Dr. Lawrence Farwell's, considered view, the following would be a fair, equitable, and just solution to the issues under consideration in the present case.  It is understood, however, that some of these provisions go beyond the scope of this lawsuit.  Therefore, the following are presented as a context for the issues of fact and law that are within the scope of the present lawsuit.

Defendant Dr. Farwell Hereby submits the following as relevant examples of the overall context, including other lawsuits and disputes between some of the same parties hereto and other parties not directly involved in this lawsuit, in which a fair, just, and equitable outcome of the present lawsuit should, in Defendant Dr. Farwell's view, be achieved.

4.1 Krishna Ika ("Ika"), Brainwave Science, LLC, ("BWS LLC"), eHealthCare Works Corp. ("HCW"), and Government Works, Inc. ("GOV") (the "Known Ika Parties" or "Ika Parties") set up Plaintiff Brainwave Science, Inc. ("BWS Inc.") for fraudulent purposes as described herein, one of which was to file frivolous lawsuits against Dr. Farwell and the patent owners, knowing that BWS Inc had no chance of winning the suits. The suits served the purpose of forcing Dr. Farwell and the patent owners to expend money and other resources, while minimizing the risk to the Known Ika Parties, particularly Ika, BWS LLC, HCW, and GOV.  Since BWS Inc. is a shill company with no legitimate business activities and no assets, losing a lawsuit with a substantial judgment against BWS Inc. would not actually cost the Ika Parties anything.  Dr. Farwell is entitled to a declaration that BWS LLC, HCW, GOV, and Tomkins are also liable for the damages of the Ika Parties to Dr. Farwell.

4.2 Dr. Farwell is entitled to a Judgment permanently enjoining Ika Parties from falsely and fraudulently misrepresenting that Ika Parties own the Patents and associated "Brain Fingerprinting" intellectual property, that Ika Parties are offering "Brain Fingerprinting" technology, that Ika Parties are authorized to offer Brain Fingerprinting technology or training, that Ika Parties are properly trained, credentialed, certified, or qualified to offer such technology and training, that Defendant's counterfeit product makes a meaningful contribution to national security and justice, that Ika Parties are offering a product that is "99% accurate" or has any other level of accuracy, and any and all similar representations.

4.3 Ika Parties have falsely and fraudulently claimed that they own the Brain Fingerprinting Patents and associated "Brain Fingerprinting" intellectual property, of which Dr. Farwell is inventor and world's leading expert, and on which Dr. Farwell's practice of his lifetime profession depends; and have misrepresented that they are

qualified and authorized to practice, make, use, and sell said patented technology, and have attempted to sell their counterfeit technology to potential clients of the Dr. Farwell.

## 4.4 Ika Parties have tortuously interfered with contracts that Dr. Farwell, BF LLC, and BFL Inc. have entered into, upon which Dr. Farwell's business and revenues depend.

4.5 Ika Parties have fraudulently induced Dr. Farwell and BFL Inc. to purchase a security in the form of equity in BWS LLC. This has damaged the business, reputation, and revenues of Dr. Farwell and BFL Inc.

4.6 Ika Parties have fraudulently induced Dr. Farwell and BFL Inc. to sign the Unexecuted ASI-BWS Draft Document, the BFL – BWS Draft Document, and the LF – BWS Draft Document and have recorded said documents and the Unexecuted ASI-LF Draft Document at the USPTO without the knowledge or consent of Dr. Farwell and BFL Inc.. This has damaged the business, reputation, and revenues of Dr. Farwell and BFL Inc.

4.7 The Known Ika Parties fraudulently induced Dr. Farwell and BFL Inc. to sell equity in BWS LLC, purportedly to an independent third party but actually to an entity owned or controlled by Ika, and thus purported to dilute Dr. Farwell's and BFL Inc.'s equity in BWS LLC.

4.8 Ika Parties have fraudulently misappropriated, or purported to misappropriate, Dr. Farwell's and BFL Inc.'s memberships and equity in BWS LLC and its successor BWS Inc. This has damaged the business, revenues, and reputation of Dr. Farwell and BFL Inc., and if it were to stand would deprive them of property and voting rights that are rightfully theirs.

