UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

BRAINWAVE SCIENCE, INC.

       Plaintiff

- against -

ARSHEE, INC., DR. LAWRENCE A.
FARWELL, DR. THIERRY MAISON and
BRAIN FINGERPRINTING FOUNDATION

       Defendants.

------------------------------------------------------------ X

FILED
in the Clerk's Office
U.S. District Court, EDNY
March 10, 2022
6:24PM
Brooklyn Pro Se Office via Box.com

Affidavit of Dr. Lawrence A. Farwell in Response to Order of 3/2/2022

Civil Action No.: 21-cv-4402 (BMC-RLM)

Dr. Lawrence A. Farwell, being duly sworn, declares under penalty of perjury as follows:

1. I, Dr. Lawrence A. Farwell, PhD, am submitting this Affidavit establishing that (A) I have complied with the presently imposed preliminary injunction and (B) I have a plan in place to retain all records related to this litigation.

2. Said preliminary injunction stated as follows:

   1. Defendants must take any and all commercially-practicable actions to recall or replace any software containing plaintiff's "confidential or proprietary information" from third parties;

   2. Defendants must not sell or transfer plaintiff's "confidential or proprietary information;"

   3. Defendants must not use plaintiff's "confidential or proprietary information" in any software update or product demonstration; and

    4.    Defendants must provide to plaintiff, at plaintiff's sole expense, a report from an independent third party confirming that any P300-related software demonstration, sale, update, or transfer by defendants does not include plaintiff's "confidential or proprietary information."

3. I am complying with the above provisions in the following ways.

4. I have not sold or transferred any software that contains "plaintiff's proprietary information," and will not do so.

5. I have not used "plaintiff's proprietary information" in any software update or product demonstration, and will not do so.

6. In order to comply with said preliminary injunction, I must have software that has been determined by an independent third party not to include "plaintiff's proprietary information." I have engaged one of the top independent companies in the world for conducting such testing, Mindfire Technology. I have a fully executed contract in place for Mindfire to test some of my existing software. I have informed Plaintiff of their responsibility to provide their software and pay the retainer to Mindfire, per the court order. Plaintiff's attorney Paul Tomkins has requested some changes in my contract with Mindfire before his client complies with the court order. I have written Mr. Tomkins that I am amenable to modifying the contract in the ways that he requests, as long as his modifications do not countermand the intent of the Court's order. I am currently awaiting a reply from Mr. Tomkins regarding the specific modifications he requests.

7. In addition to the software that is currently awaiting testing, my colleagues and I are developing additional P300 software that does not contain plaintiff's proprietary information.

8. Regarding "commercially-practicable solutions," I have discussed the situation with my clients. To understand their reply, it is necessary to understand who my clients are. My clients are some of the top government agencies in the world in the field of counterterrorism and law enforcement and their close business associates. They have an extremely high level of technical sophistication, expertise in forensic neuroscience, and knowledge of the technology, the international players in the field, and the capabilities (or lack of same) and track record (or lack of same) of these players.

All of my clients are well aware of Brainwave Science, Inc., independent of anything to do with me or this lawsuit. All of my clients know that Brainwave Science, Inc. ("BWS") and Krishna Ika currently stand accused of fraud by authorities in at least four countries, and that the specific fraud alleged comprises, among many other alleged offenses, Ika and BWS falsely representing themselves as experts in forensic neuroscience qualified to effect a technology transfer of my brain fingerprinting invention to a government agency. This includes, for example, Mr. Ika allegedly faking demonstrations of his system by pretending to analyze brainwaves and in fact only displaying a pre-recorded graphics file purporting to represent brainwave analyses. All of my clients are aware that BWS has never sold its iCognative system to any government agency, has never tested it in the scientific laboratory and published the results in peer-reviewed journals, and has never successfully applied their system in the laboratory or the field. In fact, my clients are some of the same people who have detected alleged attempted fraud by Ika and BWS and accused them of the same. In light of these facts, it is not surprising that my clients have responded to any discussion of "recall" of any software they have received from me as follows:

3

    a. They are not in possession of any software or hardware that contains anything that might be construed as proprietary to BWS. They have sufficient expertise to recognize the fact that any such claims by BWS are totally spurious.

    b. Even if they were in possession of such software or hardware, there is no way I can force them to remit it to me; that is, there is no way that I can force a "recall" of any software that they possess, whether it came originally from me or not, and whatever it contains.

    c. If I ever delivered to them any software or hardware that contained anything proprietary to BWS, they would reject it, because they know BWS has nothing proprietary that contributes in any way to the field of forensic neuroscience. They have sufficient scientific and technical expertise to know this definitively.

    d. I am free to replace any software they have obtained from me, provided only that the replacement software performs as well as or better than what they now have.

9. The response of my clients eliminates the possibility of "commercially-practicable" "recall," and leaves open the possibility of "replace[ment]," but only if and when BWS cooperates with the independent testing of my software by providing their software and paying for the testing as ordered by the Court, and only after I have had sufficient time to develop software that is certain to meet the standard set by the Court.

10. Regarding retaining all records related to this litigation, I have a plan in place. This comprises retaining and backing up all relevant emails, keeping and backing up notes on all relevant phone calls and meetings, scanning and backing up all relevant documents received by

4

mail or in person, and in general acting in good faith to follow the letter and the spirit of requirements of the Court for maintaining such records.

11. With respect to records related to this litigation, I must disclose that most of the work I have done worldwide in counterterrorism and international law enforcement, from the time my work began in the early 1990s with the FBI, the CIA, and the US Navy until the present day, has been and remains classified. There are severe penalties to me, as well as potential damage to national and global security, for violating the applicable laws and agreements regarding classified information. These frequently do not provide for exceptions regarding information provided to a US court, particularly when they involve foreign counterterrorism agencies and international criminal-investigation agencies. I cannot, and will not, disclose such classified information except as required by law. It is possible that some information regarding ongoing criminal investigations of Ika and BWS by some of my clients will be both classified and arguably relevant. In that case, I will not provide such information to the Court. However, I cannot imagine a circumstance in which such information would support BWS' case or weaken mine. If such a situation should arise, I will make every good-faith effort possible to ensure that the Court is informed as thoroughly as possible.

[Signature page immediately follows.]

*Lawrence A. Farwell* .

Lawrence A. Farwell

Date: March 10, 2022

Email: brainwave@larryfarwell.com
Website: https://farwellbrainfingerprinting.com
Phone: +1 206-905-1009
Mobile: +1 2-6-250-5516
Address: 28375 Sandy Beach Lane NE
         PO Box 547
         Kingston, WA 98346

cc: Paul Tomkins, Esq.
    Dr. Thierry Maison
    Arshee, Inc.