FILED
in the Clerk's Office
U.S. District Court, EDNY
April 23, 2022
7:38PM
Brooklyn Pro Se Office via Box.com
*Rec in p drive 4/26/22 rg

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

BRAINWAVE SCIENCE, INC.

        Plaintiff

    - against -

ARSHEE, INC., DR. LAWRENCE A. FARWELL, DR. THIERRY MAISON and BRAIN FINGERPRINTING FOUNDATION

        Defendants.

------------------------------------------------------------ X

Affidavit of Dr. Lawrence A. Farwell in Response to Order of 3/2/2022

Civil Action No.: 21-cv-4402 (BMC-RLM)

The purpose of this Affidavit is twofold: (1) to inform the Court of some of the legal constraints on my ability to disclose certain classified information in discovery and in my scheduled deposition to be held April 25, 2022; and (2) to provide written answers to some of the questions that I will likely be asked in said deposition.

I.     Regarding the legal constraints on my ability to disclose certain classified information.

1.     Presumably, I will be asked to swear to tell the truth, the whole truth, and nothing but the truth. I will so swear. However, depending on the questions I am asked, "the whole truth" may be limited by what I am legally allowed to disclose, in light of the fact that most of my professional activities over the last few years have been classified counterterrorism operations. Until COVID, I was spending over half my time overseas on classified counterterrorism operations.

2.     The background is as follows. In 1985 invented Brain Fingerprinting, a scientific technique for detecting concealed information stored in the brain for forensic applications. This is the technology that Plaintiff claims to have implemented in their software. After inventing Brain Fingerprinting, I patented it, published it in the peer-reviewed scientific journals, tested it at the FBI, the CIA, the US Navy, and elsewhere, applied it in real-world criminal cases and achieved admissibility in court for the science and technology and my expert-witness testimony on the same.

3. Having proven the effectiveness of Farwell Brain Fingerprinting in detecting concealed information stored in the brain and solving crimes thereby, I then met with the President of the US, George W. Bush, to formulate a plan to apply my invention in counterterrorism. The plan was further developed in multiple meetings with the Director of the CIA. The ensuing operations are classified. Now, for the first time, in March, 2022, I published a paper in a scientific journal, *Cognitive Neurodynamics*, which reported on the success of Farwell Brain Fingerprinting in counterterrorism. Without revealing identifying details on the cases, the paper reported on my successful application of Farwell Brain Fingerprinting in developing a test to identify, among others, the respective terrorist masterminds behind a major terrorist hijacking, a major terrorist mass shooting, and multiple major terrorist bombings. To the extent that the relevant classified operations were revealed in said scientific paper, I can discuss them. However, any information about said operations beyond what is published in the paper remains classified.

4. In previous pleadings, I have disclosed one unclassified fact, and that is that the CIA has in its possession and is using a Farwell Brain Fingerprinting system that I designed and my colleagues and I supplied.

5. If I am asked to disclose classified information, I must refuse on the following grounds. Aside from the fact that such disclosure would be contrary to national security, it would also constitute both committing a crime and simultaneously admitting that I was committing a crime. Any such statements would constitute self-incrimination under the Fifth Amendment. Therefore, I will be within my rights when I refuse to answer questions, if any, that would require revealing classified information, particularly when such disclosures would be a threat to national security.

6. There is a second type of question that I cannot legally answer, and that is questions about ongoing criminal investigations. The following facts are a matter of public record, and have been previously disclosed (and undisputed) in the present case: As the inventor and world's leading expert on Brain Fingerprinting, I testified against Plaintiff's CEO Mr. Krishna Ika in a fraud case in Dubai. Mr. Ika currently stands accused of fraud by authorities in Pakistan, South Africa, Nigeria, and Thailand. When Mr. Ika, acting as CEO of Plaintiff's purported predecessor in interest, transferred all of the equity of the minority stockholders to himself without consent, due process, or compensation – in alleged violation of the Securities Act of 1933 and the Securities Exchange Act of 1934 as well as the applicable state laws regarding theft – the only other person present at the meeting was Subu Kota, acting as corporate secretary. Kota has previously been convicted of the same crime of which Ika now stands accused in four countries, attempting to sell stolen high-technology secrets to a foreign government.

