Brainwave Science, Inc. v. Arshee et al (21-cv-4402 (BMC)

# EXHIBIT A

to Affidavit of Paul F. Tomkins

1  research.  So that was an academic research
2  collaboration between myself and professors and grad
3  students at the university there -- University of
4  Canterbury in Christchurch, New Zealand.
5       Q.   prior to that August or September 2019
6  trip, had you personally visited the University of
7  Canterbury?
8       A.   I believe I had -- I had two trips.  I'm
9  not sure that they were -- I don't remember the
10 dates, but I believe that there were a couple of
11 trips.  But that -- that one trip was for something
12 like a month.  It was -- it was quite extensive.
13      Q.   In 2019, did you provide the University of
14 Canterbury with a soft -- strike that.
15           Do you have a -- do you have a -- an
16 executable version of your program which you allow
17 potential clients and research institutions to
18 utilize?
19      A.   Yes.
20      Q.   And without divulging any trade secrets,
21 what -- what can we call that?  What is your
22 assigned name for that program?
23      A.   It's called the Farwell Brain
24 Fingerprinting Program.  There are several versions.
25 So that -- that name is not exclusive, but for now,

```
 1  I think that will work.
 2      Q.   And have you provided the University of
 3  Canterbury with a working copy of this program?
 4      A.   Well, I went to the University of
 5  Canterbury, and I conducted research there using
 6  that program on a system that I owned and still own.
 7  And it is my personal -- my personal system myself
 8  as a -- as a researcher.  And so I conducted
 9  research there.
10           The graduate students there assisted me in
11  that research, so they had hands on experience using
12  my system. That -- that system remains there, and I
13  have since that time, allowed them to continue to
14  use it.
15      Q.   So you've not conveyed the system to the
16  university, but -- but they're in possession of it.
17  Would that be fair?
18      A.   Well, I would say individuals who are
19  affiliated with the university are in possession of
20  it.  The university as an institution is not in
21  possession of it. It -- it is -- it is over there,
22  and it is -- has been used, and I -- I believe may -
23  - may continue to be used by the students there in
24  conducting their research.
25      Q.   The improvements, assistance,
```

```
 1  modifications, however you want to characterize Dr.
 2  Maison's efforts, but -- but the assistance Dr.
 3  Maison provided you with, was that incorporated in
 4  the version of the software which you left at the
 5  university for their continued use in late 2019?
 6       A.   Yes.
 7       Q.   Have you taken any efforts to ask that
 8  they return your system to you?
 9       A.   Yes.
10       Q.   What specifically have you done?
11       A.   Recently, I'd say within the past month, I
12  wrote a letter to the primary professor there, who's
13  name is Robin Palmer, P-A-L-M-E-R, and I informed
14  him of the goings on in this -- in this lawsuit.
15  And I informed him of the - - I -- I informed him of
16  the specific wording of the court order with respect
17  to recall or replace.
18       Q.   But it's -- it's your software.  Did you
19  ask that they return it to you?
20       A.   No.  It's my -- it's my --
21       Q.   Why not?
22       A.   -- well, because it's -- it's my -- it's
23  my system.  I can do what I like with it.  If I want
24  -- if I want it to be used by -- by my next door
25  neighborhood here, my next door neighborhood here
```

1  can use it.  If -- if I want to allow grad students
2  in -- in Canterbury to use it, I can allow them to
3  use it.
4           I informed them of the -- of the wording
5  of the court order, and if -- if they believe that
6  they are bound by that to send me system, they can
7  do so.  If they believe that they are bound to do
8  anything else, that -- then they can do so.  I -- I
9  don't have the ability to force them to do anything.
10      Q.   Did you provide them with a copy of the
11 court order?
12           THE REPORTER:  I apologize for the
13 interruption. May you repeat that question, counsel?
14           MR. TOMKINS:  Certainly.
15 BY MR. TOMKINS:
16      Q.   Dr. Farwell, did you provide your contact
17 at the University of Canterbury with a copy of the
18 court's order?
19      A.   No, I did not.  However, I believe that
20 you or that -- that the you, Mr. Tomkins, did
21 provide them with a court order because if I recall
22 correctly, we had email correspondence about it
23 myself and Professor Palmer wherein he -- he had the
24 actual court order in his possession.  And if -- if
25 that's not the case, then I was remised by not

```
 1  providing the -- the court -- the full document of
 2  the court order, and I'll do so.
 3       Q.   But you didn't ask to confirm -- you
 4  didn't ask that they return the -- the program to
 5  you; is that correct?
 6       A.   That -- that is correct.  I didn't ask
 7  they return the program to -- to me.  First -- first
 8  of all, I - - I'm free to do anything I want with my
 9  own personal system.  Second, the court order
10  doesn't require me to ask them to return it to me
11  because it -- it specifies that -- it specifies
12  recall or replace insofar as it's commercially
13  viable or commercially practicable.
14            And Professor Palmer, as a law professor,
15  knows more than I do about the degree to which that
16  court order require them to put my computer and the
17  associated software in the mail, and currently, they
18  didn't feel that that was -- that was called for.
19            Furthermore, the order specify -- the
20  order defines the plaintiff's confidential
21  proprietary information as any part of the code that
22  BWS, that plaintiff, submitted to Codequiry for
23  comparison.  I do not have that code.
24            So in the absence of my actually having
25  that code or -- or some independent testing party,
```

1  document and -- and it so states there on the first
2  page.
3      Q.   Where did that image referring to the FBI
4  come from, Dr. Farwell?
5      A.   Where did the image come from?
6      Q.   Right.
7      A.   It's -- it's a -- it's a publicly
8  available source on -- on the internet.  I don't
9  remember exactly where.
10     Q.   But you drafted the entirety of this
11 document; is that correct, then, Dr. Farwell?
12     A.   That is correct.  I drafted it.  I
13 submitted it to the FBI.  That's correct.
14     Q.   Okay.
15     A.   And it --
16     Q.   And --
17     A.   And it so -- and it so states.
18     Q.   So you forwarded this to the FBI, and you
19 forwarded this to the court in conjunction with this
20 affidavit; is that correct --
21     A.   Correct.
22     Q.   -- Dr. Farwell?
23          Where else did you forward this document
24 to?
25     A.   I -- I can answer that question.  However,

1  I am not sure I can answer that question from --
2  from memory.  I probably forwarded it to Robin
3  Parsons who we've spoken to earlier -- spoken about
4  earlier today.
5           I probably forwarded it to -- well,
6  actually beyond that, I'm not sure.  But I -- I -- I
7  can look it up and I can give you an accurate answer
8  to that, but -- but that's the only -- the only
9  place I recall forwarding it to.  But I probably
10 forwarded it to -- to others who had an interest.
11     Q.   **Who else would've had an interest, Dr.**
12 **Farwell?**
13     A.   Well, it's very likely that FSL Delhi had
14 an interest.
15     Q.   **And who is Robin Parsons?**
16     A.   Robin Parsons, we discussed earlier today.
17 He is a professor at the University of Canterbury in
18 New Zealand. He's a law professor.
19     Q.   **And Doctor, for clarification purposes,**
20 **when I ask who did you forward this document to, I'm**
21 **-- I'm not simply asking who did you physically hand**
22 **this document to or send to -- the document to via**
23 **email, have you also provided links to any entities**
24 **or persons so they may also have access to this**
25 **document?**