FILED
in the Clerk's Office
U.S. District Court,  EDNY
Aug 11, 2022, 3:20 AM
Brooklyn
Pro Se Office
via Box.com

Honorable Brian M. Cogan
United States District Court Judge
U.S. Eastern District, New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE: Brainwave Science, Inc. v. Arshee, Inc. et al Case Number: 1:21-cv-04402-BMC

August 10, 2022

**Defendant Dr. Farwell's Response to Order granting [66] Motion for Order to Show Cause**

Dear Judge Cogan,

I, Dr. Lawrence A. Farwell, am Defendant (pro se) in the referenced case.

On July 20, 2022 Magistrate Judge Roanne L. Mann ordered me to show cause why I should not be held in contempt of court for failure to timely produce outstanding discovery.  I am writing to comply with this requirement.

I should not be held in contempt for the following reasons:

1. The entire case was filed fraudulently, is based on fraudulently manufactured evidence and perjury, and is frivolous.
2. I have moved today in Dr. Farwell's First Letter Motion that the Court dismiss this case on those grounds.
3. I have also moved today in Dr. Farwell's Second Letter Motion that the Court postpone a decision on finding me in contempt until the Court has examined the relevant facts and has issued findings of facts regarding the evidence that the Plaintiff's entire case is fraudulent.
4. Since, as I have documented in the above specified motions and associated documents, the Plaintiff's entire case is fraudulent, it would be unjust, unfair, inequitable, and contrary to the interest of the public and innocent persons if the Court would require me to spend my resources responding to the demands of the Plaintiff in the case.
5. It would be unjust, unfair, and inequitable to hold me in contempt to hold me in contempt of court before the Court has examined certain evidence that is critical to said ruling and has issued a finding fact regarding certain facts that are relevant to said ruling, as described below.
6. In Dr. Farwell's Second Letter Motion I requested a reasonable amount of time to comply with the demands for disclosure that are at issue with respect to my being held in contempt of court.
7. As I informed the Court in a previous Letter Motion (ECF 67), I was unavoidably delayed in my ability to comply with said demands due to a serious injury and the ensuing medical condition.
8. With all due respect to the Court, I request that the Court take into consideration the fact that the Court's refusal to grant my request for an extension had no effect on my actual medical condition, and did not create a situation wherein I was able to comply as required by the Court.
9. I will make every effort to comply as promptly as my medical condition allows.  Since I have now largely healed from my injury, I will now be able to comply swiftly with the demands for disclosure, as I could not in the past.
10. In the event that the Court denies my requests herein, and decides to hold me in contempt of court, then I respectfully request that the penalties imposed on me for being unable to

1

comply with orders of the court due to an injury be minimized in consideration of the fact that my injury and resulting medical condition were beyond my control.

In any event, I respectfully request that no decision be made or punishment imposed until this Court had ruled on Dr. Farwell's First Letter Motion and Dr. Farwell's Second Letter Motion specified above.

The relevant facts documenting that the Plaintiff's entire case is fraudulent are delineated below, preceded by the necessary definitions of terms.

**Definitions**

"Dr. Farwell's Basic Public-Domain Invention of Brain Fingerprinting" comprises the basic method and apparatus disclosed and enabled in US Patents #5,363,858, #5,406,956, #5,467,777, and # 7,689,272 (the "Expired Farwell Brain Fingerprinting Patents,) Dr. Farwell's publications in the scientific literature (specified at https://farwellbrainfingerprinting.com/research-publications/), and the software that Dr. Farwell developed and applied at the FBI, the CIA, and the US Navy, in court proceedings wherein Dr. Farwell's Brain Fingerprinting invention and his expert-witness testimony on it were ruled admissible, in operations that Dr. Farwell conducted in collaboration with law enforcement and counterterrorism agencies worldwide, and in other venues.

1. "Dr. Farwell's Advanced Public-Domain Features of Brain Fingerprinting" comprises advanced features developed by Dr. Farwell, that were disclosed and enabled in the Expired Farwell Brain Fingerprinting Patents, Dr. Farwell's publications in the scientific literature (specified at https://farwellbrainfingerprinting.com/research-publications/ ), and the software that Dr. Farwell developed and applied at the FBI, the CIA, the US Navy, in court proceedings wherein Dr. Farwell's Brain Fingerprinting invention was ruled admissible, in counterterrorism operations worldwide, and in other venues, including but not limited to a system that

    a) prompts testing personnel for appropriate stimuli;

    b) displays stimuli to testing subjects in optimal order and at optimal intervals;

    c) captures appropriate P300 brainwave responses;

    d) disregards and/or eliminates extraneous responses ("noise") which may produce false positive or false negative results;

    e) detects and disregards any attempted countermeasures by suspects or others involved in conducting testing;

    f) performs appropriate analysis of P300 measured responses utilizing statistical and machine learning algorithms and Artificial Intelligence;

    g) generates unbiased reports for use by examiners, investigating agencies and legal authorities.

2. "Dr. Maison's Implementation at BWS of Dr. Farwell's Brain Fingerprinting Invention" comprises the software developed by Dr. Maison for Brainwave Science LLC / Inc. ("BWS"), which includes the following four components:

    a. Dr. Farwell's Basic Public-Domain Invention of Brain Fingerprinting;

    b. Dr. Farwell's Advanced Public-Domain Features of Brain Fingerprinting;

    c. A "Blue User Interface"; i.e., a user interface that has blue as its background color throughout; and

    d. Software to interface with the BWS headset (which is different from all of the headsets that Dr. Farwell used previous to the founding of BWS and all headsets Dr. Farwell has sold to clients at any time before, during, or after the founding of BWS).

