Received In Pro Se Office
August 14, 2022 at
9:52pm via Box.com

*Rec. in p drive 8/18/22 rg

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

BRAINWAVE SCIENCE, INC.

       Plaintiff

               - against -

ARSHEE, INC., DR. LAWRENCE A. FARWELL, DR. THIERRY MAISON and BRAIN FINGERPRINTING FOUNDATION

               Defendants.

------------------------------------------------------------ X

Affidavit of Dr. Lawrence A. Farwell in Support of Dr. Farwell's Letter Motion of August 14, 202

Civil Action No.: 21-cv-4402 (BMC-RLM)

1

1. I, Dr. Lawrence A. Farwell, am Defendant (pro se) in the referenced case.

2. The Preliminary Restraining Order states:

    2. Defendants must not sell or transfer plaintiff's "confidential or proprietary information;"

    3. Defendants must not use plaintiff's "confidential or proprietary information" in any software update or product demonstration.

    4. Defendants must provide to plaintiff, at plaintiff's sole expense, a report from an independent third party confirming that any P300-related software demonstration, sale, update, or transfer by defendants does not include plaintiff's "confidential or proprietary information."

    For the purposes of this preliminary injunction, "confidential or proprietary information" is defined as any portion of the program plaintiff originally submitted to Codequiry as its code.

3. On August 14, 2022, I submitted a Letter Motion ("Dr. Farwell's Motion to Modify Order to Exempt Public Domain and Pre-Existing Material") in which I requested that the Preliminary Restraining Order be modified as follows.

    1. The sentence quoted immediately above shall be modified to read as follows:

    "For the purposes of this preliminary injunction, 'confidential or proprietary information' is defined as any portion of the program plaintiff originally submitted to Codequiry as its code, except for material therein that is in the public domain."

    2. The following sentence shall be added immediately thereafter:

    "The above provisions 2, 3, and 4 shall not apply to software that Dr. Farwell and/or others developed and implemented before the founding of Brainwave Science, LLC in 2012."

4. This Affidavit is in support of Dr. Farwell's Motion to Modify Order to Exempt Public Domain and Pre-Existing Material.

**Definitions**

5. "Dr. Farwell's Basic Public-Domain Invention of Brain Fingerprinting" comprises the basic method and apparatus disclosed and enabled in US Patents #5,363,858, #5,406,956, #5,467,777, and # 7,689,272 (the "Expired Farwell Brain Fingerprinting Patents,) Dr. Farwell's publications in the scientific literature (specified at https://farwellbrainfingerprinting.com/research-publications/), and the software that Dr. Farwell developed and applied at the FBI, the CIA, and the US Navy, in court proceedings wherein Dr. Farwell's Brain Fingerprinting invention and his expert-witness testimony on it were ruled admissible, in operations that Dr. Farwell conducted in collaboration with law enforcement and counterterrorism agencies worldwide, and in other venues.

6. "Dr. Farwell's Advanced Public-Domain Features of Brain Fingerprinting" comprises advanced features developed by Dr. Farwell, that were disclosed and enabled in the Expired Farwell Brain Fingerprinting Patents, Dr. Farwell's publications in the scientific literature (specified at https://farwellbrainfingerprinting.com/research-publications/ ), and the software that Dr. Farwell developed and applied at the FBI, the CIA, the US Navy, in court proceedings wherein Dr. Farwell's Brain Fingerprinting invention was ruled admissible, in counterterrorism operations worldwide, and in other venues, including but not limited to a system that

   a) prompts testing personnel for appropriate stimuli;

   b) displays stimuli to testing subjects in optimal order and at optimal intervals;

   c) captures appropriate P300 brainwave responses;

   d) disregards and/or eliminates extraneous responses ("noise") which may produce false positive or false negative results;

   e) detects and disregards any attempted countermeasures by suspects or others involved in conducting testing;

   f) performs appropriate analysis of P300 measured responses utilizing statistical and machine learning algorithms and Artificial Intelligence;

   g) generates unbiased reports for use by examiners, investigating agencies and legal authorities.

7. Collectively, Dr. Farwell's Basic Public-Domain Invention of Brain Fingerprinting and Dr. Farwell's Advanced Public-Domain Features of Brain Fingerprinting comprise "Dr. Farwell's Brain Fingerprinting Invention."

8. "Dr. Maison's Implementation at BWS of Dr. Farwell's Brain Fingerprinting Invention" comprises the software developed by Dr. Maison for Brainwave Science LLC / Inc. ("BWS"), which includes the following four components:

    a. Dr. Farwell's Basic Public-Domain Invention of Brain Fingerprinting;

    b. Dr. Farwell's Advanced Public-Domain Features of Brain Fingerprinting;

    c. A "Blue User Interface"; i.e., a user interface that has blue as its background color throughout; and

    d. Software to interface with the BWS headset (which is different from all of the headsets that Dr. Farwell used previous to the founding of BWS and all headsets Dr. Farwell has sold to clients at any time before, during, or after the founding of BWS).

