Magistrate Judge Roanne L. Mann
United States District Court Judge
U.S. Eastern District, New York
225 Cadman Plaza
East Brooklyn, NY 11201
**VIA ECF Filing**
RE: Brainwave Science, Inc. v. Arshee, Inc. et al
Case Number: 1:21-cv-04402-BMC

**FILED
in the Clerk's Office
U.S. District Court,  EDNY
Aug 31, 2022, 9:35 PM
Brooklyn
Pro Se Office via Box.com**

Defendant Dr. Lawrence Farwell's Second Reply to Plaintiff's Reply [88] Confirming Defendant has fully complied with disclosure demands and confirming Defendant's attempt to resolve.

Dear Judge Mann,

In a letter of August 26, 2022, Plaintiff wrote:

> "Defendant Farwell's assertion of "attorney client privilege" regarding his communications with University at Canterbury and/or Professor Robin Parsons is unsupported in fact and law and in violation of Local Rule 26.2(1-2). Neither Professor Parsons' status as a licensed attorney within New Zealand, nor any past or present relationship with Defendant Farwell as a legal advisor, renders his communications with him which relate to his well-publicized P-300-related joint research/projects, with Professor Parsons, individually or in his capacity as a representative of the University of Canterbury, subject to attorney client privilege."

I will leave it to my attorney Robin Palmer (not Parsons – a typo) and Plaintiff's attorney Paul Tomkins to, as Mr. Tomkins suggested, "resolve the issues set forth herein [in his letter to Judge Mann]."

To this end, I wrote the following email today to Professor Robin Palmer:

> Dear Robin,
>
> Ika's attorney Paul Tomkins took issue with our position that my communications with you are under attorney-client privilege.  See attached letter from Tomkins to Judge Mann.
>
> Therein Tomkins stated:
>
>> "Defendant Farwell's assertion of "attorney client privilege" regarding his communications with University at Canterbury and/or Professor Robin Parsons is unsupported in fact and law and in violation of Local Rule 26.2(1-2). Neither Professor Parsons' status as a licensed attorney within New Zealand, nor any past or present relationship with Defendant Farwell as a legal advisor, renders his communications with him which relate to his well-publicized P-300-related joint research/projects, with Professor Parsons, individually or in his capacity as a representative of the University of Canterbury, subject to attorney client privilege."
>
> In his second sentence, he makes a valid point.  Our communications "which relate to his well-publicized P-300-related joint research/projects" may not be attorney-client

privileged.  Our other communications on other subjects, particularly on legal matters directly relevant to current legal cases in which I am involved, appear to me to be clearly attorney-client privileged.

You are the only attorney in the world who has been trained in Farwell Brain Fingerprinting – the science and technology at issue in this lawsuit and the other five lawsuits that BWS has filed against me and other potential witnesses against Ika in criminal cases in multiple countries.  You are also the only attorney in the world who has conducted and published scientific research on the Farwell Brain Fingerprinting.  As such, you are uniquely qualified to advise me on legal matters pertaining thereto.

The communications between you and me that appear to me, as a non-attorney, to be attorney-client privileged are the following.  All of these are topics on which your role has been to provide me with legal advice, not only as a licensed attorney in New Zealand, but also as a highly experienced and qualified practicing attorney who is licensed not only in New Zealand but also in South Africa and internationally and is well versed in international law and the intersections and interactions between international law and the laws of various countries, including the South Africa, New Zealand, the US, and others.

1. My meeting with the President of the USA and the Director of the CIA to design a classified program to apply Farwell Brain Fingerprinting (the intellectual property at issue in the present case) in counterterrorism operations overseas, and our successful implementation of said program.  Although all of the details are classified, a recent scientific article has reported on the success of this program in, among other achievements, developing a Farwell Brain Fingerprinting test to identify the respective terrorist masterminds behind a major terrorist hijacking, a major terrorist mass shooting, and multiple major terrorist bombings.  For me, this program has involved a complex legal situation at the intersection of international law and the laws of several countries, including New Zealand (recall the terrorist attack in your own home city, Christchurch, wherein I was involved in investigating the suspect in other countries where he had been active and in contact with other suspects I was investigating) and elsewhere.