4.9 As a result, Dr. Farwell can only be made whole when both BFL Inc. and Dr. Farwell are made whole by Ika Parties transferring to BFL Inc. and Dr. Farwell the 49% ownership of BWS LLC and its successor BWS Inc. to which they are entitled, and which they would now have if Ika Parties had not attempted to fraudulently misappropriate the same.

4.10 Ika Parties have purported to expel Dr. Farwell from BWS LLC and to transfer to themselves all of Dr. Farwell's and BFL Inc.'s equity in BWS LLC, without consent or due process.

4.11 As a result, the reputation, business, and revenues of Dr. Farwell and BFL Inc. have been damaged, and Ika Parties apparently deprived them of property and voting rights that are rightfully theirs.

4.12 Ika Parties have made, used, and sold intellectual property for which ASI and, subsequently, LST and then NST, held the exclusive rights without the permission of the rightful owners of the Patents. Ika Parties in so doing have unfairly and illegally attempted to compete with Dr. Farwell and by so doing interfered with Dr. Farwell's business.

4.13    Ika Parties Ika, BWS LLC, and BWS Inc., along with Tomkins, have attempted to coerce and intimidate Dr. Farwell into changing his sworn testimony as a witness in *Hedinger* in order to conceal alleged fraud by Ika, BWS LLC, and BWS Inc.

4.14    Ika Parties Ika, BWS LLC, and BWS Inc., along with Tomkins, have harassed Dr. Farwell's friends and associates, including but not limited to Nash Thompson.

4.15    Ika Parties Ika, BWS LLC, and BWS Inc., have falsely and fraudulently claimed ownership of the "Brain Fingerprinting" intellectual property that comprises what is embodied, disclosed, and enabled in  the Patents.  Whereas the owner of said intellectual property and Patents is NST, Ika Parties' false claims to ownership thereof have negatively impacted not only NST's ability to conduct its business, but also Dr. Farwell's ability to conduct his business with as the world's leading expert in Brain Fingerprinting, comprising his ability to attract and maintain customers, business partners, and investors.

4.16    Ika Parties Ika, BWS LLC, and BWS Inc., have falsely and fraudulently claimed ownership of the "Brain Fingerprinting" service mark, which is in the public domain.

4.17    In addition to their false and frivolous claims in the current lawsuit and the New York Lawsuit, the Ika Parties have filed lawsuits making the same false and frivolous claims in US District Court in Wyoming (against LST, requiring Dr. Farwell's intervention to protect his interests) and in US District Court for Western Washington (against NST, requiring Dr. Farwell's intervention to protect his interests) and the BWS Inc. – Farwell Arbitration.  All of these are based on false statements by Ika Parties that directly contradict the known and previously undisputed facts of the case, facts that were previously admitted by Ika Parties as described herein.  Said lawsuits would if Ika Parties prevailed prevent Dr. Farwell from practicing his invention, damage his reputation, and interfere with and damage his business, profession, profits, and income. Said lawsuits, like the present lawsuit, constitute a transparent attempt to exhaust Dr. Farwell's resources by Ika Parties engaging in false, fraudulent, and frivolous legal actions.

4.18    Ika Parties Krishna Ika and Brainwave Science, Inc. have, among other things, made false, libelous, and fraudulent allegations regarding Dr. Farwell to Dr. Farwell's clients and others, and have interfered with Dr. Farwell's business and relationships with his clients.

As a result of the Ika Parties actions and conduct, Dr. Farwell's ability to market, sell, and apply the Brain Fingerprinting science and technology that he invented, developed, and has successfully practiced for over 25 years, and Dr. Farwell's ability to practice his lifetime profession as a forensic neuroscientist, have been compromised.

Ika Parties actions and conduct constitute tortuous interference with known relationships and existing contracts.

4.19    The actions of Ika Parties Brainwave Science, LLC, Brainwave Science, Inc., and Krishna Ika constitute defamation of Dr. Farwell and product disparagement of Dr. Farwell's Brain Fingerprinting science, technology, professional services, and training.