7. This is relevant because as the inventor and world's leading expert in Brain Fingerprinting, I have been participating in the criminal investigations of Mr. Ika, and I will almost certainly will be a witness in criminal cases against Mr. Ika when and if he is brought to justice in these and other jurisdictions. The reason that I was a witness, and

|   |   |
|---|---|
|   | almost certainly will be a witness in the future, is that the crime that Mr. Ika is accused of is fraudulently representing himself and his company as forensic neuroscience experts qualified, credentialed, and capable of effecting a technology transfer to government agencies of Brain Fingerprinting forensic science technology for detecting concealed information – which I invented – whereas in fact neither Mr. Ika nor any of his employees has ever conducted a successful laboratory test of such science or conducted a single real-world brainwave test regarding actual crimes. |
| 8. | Although Mr. Tomkins told this Court that the Plaintiff had sold multiple brainwave systems to each of multiple clients for $400,000 each – which is relevant because it implies that the Plaintiff had the necessary expertise to make such a sale and deliver on it – Mr. Tomkins was lying. In reality, the Plaintiff has never sold their systems to any government agency or private client, nor have they ever trained any such client in forensic neuroscience. Mr. Ika and his employees totally lack the necessary expertise to practice this science – and have never successfully done so – let alone train others. This is central to the crimes of which Mr. Ika currently stands accused, and regarding which I am the primary witness. It is also relevant to the central claim of this case, that the Plaintiff has intellectual property of value that Defendants have allegedly misappropriated, because Tomkins' lie supports Plaintiff's narrative that the Plaintiff has something of recognized value to potential clients, which they do not. |
| 9. | In summary, I will not, and cannot legally, disclose any information about ongoing criminal investigations of Mr. Ika to which I am privy. Moreover, my participation in said investigations has been in the context of classified operations in which I was and am engaged, which is yet another reason why I cannot legally disclose such information in a deposition or any other forum other than the internal workings of the relevant criminal investigations. |
| II. | Regarding answers to some of the questions that I may be asked in said deposition. |
| 1. | I expect to be asked who are my clients for Farwell Brain Fingerprinting, what services, hardware, and software have I have provided to them, and what relevant technology is in their possession. My answers are as follows. |
| 2. | My primary client is the Central Intelligence Agency. The CIA has paid over $3 million to myself and my colleagues for Farwell Brain Fingerprinting services, training, hardware, and software. The CIA has in its possession and is using a number of Farwell Brain Fingerprinting systems (the "CIA Farwell Brain Fingerprinting Systems") wherein approximately 80% of the software therein, in my estimation, meets the standard set by the Court for "Plaintiff's confidential or proprietary information." |
|   | This estimate is based on what I know, which is limited as follows. |
|   | The order of the Court defined "Plaintiff's confidential or proprietary information" as "any portion of the program plaintiff originally submitted to Codequiry as its code." I do not know what software Plaintiff submitted to Codequiry. |

All I know for certain is the following.

a. The BWS Software was released to a public domain source at 6:15 PM on 9/10/2017 from IP address 65.52.55.39 in Chicago, using the credentials of BWS employee Karuna Raja, who was in Southborough, MA at the time.

b. Dr. Maison later downloaded the BWS Software – which he had originally written – from a public-domain source, deleted the part that was specific to the BWS brainwave headset (the only part that might possibly be considered to be proprietary), and modified the code to develop an application (the "Maison-Farwell Software") that I have been applying in conducting Brain Fingerprinting tests in counterterrorism and criminal investigations around the world.

c. Ika obtained the Maison-Farwell Software from Dr. Maison through a settlement agreement.

d. BWS engineers then modified the BWS Software to be as similar as possible to the Maison-Farwell Software, generating the "Modified BWS Software."