3. "BWS' Uploaded Blue Software" comprises the software that BWS uploaded or allowed to be uploaded to a public-domain source on the Internet, source at 6:15 PM on 9/10/2017 from IP address 65.52.55.39 in Chicago, using the credentials of BWS employee Karuna Raja, who was in Southborough, MA at the time.  The "BWS Uploaded Software" was identical in all substantive respects to Dr. Maison's Implementation at BWS of Dr. Farwell's Brain Fingerprinting Invention.  The "Blue" in the name refers to the fact that all BWS software had a blue user interface.

(Note: In his Affidavit, ECS 20, Ika admitted that the BWS Software was uploaded to the internet, but falsely stated that it was uploaded to a secure cloud server. The BWS Software was never uploaded to a secure cloud server.  It was maintained on a physical server in a rented office in Southborough, MA and accessed by numerous BWS employees in the US and India. Both Dr. Maison and Dr. Farwell know that from first-hand observation.)

4. "Dr. Maison's Downloaded Blue Software" was the same as BWS' Uploaded Blue Software, as downloaded by Dr. Maison from a public source on the internet.

5. "Dr. Maison's Developed Green Software" comprised the following changes to Dr. Maison's Downloaded Blue Software and its source, BWS' Uploaded Blue Software, as follows.

    a. Dr. Maison changed the user interface color to green.  This is different from all BWS software that had ever been accessed by Dr. Maison at any time through any means.

    b. Dr. Maison implemented substantial improvements to the software, including advanced public-domain digital filters (as published by Dr. Farwell and others), which were lacking in all versions of BWS' software.

    c. Dr. Maison deleted the parts of the BWS software that interfaced with the BWS headset, and substituted software that interfaced with a custom headset designed by Dr. Farwell and manufactured in the US that was never used or possessed by BWS.

BWS obtained Dr. Maison's Developed Green Software through a settlement agreement with Dr. Maison.

6. "BWS' Pre-Maison Blue Software" is the version of the BWS software that BWS had prior to receiving Dr. Maison's Developed Green Software.

7. "BWS' Fraudulently Modified Green Software" is the version of the BWS software that BWS developed after receiving Dr. Maison's Developed Green Software and prior to submitting the respective software packages to Codequiry.  This modification was for the transparent purpose of making BWS' software appear more similar to Dr. Maison's.  The modification included changing the color from blue – the color of all BWS software up to the time that BWS obtained Dr. Maison's Developed Green Software – to green – the color of Dr. Maison's Developed Green Software – and other undisclosed changes.

8. The "Program Plaintiff Originally Submitted to Codequiry as Its Code" is the program plaintiff originally submitted to Codequiry as its code, as specified in the Preliminary

> Restraining Order (ECS 30) and referred to therein as BWS' "confidential or proprietary information."

**Facts**

Plaintiff represented the Program Plaintiff Originally Submitted to Codequiry as Its Code as BWS' "confidential or proprietary information," that is, code developed by BWS. The entire foundation of the present lawsuit is the premise that what BWS submitted to Codequiry (for comparison with Dr. Maison's code) was BWS original code that was developed by BWS; i.e., BWS' Pre-Maison Blue Software, which like all BWS software up to the time had a blue interface.

**In fact, Program Plaintiff Originally Submitted to Codequiry as Its Code comprised not the BWS code, but rather a fraudulently modified version that was changed after BWS received Dr. Maison's Developed Green Software to appear more similar to Dr. Maison's Developed Green Software than the actual, original BWS code.**

**Due to these facts, the entire premise of this lawsuit, and the fundamental and only evidence on which this lawsuit is based, constitute a fraudulent misrepresentation by Plaintiff.**

**Plaintiff made additional fraudulent representations, and Ika committed perjury regarding material facts on at least two occasions regarding the same, as follows.**

In his Affidavit (ECF), Plaintiff's principal Krishna Ika stated that software features 3 (a) – (g) above were developed by BWS and constituted BWS trade secrets. In fact, as outlined in detail in Dr. Maison's (ECF 24, 2) Affidavit and Dr. Farwell's Affidavit (ECF 24, 1) all of these features were contained in Dr. Farwell's Basic Public-Domain Invention of Brain Fingerprinting and Dr. Farwell's Advanced Public-Domain Features of Brain Fingerprinting, both of which existed in the public domain before Brainwave Science LLC was founded.

BWS has acknowledged in said Ika's Affidavit that "The concept of using P300 brainwaves to determine the presence or absence of information within a subject's brain is not proprietary to Brainwave. P300 brainwave testing is the subject of several now-expired patents, including the afore-referenced now-expired patents…and have been addressed within numerous publicly available scientific studies and journal publications. The challenge in developing and marketing any P300 based system lies not within the concept of P300 measurement itself but in creating a system which…[and then Ika lists features 3 (a) – (g) above]. These features 3 (a) – (g), which were contained in Dr. Farwell's pre-existing public-domain invention, scientific articles, and software, are the only features that BWS has ever claimed were proprietary to BWS. BWS' claims to that effect are entirely false.

Ika committed perjury a second time in a hearing in this case on November 30, 2021. Ika stated repeatedly that the BWS software contained no open-source or public-domain information, whereas in fact it contains extensive public-domain information, as documented in detail in in Dr. Maison's (ECF 24, 2) affidavit and Dr. Farwell's affidavit (ECF 24, 1).

**In consideration of the above facts, I respectfully request that the Court refrain from holding me in contempt of court, or, failing that, that the Court take into consideration the extenuating circumstances and facts delineated above in deciding on the punishment for the same.**

4

Sincerely,

*Lawrence A. Farwell*

Dr. Lawrence A. Farwell

Defendant

28375 Sandy Beach Lane NE
PO Box 547
Kingston, WA 98346
email: brainwave@larryfarwell.com
phone (206) 905-1009
mobile (206) 250-5516