9. "BWS' Uploaded Blue Software" comprises the software that BWS uploaded or allowed to be uploaded to a public-domain source on the Internet, source at 6:15 PM on 9/10/2017 from IP address 65.52.55.39 in Chicago, using the credentials of BWS employee Karuna Raja, who was in Southborough, MA at the time. The "BWS Uploaded Software" was identical in all substantive respects to Dr. Maison's Implementation at BWS of Dr. Farwell's Brain Fingerprinting Invention. The "Blue" in the name refers to the fact that all BWS software had a blue user interface.

    (Note: In his Affidavit, ECS 20, Ika admitted that the BWS Software was uploaded to the internet, but falsely stated that it was uploaded to a secure cloud server. The BWS Software was never uploaded to a secure cloud server. It was maintained on a physical server in a rented office in Southborough, MA and accessed by numerous BWS employees in the US and India. Both Dr. Maison and Dr. Farwell know that from first-hand observation.)

10. "Dr. Maison's Downloaded Blue Software" was the same as BWS' Uploaded Blue Software, as downloaded by Dr. Maison from a public source on the internet.

11. "Dr. Maison's Developed Green Software" comprised the following changes to Dr. Maison's Downloaded Blue Software and its source, BWS' Uploaded Blue Software, as follows.

   e. Dr. Maison changed the user interface color to green. This is different from all BWS software that had ever been accessed by Dr. Maison at any time through any means.

   f. Dr. Maison implemented substantial improvements to the software, including advanced public-domain digital filters (as published by Dr. Farwell and others), which were lacking in all versions of BWS' software.

   g. Dr. Maison deleted the parts of the BWS software that interfaced with the BWS headset, and substituted software that interfaced with a custom headset designed by Dr. Farwell and manufactured in the US that was never used or possessed by BWS.

12. BWS obtained Dr. Maison's Developed Green Software through a settlement agreement with Dr. Maison.

13. "BWS' Pre-Maison Blue Software" is the version of the BWS software that BWS had prior to receiving Dr. Maison's Developed Green Software.

14. "BWS' Fraudulently Modified Green Software" is the version of the BWS software that BWS developed after receiving Dr. Maison's Developed Green Software and prior to submitting the respective software packages to Codequiry. This modification was for the transparent purpose of making BWS' software appear more similar to Dr. Maison's. The modification included changing the color from blue – the color of all BWS software up to the time that BWS obtained Dr. Maison's Developed Green Software – to green – the color of Dr. Maison's Developed Green Software – and other undisclosed changes.

15. The "Program Plaintiff Originally Submitted to Codequiry as Its Code" is the program plaintiff originally submitted to Codequiry as its code, as specified in the Preliminary Restraining Order (ECS 30) and referred to therein as BWS' "confidential or proprietary information."

**Facts**

16. Dr. Lawrence Farwell

    - invented Dr. Farwell's Brain Fingerprinting Invention in 1984;

    - patented it in 1994, 1995, and 2010;

    - applied it the FBI, the CIA, and the US Navy;

    - published it in the scientific journals;

    - solved major crimes with it, including helping to bring a serial killer to justice and to free an innocent man falsely convicted of murder;

    - met with the President of the United States (in 2006) and the Director of the CIA and developed a program to apply it in classified counterterrorism operations, and successfully applied it, as published (without identifying details) in a recent scientific article;

    - implemented it in multiple law enforcement and counterterrorism agencies around the world;

    - continues to provide his expertise as the inventor and world's leading expert in Dr. Farwell's Brain Fingerprinting Invention to law enforcement, intelligence, military, and counterterrorism agencies around the world.

    - Developed software to implement Dr. Farwell's Brain Fingerprinting Invention in 1985 and in multiple iterations over the years before BWS LLC existed, placed the same in the public domain, and assisted others – including but not limited to Dr. William Iacono, the CIA, and Westinghouse Electric Corporation – to develop open-source software that implemented Dr. Farwell's Brain Fingerprinting Invention.

17. Plaintiff represented the Program Plaintiff Originally Submitted to Codequiry as Its Code as BWS' "confidential or proprietary information," that is, code developed by BWS. The entire foundation of the present lawsuit is the premise that what BWS submitted to Codequiry (for comparison with Dr. Maison's code) was BWS original code that was developed by BWS;

i.e., BWS' Pre-Maison Blue Software, which like all BWS software up to the time had a blue interface.

18. In fact, Program Plaintiff Originally Submitted to Codequiry as Its Code comprised not the BWS code, but rather a fraudulently modified version that was changed after BWS received Dr. Maison's Developed Green Software to appear more similar to Dr. Maison's Developed Green Software than the actual, original BWS code.