2. The case in which Mr. Ika allegedly conspired with another co-conspirator – who has already been convicted of essentially the same crime of which Ika now stands accused in South Africa (where you are licensed), Pakistan, Nigeria, and Thailand – to expel the Minority Shareholders of a Brainwave Science, LLC and transfer their equity to himself without due process or consent, and without any compensation for their misappropriated 49% equity in the LLC.   Details are in Dr. Farwell's Report to the FBI, with which you are familiar.

3. The case, in which I am a witness, wherein South African General Donald Ramfolo, in a sworn affidavit, has accused Krishna Ika of fraud in South Africa.  This is also at issue in the current civil case and the five other civil cases that Ika has filed against me and other potential witnesses against him in criminal cases in South Africa, Pakistan, Nigeria, Thailand, and possibly elsewhere (see below).

4. The case, in which I am also a witness, wherein Saudi General Adil Al Eid has accused Ika of fraud on the BWS website, wherein, according to General Al Eid, Ika fraudulently publicized a "false and forged" endorsement of BWS' iCognative product by General Al Eid. According to General Al Eid, he never made such an endorsement of anything to do with BWS. He has been collaborating with me in bringing the genuine Farwell Brain Fingerprinting to Saudi Arabia for years, and has so stated in private meetings and on television.

5. The case, in which I am both an expert witness and a fact witness, in which Farwell Brain Fingerprinting expert Firas Hamdi, who has been a major contributor to our successful efforts to implement Farwell Brain Fingerprinting in the Middle East and South Asia, stated in a sworn affidavit that Ika and his associates committed fraud in that region.

6. Similar cases in Nigeria and Thailand.

7. Two cases in India, both of which I won after both of them went all the way to the Supreme Court of India, that are similar to the present case in the USA.

8. Other classified and unclassified counterterrorism operations around the world where I have sought advice on the intersection of national and international law with reference to counterterrorism, forensic science, the involvement of foreigners such as myself, and other associated issues in countries where you are licensed, including New Zealand and South Africa, in the international arena, and elsewhere.

9. In Plaintiff's Reply Affirmation of August 24, Mr. Tomkins advances the whimsical proposition that under the Preliminary Injunction I am required to somehow force the CIA to return to me a Farwell Brain Fingerprinting System that my colleagues and I delivered to them in 1993, on the basis of Plaintiff's claim that Plaintiff (which first existed in 2012) developed that system in 2017 (thus making it proprietary to Plaintiff), after which Defendant Dr. Maison stole it from them and gave it to me. Plaintiff does not explain how I could first obtain Plaintiff's proprietary technology after 2017 (when Plaintiff developed it) and deliver it to the CIA in 1993 without use of a time machine.

   You, Robin, are uniquely qualified to help me navigate the legal issues involved here in conjunction with the realities of the scientific world and the forward direction of time and causality. The forward direction of time and causality is well established in the scientific world as well as the world of sanity and common sense, but is clearly lacking in the logic (or lack of logic) advanced by Plaintiff on this issue. Tying this scientific and logical reality in with the relevant legalities, as we have discussed, is a task that you are uniquely suited to undertake and on which you are uniquely suited to advise me.

It may be that we can reach a compromise with the Plaintiffs wherein our communications that, as specified by Tomkins, "relate to his [Dr. Farwell's and Professor Palmer's] well-publicized P-300-related joint research/projects" are subject to disclosure, and our communications on the above referenced nine subjects are exempted from disclosure due to attorney-client privilege.

3

> You may be able to work something out along these lines with Mr. Tomkins that is mutually agreeable.
>
> Cheers,
>
> Larry

I agree with Mr. Tomkins that it would be preferable for the parties to at least attempt to come to a mutually acceptable arrangement regarding attorney-client privilege, rather than involving the Court at this stage. I will leave it to respective attorneys to make such an attempt.

I am in communication with Plaintiffs in order to resolve the issues set forth herein. Absent an alternative direction from the Court, in the event that these issues cannot be resolved on or before September 30, 2022, I will request Court intervention.

Sincerely,

*Lawrence A. Farwell*

Dr. Lawrence A. Farwell
Defendant
28375 Sandy Beach Lane NE
PO Box 547
Kingston, WA 98346
email: brainwave@larryfarwell.com
phone (206) 905-1009
mobile (206) 250-5516