4.20    The actions of Ika Parties Brainwave Science, LLC, Brainwave Science, Inc., and Krishna Ika, including but not limited to false allegations that Dr. Farwell is now under investigation by the FBI and that Ika Parties are collaborating with the FBI in said investigation, constitute libel per se of Dr. Farwell.

Unless Ika Parties Brainwave Science, LLC, Brainwave Science, Inc., Krishna Ika are permanently enjoined from making false and fraudulent misrepresentations defaming Dr. Farwell and Dr. Farwell's science, technology, professional services, and training, Dr. Farwell will be irreparably harmed.

4.21    Ika Parties Ika, Tomkins, and BWS Inc. have made false and frivolous statements in this lawsuit and the other legal actions described herein to the effect that the Patents were transferred to BWS Inc. by the Draft Documents, documents that could not in any imaginable way have transferred the Patents to BWS Inc. Said documents were recorded at the USPTO several years before BWS Inc. even existed, and do not even mention BWS Inc. (Said documents mention BWS LLC; however, they are not valid patent assignments to BWS LLC either.) Said false and frivolous statements rely on verbal trickery wherein said Ika and Tomkins use the abbreviation "BWS" to mean both BWS Inc. and BWS LLC.

4.22    Ika, Tomkins, BWS Inc., BWS LLC, and the other Ika Parties have engaged in racketeering under 18 U.S.C. § 1961 in that they have conspired to conduct and have conducted activities that constitute "(B) indictable under…the following provisions of title 18, United States Code…section 1341 (relating to mail fraud)...section 1343 (relating to wire fraud), section 1503 (relating to obstruction of justice)...section 1510 (relating to obstruction of criminal investigations)...section 1512 (relating to tampering with a witness...victim, or an informant)...section 1513 (relating to retaliating against a witness...victim, or an informant)" or "(D) any offense involving…fraud in the sale of securities…"

4.23    Defendant Farwell is entitled to a Judgment permanently enjoining the Ika Parties from misrepresenting that Ika Parties are adequately trained, credentialed, certified or qualified to offer the Brain Fingerprinting science and technology that Dr. Farwell invented and developed or to train others to do so; that Ika Parties' Counterfeit Product embodies or effectively implements the Brain Fingerprinting science and technology that Dr. Farwell invented and developed; that Ika Parties' Counterfeit Product has been shown to be capable of detecting concealed information, or of detecting criminals or terrorists; that Ika Parties' Counterfeit Product has been published in peer-reviewed scientific journals; that Ika Parties' Counterfeit Product has been applied at the FBI, the CIA, or the US Navy, or in solving criminal cases; that Ika Parties' Counterfeit Product has been ruled admissible in court; that Ika Parties' Counterfeit Product makes a meaningful contribution to national security, justice, or law enforcement; that Ika Parties' Counterfeit Product is "99% accurate" or has any other level of accuracy; and any and all similar representations;

4.24    Defendant Farwell is entitled to a Judgment permanently enjoining Ika Parties from misrepresenting that Ika Parties are offering the Brain Fingerprinting science and technology invented by Dr. Farwell, or any technology that was invented and developed by Dr. Lawrence Farwell or embodied in the Patents;

4.25    Defendant Farwell is entitled to a Judgment against Ika and BWS Inc. in an amount to be determined by the Court, but in any case not less than $100,000 for falsely and fraudulently claiming that they owned the Patents and "Brain Fingerprinting" intellectual property disclosed therein, misrepresenting that they have and are qualified and authorized to practice, make, use, and sell the Brain Fingerprinting technology, and attempting to sell their counterfeit technology to clients and potential clients of Dr. Farwell;

4.26    Defendant Farwell is entitled to a Judgment permanently enjoining Ika Parties from directly or indirectly contacting individuals and entities with whom Dr. Farwell, BF LLC, or BFL Inc. have business relationships involving the intellectual property embodied in the Patents, including but not limited to the national government agencies of Pakistan and South Africa and the national and state government agencies of India, which in turn include but not limited to Forensic Science Laboratory, Delhi and Central Investigation Bureau.