e. Ika then submitted the two to a Codequiry similarity checker test. Not surprisingly, the two were found to be highly similar.

f. Ika represented that the BWS Modified Software, which had been modified to appear as similar as possible to the Maison-Farwell software after BWS obtained the same from Dr. Maison – was the unmodified BWS Software that was uploaded to a public source on the internet and downloaded by Dr. Maison.

g. In other words, the software comparison Ika used to attempt to show that Dr. Maison misappropriated BWS's software was faked and fraudulent.

h. I am basing my estimate that 80% of the Farwell Brain Fingerprinting CIA software in use by the CIA met the standard of containing "Plaintiff's confidential or proprietary information" on the assumption that the BWS Modified Software was largely similar to the software that BWS released to a public domain source at 6:15 PM on 9/10/2017 from IP address 65.52.55.39 in Chicago, using the credentials of BWS employee Karuna Raja (who was in Southborough, MA at the time). This is the software that Dr. Maison later downloaded from a public domain source.

3. After meeting with the President of the US, George W. Bush, to formulate a plan for applying Farwell Brain Fingerprinting in counterterrorism and meeting repeatedly with the Director of the CIA to further elaborate on that plan, I carried out the plan over the ensuing years, applying Farwell Brain Fingerprinting in counterterrorism around the world in collaboration with various agencies. Virtually all of that is classified. However, in March, 2022, the scientific journal *Cognitive Neurodynamics* published a scientific paper on my application of Farwell Brain Fingerprinting in counterterrorism that reported on successful applications of my invention (without identifying details). These included developing Farwell Brain Fingerprinting tests to identify the respective masterminds behind a major terrorist hijacking, a major terrorist mass shooting, and multiple major terrorist bombings.

4. I am not at liberty to discuss the above classified operations, or anything else regarding the CIA and other collaborating agencies, other than what is published in that public-domain scientific journal.

5. My second client is the Federal Bureau of Investigation. I provided the FBI Laboratory with Farwell Brain Fingerprinting hardware and software similar to the CIA Farwell Brain Fingerprinting System. This was funded by the CIA, and, except for scientific publication as described above, is classified.

6. My third client is the National Center for Credibility Assessment (NCCA). They have had in their possession and used one of the CIA Farwell Brain Fingerprinting Systems. Any information beyond that is classified.

7. My fourth client is the Forensic Science Laboratory Delhi, India. It is a matter of public record that I trained the FSL Delhi personnel in Farwell Brain Fingerprinting over a period of months and provided them with hardware and software implementing Farwell Brain Fingerprinting that they have been applying in their criminal and counterterrorism investigations. To the best of my knowledge and belief, said system did not contain any proprietary information or trade secrets of BWS. However, that cannot be determined for certain until or unless BWS provides the BWS Modified Software for comparison and testing. To date, BWS has refused to provide the BWS Modified Software for testing.

8. My other clients are discussed, to the degree that I can discuss classified operations, in my Affidavit of March 31, 2022. I am not at liberty to disclose any additional information about the same, as my counterterrorism operations and associated activities were and are classified.

[Signature page immediately follows.]

_[signature: Lawrence A. Farwell]_

Lawrence A. Farwell

Date: _April 23_, 2022

Email: brainwave@larryfarwell.com
Website: https://farwellbrainfingerprinting.com
Phone: +1 206-905-1009
Mobile: +1 206-250-5516
Address: 28375 Sandy Beach Lane NE
PO Box 547
Kingston, WA 98346

cc: Paul Tomkins, Esq.
Dr. Thierry Maison
Arshee, Inc.

Sworn to before me this _23_ day of _April_, 2022

State of _Washington_
County of _Kitsap_

On this, the _23rd_ day of _April_, 2022, before me, a notary public, the undersigned officer, personally appeared Lawrence A. Farwell, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

In witness hereof, I hereunto set my hand and official seal.

_[signature]_
Notary Public

_[Notary seal: ARIANNA KEITH, EXP. 06-17-2023, NOTARY PUBLIC, COMM# 209513, STATE OF WASHINGTON]_