19. In his Affidavit (ECF), Plaintiff's principal Krishna Ika stated that software features 3 (a) – (g) above were developed by BWS and constituted BWS trade secrets.  In fact, as outlined in detail in Dr. Maison's (ECF 24, 2) Affidavit and Dr. Farwell's Affidavit (ECF 24, 1) all of these features were contained in Dr. Farwell's Basic Public-Domain Invention of Brain Fingerprinting and Dr. Farwell's Advanced Public-Domain Features of Brain Fingerprinting, both of which existed in the public domain before Brainwave Science LLC was founded.

20. BWS has acknowledged in said Ika's Affidavit that "The concept of using P300 brainwaves to determine the presence or absence of information within a subject's brain is not proprietary to Brainwave. P300 brainwave testing is the subject of several now-expired patents, including the afore-referenced now-expired patents…and have been addressed within numerous publicly available scientific studies and journal publications. The challenge in developing and marketing any P300 based system lies not within the concept of P300 measurement itself but in creating a system which…[and then Ika lists features 3 (a) – (g) above].  These features 3 (a) – (g), which were contained in Dr. Farwell's pre-existing public-domain invention, scientific articles, and software, are the only features that BWS has ever claimed were proprietary to BWS. BWS' claims to that effect are entirely false.

21. Ika committed perjury a second time in a hearing in this case on November 30, 2021. Ika stated repeatedly that the BWS software contained no open-source or public-domain information, whereas in fact it contains extensive public-domain information, as documented in detail in in Dr. Maison's (ECF 24, 2) affidavit and Dr. Farwell's affidavit (ECF 24, 1).

7

**Argument**

22. The purpose of the Preliminary Restraining Order is to prevent Plaintiffs from using information that is proprietary to the Plaintiff. By definition, **"material therein [that is, in the code that BWS submitted to Codequiry] that is in the public domain"** is not proprietary to the Plaintiff or anyone else.

23. Without the requested changes, the Preliminary Restraining Order would effectively prohibit Dr. Farwell to use and sell information that is in the public domain, information that everyone else in the world except the Defendants can use and sell.

24. It would effectively prevent Dr. Farwell from practicing Dr. Farwell's Brain Fingerprinting Invention, which he had been practicing for decades before Brainwave Science, LLC was founded in 2012.

25. It would prevent Dr. Farwell from using and selling software that he and others developed prior to the founding of Brainwave Science, LLC. It would be a logical impossibility for such software, which pre-existed BWS LLC, to have been developed by BWS LLC and to be "proprietary" to BWS LLC.

26. This would cause irreparable harm to Dr. Farwell. It would effectively prevent him from practicing his career, which he had already been practicing for decades before Brainwave Science, LLC was founded in 2012.

27. It would also cause irreparable harm to third parties, including but not limited to Dr. Farwell's domestic and international clients and the law enforcement, counterterrorism, and intelligence agencies around the world who have been working with Dr. Farwell since before Brainwave Science, LLC was founded and who depend on Dr. Farwell's expertise to effectively carry out their responsibilities in law enforcement, intelligence, and counterterrorism.

28. It would also constitute a threat to national and global security, in that preventing Dr. Farwell from providing his unique expertise in Dr. Farwell's Brain Fingerprinting Invention -- which is critical to the successful operations of law enforcement, intelligence, and counterterrorism agencies in multiple countries – would significantly interfere with the law enforcement, counterterrorism, and intelligence operations of said agencies.

29. The premise that Brainwave Science, Inc. is somehow damaged by Dr. Farwell practicing Dr. Farwell's Brain Fingerprinting Invention, by interfering with BWS Inc.'s ability to sell their software and services to clients, is fundamentally flawed.  BWS Inc. has never sold their iCognative product to any agency or organization, and has never successfully implemented it in the field or conducted and published scientific research on it.  BWS Inc.'s iCognative product does not meet the Brain Fingerprinting Scientific Standards, and as such would never be accepted or used by any law enforcement, intelligence, or counterterrorism agency with any significant level of expertise.  Moreover, if BWS Inc. ever succeeded in defrauding any such agency into hiring its principal Krishna Ika and his employees to effect a technology transfer of forensic science technology – in which they have no relevant expertise or experience – to said agency, the result would be a disaster for national and global security. It is not an exaggeration to say that such an event would lead to the deaths of innocent people and terrorists getting away with murder.

30. For all of the above reasons, this Court should amend the Preliminary Restraining Order in the manner described in Dr. Farwell's Motion to Modify Order to Exempt Public Domain and Pre-Existing Material.

Sincerely,

*Lawrence A. Farwell*

Dr. Lawrence A. Farwell
Defendant
28375 Sandy Beach Lane NE
PO Box 547
 Kingston, WA 98346
 email: brainwave@larryfarwell.com
 phone (206) 905-1009
 mobile (206) 250-5516