4.27    Defendant Farwell is entitled to a Judgment against Ika and BWS Inc. in an amount to be determined by the Court, but in any case not less than $100,000 for tortuously interfering with the contracts and business relationships of BF LLC, and BFL Inc., upon which Dr. Farwell depends for his business relationships and revenues;

4.28    Defendant Farwell is entitled to a Judgment against Ika, BWS LLC, GOV, and HCW. in an amount to be determined by the Court, but in any case not less than $100,000 plus punitive damages in an amount to be determined by the Court for fraudulently inducing Dr. Farwell and BFL Inc. to purchase a security in the form of equity in BWS LLC by executing the BWS LLC Agreement;

4.29    Defendant Farwell is entitled to a Judgment against Ika, BWS LLC, GOV, and HCW. in an amount to be determined by the Court, but in any case not less than $100,000 plus punitive damages in an amount to be determined by the Court for fraudulently inducing Dr. Farwell and BFL Inc. to sign the BWS LLC agreement and then defaulting on said agreement.

4.30    Defendant Farwell is entitled to a Judgment against Ika, BWS LLC, GOV, and HCW in an amount to be determined by the Court, but in any case not less than $100,000 plus punitive damages in an amount to be determined by the Court for fraudulently inducing Dr. Farwell and BFL Inc. to sign documents diluting their equity in BWS LLC, which documents purportedly transferred equity to an independent third-party investor but in fact transferred Dr. Farwell's and BFL Inc.'s equity to Ika or entities he owned or controlled;

4.31    Defendant Farwell is entitled to a Judgment against Ika, BWS LLC, GOV, and HCW. in an amount to be determined by the Court, but in any case not less than $100,000 plus punitive damages in an amount to be determined by the Court for fraudulently inducing Dr. Farwell and BFL Inc. to sign the Unexecuted ASI-BWS Draft Document, the BFL – BWS Draft Document, and the LF – BWS Draft Document and recording the same with the USPTO as apparent patent transfers without the knowledge or consent of Dr. Farwell, BFL Inc., and ASI;

4.32    Defendant Farwell is entitled to a Judgment against Ika and BWS Inc. in an amount to be determined by the Court, but in any case not less than $100,000 for making, using, and selling intellectual property owned and/or licensed by LST and, later, NST without license or compensation, in apparent competition with Dr. Farwell;

4.33    Defendant Farwell is entitled to a Judgment requiring Ika, BWS Inc., and BWS LLC to immediately transfer a 49% interest in Brainwave Science, LLC and a 49% interest in Brainwave Science, Inc. to Dr. Farwell and BFL Inc. (44% to BFL Inc. and 5% non-dilutable to Dr. Farwell), as per the original BWS LLC Agreement; Alternatively, Defendant Farwell is entitled to a Judgment requiring BWS LLC and BWS Inc. to compensate Dr. Farwell and BFL Inc. for said equity at an appropriate value.

4.34    Defendant Farwell is entitled to a Judgment against Ika and BWS Inc. in an amount to be determined by the Court, but in any case not less than $100,000 plus punitive damages in an amount to be determined by the Court for fraudulently misappropriating BFL Inc.'s and Dr. Farwell's equity in BWS LLC and thus damaging the interests of Dr. Farwell and BFL Inc. and interfering with their ability to do business, the proceeds of which accrue in whole or part to Dr. Farwell;

4.35    Defendant Farwell is entitled to a Judgment permanently enjoining Ika Parties from attempting to coerce or intimidate Dr. Farwell into changing his sworn testimony as a witness in *Hedinger* in order to conceal alleged fraud by Ika, BWS LLC, and BWS Inc.;

4.36    Defendant Farwell is entitled to a Judgment permanently enjoining Ika Parties from harassing Nash Thompson;

4.37    Defendant Farwell is entitled to a Judgment permanently enjoining Ika Parties from coercing, intimidating, or tampering with Dr. Farwell as a witness in prosecutions, if any, of Ika Parties for violations of Washington state or federal securities laws, fraud, and/or other crimes related to the subject matter of this Complaint in the United States or any other country.

4.38    Defendant Farwell is entitled to a Declaration that, since the Brain Fingerprinting Patents have expired, the Brain Fingerprinting Patents and associated "Brain Fingerprinting" intellectual property are in the public domain, and that Dr. Farwell has the right to practice the invention embodied, disclosed, and enabled in the Brain Fingerprinting Patents and associated "Brain Fingerprinting" intellectual property, and to make, use, and sell the same.

4.39    Defendant Farwell is entitled to a Declaration that the term "Brain Fingerprinting" is in the public domain, and that Dr. Farwell, BFL Inc. and BF LLC have the right to use the term "Brain Fingerprinting."

4.40    Defendant Farwell is entitled to a Judgment against Ika, BWS Inc., and Tomkins in an amount to be determined by the Court, but in any case not less than $100,000 plus punitive damages in an amount to be determined by the Court for filing a false and frivolous lawsuit in federal court in Wyoming based on false statements by Ika Parties that directly contradict the known and previously undisputed facts of the case,

and thereby interfering with Dr. Farwell's practice of his invention and his profession and damaging Dr. Farwell's reputation, business, profession, and income.

4.41    Defendant Farwell is entitled to a Judgment against Ika, BWS Inc., and Tomkins in an amount to be determined by the Court, but in any case not less than $100,000 for defamation of character and for product disparagement;

4.42    Defendant Farwell is entitled to a Judgment against Ika, BWS Inc., and Tomkins in an amount to be determined by the Court, but in any case not less than $100,000 plus punitive damages in an amount to be determined by the Court for libel per se against Dr. Farwell.

4.43    Defendant Farwell is entitled to a Judgment permanently enjoining BWS Inc. and Ika from representing or implying that Dr. Farwell is in any way associated with the BWS Inc. or Ika or with the product(s) that they are offering, and permanently enjoining Ika and BWS Inc. from mentioning Dr. Farwell in their marketing materials, website, software, sales presentations, or any other information, spoken or written, that they disseminate;

4.44    Defendant Farwell is entitled to a Judgment permanently enjoining Ika Parties from stating that Dr. Farwell has committed fraud, theft, sabotage, lying, dishonesty, bad faith, duplicity, unethical business practices, or other illicit and undesirable actions, and any and all similar representations;

4.45    Defendant Farwell is entitled to a Judgment permanently enjoining Ika Parties from directly or indirectly contacting Dr. Farwell's clients and customers, including but not limited to the national government agencies of Pakistan and South Africa and the national and state government agencies of India, including but not limited to FSL.

4.46    Defendant Farwell is entitled to a Declaration that the various Ika Parties' claims in all of the following cases are false, frivolous, without merit, and without basis in fact or law:  (1) An Arbitration Under the Commercial Rules of Arbitration of the American Arbitration Association,  AAA Case Number: 01-20-0005-4534, between Brainwave Science, Inc. (Claimant) and Lawrence A. Farwell, Individually, and Life Science and Technology, LLC (Respondents) (the "BWS Inc.-Farwell Arbitration"); (2) Brainwave Science, Inc. vs. Farwell, et al., Supreme Ct. of the State of New York County of New York, Index No. 153867/2019 (the "New York suit"); (3) this attempt to intervene in this settled arbitration case between NST and Dr. Farwell (Neuro Science Technologies, LLC vs. Lawrence A. Farwell, US District Court for Western Washington Case No.: 2:20- m c – 00009 RSL, the "NST vs. LF Arbitration" and the "Motion to Intervene" therein); (4) a lawsuit filed by BWS Inc. against NST in the US District Court for Western Washington (Brainwave Science, Inc. vs. Neuro Science Technologies, LLC and Ronald J. Kirkendorfer, no. 2:20-cv-01481, the "BWS Inc. vs. NST Suit," all of which are ongoing; and (5) a case filed by Ika and BWS Inc. before the US District Court for Wyoming (Brainwave Science, Inc. vs. Life Science and Technology, LLC, Case No. 19-CV-167-F, the "Wyoming Suit"), which has been dismissed without prejudice.

4.47    Defendant Farwell is entitled to Attorney's Fees and Costs, an award of Dr. Farwell's and Brain Fingerprinting Foundation's costs and reasonable attorney's fees

for the present lawsuit, based on the fact that Ika, Tomkins, and BWS Inc.'s claims are frivolous and wholly without merit.

4.48    Defendant Farwell is entitled to Attorney's Fees and Costs, an award of Dr. Farwell's and Brain Fingerprinting Foundation's costs and reasonable attorney's fees in all of the following:  (1) An Arbitration Under the Commercial Rules of Arbitration of the American Arbitration Association,  AAA Case Number: 01-20-0005-4534, between Brainwave Science, Inc. (Claimant) and Lawrence A. Farwell, Individually, and Life Science and Technology, LLC (Respondents) (the "BWS Inc.-Farwell Arbitration"); (2) Brainwave Science, Inc. vs. Farwell, et al., Supreme Ct. of the State of New York County of New York, Index No. 153867/2019 (the "New York suit"); (3) the Ika Parties' attempt to intervene in this settled arbitration case between NST and Dr. Farwell (Neuro Science Technologies, LLC vs. Lawrence A. Farwell, US District Court for Western Washington Case No.: 2:20- m c – 00009 RSL, the "NST vs. LF Arbitration" and the "Motion to Intervene" therein); (4) a lawsuit filed by BWS Inc. against NST in the US District Court for Western Washington (Brainwave Science, Inc. vs. Neuro Science Technologies, LLC and Ronald J. Kirkendorfer, no. 2:20-cv-01481, the "BWS Inc. vs. NST Suit," all of which are ongoing; and (5) a case filed by Ika and BWS Inc. before the US District Court for Wyoming (Brainwave Science, Inc. vs. Life Science and Technology, LLC, Case No. 19-CV-167-F, the "Wyoming Suit," which has been dismissed without prejudice.

4.49    Defendant Farwell is entitled to a Judgment that Ika, Tomkins, BWS LLC, BWS Inc., and the other Known Ika Parties have engaged and continue to engage in racketeering, and consequently Dr. Farwell  "shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorneys fee," as per 18 U.S.C. § 1964, "Civil remedies" for all of the following: (1) An Arbitration Under the Commercial Rules of Arbitration of the American Arbitration Association,  AAA Case Number: 01-20-0005-4534, between Brainwave Science, Inc. (Claimant) and Lawrence A. Farwell, Individually, and Life Science and Technology, LLC (Respondents) (the "BWS Inc.-Farwell Arbitration"); (2) Brainwave Science, Inc. vs. Farwell, et al., Supreme Ct. of the State of New York County of New York, Index No. 153867/2019 (the "New York suit"); (3) this attempt to intervene in this settled arbitration case between NST and Dr. Farwell (Neuro Science Technologies, LLC vs. Lawrence A. Farwell, US District Court for Western Washington Case No.: 2:20- m c – 00009 RSL, the "NST vs. LF Arbitration" and the "Motion to Intervene" therein); (4) a lawsuit filed by BWS Inc. against NST in the US District Court for Western Washington (Brainwave Science, Inc. vs. Neuro Science Technologies, LLC and Ronald J. Kirkendorfer, no. 2:20-cv-01481, the "BWS Inc. vs. NST Suit," all of which are ongoing; and (5) a case filed by Ika and BWS Inc. before the US District Court for Wyoming (Brainwave Science, Inc. vs. Life Science and Technology, LLC, Case No. 19-CV-167-F, the "Wyoming Suit," which has been dismissed without prejudice.

4.50    Defendant Farwell is entitled to a Judgment permanently enjoining Ika, Tomkins, BWS LLC, BWS Inc., and the other Known Ika Parties from continuing to engage in the racketeering activities delineated herein, or to resume or initiate such activities in the future.

4.51    Defendant Farwell is entitled to a Declaration that the following are valid patent assignments by entities or individuals who owned the referenced intellectual property at the time of the assignment and had the right and authority to transfer the same:

(a) From American Scientific Innovations, LLC to Life Science and Technology, LLC of US Patents #5,363,858, 5,406,956,  #5,467,777 and 7,689,272 and the Developed Intellectual Property specified therein recorded on or about March 5, 2015, USPTO reel/frame 035353/0016.

(b) From American Scientific Innovations, LLC to Life Science and Technology, LLC of US Patent 7,689,272 recorded  on or about March 5, 2015, USPTO reel/frame 035259/0280.

(c) From Life Science and Technology, LLC to Neuro Science Technologies, LLC of US Patents #5,363,858, 5,406,956,  #5,467,777 (USPTO reel/frame 050862/0702), of US Patent 7,689,272 (USPTO reel/frame 050875/0934), and the Developed Intellectual Property specified therein recorded on or about October 30, 2019.

4.52    Defendant Farwell is entitled to a Declaration that, whereas Dr. Farwell was not and is not a member, officer, board member, equity holder, agent, or employee of American Scientific Innovations, LLC, and has no direct or indirect control of ASI or of any entity with any interest in or control over ASI,  Farwell does not have and did not have any authority to act on behalf of ASI or to bind ASI to a patent assignment or to any agreement or obligation, and Dr. Farwell did not have the legal authority so bind ASI through the following Unexecuted Draft Document: The document regarding American Scientific Innovations, LLC and Brainwave Science, LLC and US Patents #5,363,858, #5,406,956, #5,467,777 and #7,689,272 recorded on or about June 17, 2013, USPTO reel/frame 030779/0565;

4.53    Defendant Farwell is entitled to a Declaration that the following are valid patent assignments by entities or individuals who owned the referenced intellectual property at the time of the assignment and had the right and authority to transfer the same:

4.54    Defendant Farwell is entitled to a Declaration that Lawrence A. Farwell did not own the intellectual property specified in the following Draft Document that he signed: The document regarding Lawrence Farwell and Brainwave Science, LLC and US Patent # 7,689,272  recorded on or about June 26, 2013, USPTO reel/frame 030769/0044.

4.55    Defendant Farwell is entitled to a Declaration that Brain Fingerprinting Laboratories, Inc. did not own the intellectual property specified in the following Draft Document that Lawrence Farwell signed as its chairman: The document regarding Brain Fingerprinting Laboratories, Inc. and Brainwave Science, LLC and US Patents #5,363,858, #5,406,956, #5,467,777, and #7,689,272, recorded on or about June 17, 2013 (USPTO reel/frame 030779/0644).

4.56    Defendant Farwell is entitled to a Declaration that the following are null and void and have no legal binding authority: The document regarding American Scientific Innovations, LLC and Brainwave Science, LLC and US Patents #5,363,858, #5,406,956, #5,467,777 and #7,689,272 recorded on or about June 17, 2013, USPTO reel/frame 030779/0565. The document regarding Lawrence Farwell and Brainwave

Science, LLC and US Patent # 7,689,272  recorded on or about June 26, 2013, USPTO reel/frame 030769/0044.  The document regarding Brain Fingerprinting Laboratories, Inc. and Brainwave Science, LLC and US Patents #5,363,858, #5,406,956, #5,467,777, and #7,689,272, recorded on or about June 17, 2013 USPTO reel/frame 030779/0644.

4.57    Defendant Farwell is entitled to a Declaration that Neuro Science Technologies, LLC on October 30,2019 obtained clear and marketable title to the Patents and the intellectual property specified in the assignments from Life Science and Technology, LLC to Neuro Science Technologies, LLC recorded on or about October 30, 2019, USPTO reel/frame 050862/0702 and USPTO reel/frame 050875/0934, except for the intellectual property disclosed and enabled in expired patents #5,363,858, #5,406,956, and #5,467,777 that is in the public domain by virtue of said patents having expired, and consequently NST or any subsequent patent holder may, at its sole discretion, allow Dr. Farwell to make, use, and sell the same, without payment to or permission of BWS Inc. or anyone else.

[Signature page immediately follows]

_Lawrence A. Farwell_

Dr. Lawrence A. Farwell, Defendant

Date: March 2, 2022

Kingston, Washington

Email: brainwave@larryfarwell.com
Website: https://farwellbrainfingerprinting.com
Phone: +1 206-905-1009
Mobile: +1 2-6-250-5516
Address: 28375 Sandy Beach Lane NE
         PO Box 547
         Kingston, WA 98346