**FILED
in the Clerk's Office
U.S. District Court,  EDNY
Nov 8, 2022
Brooklyn
Pro Se Office via Box.com**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

BRAINWAVE SCIENCE, INC.

     Plaintiff

Statement of Defendant Dr. Lawrence A. Farwell for Joint Status Report ordered by Magistrate Judge Roanne L. Mann on 10/31/2022

          - against -

Civil Action No.: 21-cv-4402

(BMC-RLM)

ARSHEE, INC., DR. LAWRENCE A. FARWELL, DR. THIERRY MAISON and BRAIN FINGERPRINTING FOUNDATION

               Defendants.

---------------------------------------------------------- X

1

1. I, Dr. Lawrence A. Farwell, am a Defendant in the referenced case.

2. On October 31, 2022, Magistrate Judge Roanne L. Mann ordered as follows:
By November 7, 2022, the parties must file a joint status report regarding whether they have complied with Judge Cogan's December 13, 2021 Order that: "Defendants must provide to plaintiff, at plaintiff's sole expense, a report from an independent third party confirming that any P300-related software demonstration, sale, update, or transfer by defendants does not include plaintiff's 'confidential or proprietary information.'" In the event that the parties have not completed the comparison testing as ordered, they must explain why they have failed to do so.

3. This statement is my contribution to said Joint Status Report.

4. On December 13, 2021, Judge Cogan ordered that: "Defendants must provide to plaintiff, at plaintiff's sole expense, a report from an independent third party confirming that any P300-related software demonstration, sale, update, or transfer by defendants does not include plaintiff's 'confidential or proprietary information.'"

5. By Order dated March 2, 2022, the Court directed Defendants to file affidavits to the Court "establishing that they have complied with the presently imposed preliminary injunction…" (ECF #38).    In response to the Court's directive, I, Defendant Dr. Lawrence Farwell, provided an Affidavit to the Court (ECF #51). In response, Plaintiff filed a letter motion dated March 21, 2022 (ECF #54).

6. I have fully complied with Judge Cogan's December 13, 2021 Order and with the above-referenced Orders and all other orders of the Court.

7. The required testing has not taken place, and the required report has not been prepared, solely because Plaintiff refused to abide by Judge Cogan's December 13, 2021 Order.  In documents submitted to the Court, Plaintiff's attorney Paul Tomkins made demonstrably false statements to the Court about Plaintiff's failure to comply and about Defendants' actions regarding compliance, as described below.

8. Plaintiff's Letter Motion of March 21 contained demonstrably false substantive statements regarding the most significant facts alleged.

9. Specifically, Plaintiff's statement that "the undersigned executed a retainer agreement for the third-party evaluator selected by Defendant Farwell to conduct the code comparison directed by the Court's Temporary Injunction" is an out-and-out lie.

10. I, Defendant Dr. Farwell – not Plaintiff – executed an agreement with said third-party evaluator, Mindfire Technologies, who is one of the most capable, experienced, and respected companies in the world for such complex software evaluation.

11. Plaintiff proposed an alternative contract with said third-party evaluator, Mindfire Technology, which was never executed because Mindfire rejected it for the reasons described below. Tomkins falsely represented said proposal as a "fully executed" contract. In fact, it was not "fully executed." Plaintiffs signed it; Mindfire did not.

12. Plaintiff also falsely stated that "The undersigned was thereafter advised by the proposed testing entity that, upon their review of documents apparently provided by Defendant Farwell, that they could not agree to the limited scope of work proposed by Plaintiff."

13. The reason that I stated that the contract proposed by Plaintiff was not viable, was NOT that I and other Defendants objected to the "limited scope of work." On the contrary, the contract proposed by Plaintiff, and Plaintiff's subsequent correspondence, insisted on a major *increase*, not a limitation, in the scope of work, an increase that would have required the evaluator to transfer Defendants' intellectual property to Plaintiff. Mindfire rejected Plaintiff's proposed alternative contract for the same reason.

14. Plaintiff has insisted on a scope of work that, in addition to the report required by the order of the Court, added an additional report to be delivered by the evaluator to the Plaintiff that comprised the transfer of my (Defendant Farwell's) intellectual property to Plaintiff by the evaluator providing to the Plaintiff specific details of my new software to be tested, including, among other things, screen shots.

15. Both I and Mindfire recognized the fact that the expanded scope that Plaintiff demanded, wherein Mindfire would transfer my (Defendant Farwell's) new proprietary information and trade secrets to Plaintiff – including screen shots of my software – not only was totally unnecessary and beyond the scope of the order of the Court, but would constitute a clear

violation of my non-disclosure agreement with Mindfire, a necessary agreement with any evaluator for protecting my intellectual property.

16. Plaintiff refused to abide by the order of the Court and provide a retainer, submit their software for analysis, and pay for the analysis ordered by the Court – despite the fact that Mindfire and I already had an agreement in place that met the requirements of the order of the Court – because Plaintiff insisted on said expanded scope of the contract with Mindfire.

17. The proposed contract between BWS and Mindfire -- which Tomkins falsely stated in his above-referenced Motion and in emails to me was executed by both parties, when in fact it was only signed by Tomkins and not by Mindfire – included a second report, in addition to the report specified in the order of the Court, that would have transferred my intellectual property, including screenshots of my software, to Plaintiff.  Obviously, no legitimate testing expert would consider signing such a contract, which clearly subverted the purpose of engaging a testing expert from comparing software to transferring Defendant's software, intellectual property, and trade secrets to Plaintiff.

18. Not only is Plaintiff's statement that "the undersigned executed a retainer agreement for the third-party evaluator selected by Defendant Farwell to conduct the code comparison directed by the Court's Temporary Injunction" an out-and-out lie, but the preamble in that sentence, "At the request and urging of Defendant Farwell's former counsel," is yet another lie.  My former counsel, Joseph Carbonaro, was well aware that I had already executed a satisfactory contract with Mindfire, there was no reason for Plaintiff to attempt to execute an alternative contract with Mindfire, and in any case he certainly did not request or urge Plaintiff to sign a contract with Mindfire or anyone else that expanded the scope of the work to include a second report transferring my intellectual property to Plaintiff.

19. Plaintiff subsequently found "an alternate, neutral evaluator" named Dr. Howard Cohen who apparently had agreed with Plaintiff to execute a testing agreement that expanded the scope beyond that of the order of the Court to include two reports, one of which would have transferred my intellectual property to Plaintiff.  Any party who would consider executing such a contract is clearly neither objective nor competent, and is certainly not neutral.  Moreover, from Dr. Cohen's resume it was clear that he lacked the necessary expertise to examine and evaluate complex software such as the code in consideration here.  For this

reason, and because I already had a contract in place with Mindfire – an evaluator who, unlike Dr. Cohen, had the necessary expertise and objectivity to conduct the required comparison – I rejected Dr. Cohen as an evaluator.

20. In said Motion, Tomkins falsely stated that "Defendant Farwell also subsequently objected to proceeding with the code comparison…" That is yet another out-and-out lie. As our emails will verify, I repeatedly demanded that Plaintiff proceed with the required testing. I only asserted that I had no obligation to provide my software to anyone that Plaintiff had engaged ostensibly for the purpose of software testing but in fact with the actual assigned task of transferring my intellectual property to Plaintiff in a second report that was uncalled for in the Order of the Court and clearly not the intent of said Order.

21. At Tomkins request, I executed a revised agreement with Mindfire that included the specifications he asked for with respect to the scope of work. On March 8, 2022, I wrote an email to Tomkins that stated:

> Mr. Tomkins:
>
> Per your request, I have executed a revised contract with Mindfire that strictly limits the scope of work to exactly the words in the preliminary injunction.
>
> I have attached the document, signed by both parties.
>
> The attached fully executed contract now not only meets the requirements of the court's preliminary injunction, but also gives you everything you asked for in the way of restricting the scope of work to the maximum possible extent.
>
> Kindly provide the iCognative software to Mindfire and pay their retainer without further delay.
>
> As a gesture of goodwill and cooperation, I also offer that you may feel free to provide Mindfire with any additional information you like that you think supports your case, and communicate freely with them during the course of their performance on the contract. I will forward any progress reports to you as soon as I receive them.
>
> Note that neither you nor I have the right to interfere with the comparison or prevent Mindfire from completing their work, whether we like the results or not.

> If either of us attempted to obtain such undue influence, the testing company would no longer be independent, but rather would be under the control of one party or the other. Such a situation would be in direct contradiction of the requirement of the court that the company I hire to provide me with the report that I then provide to you per the injunction must be an independent third party.
>
> Regards,
>
> Dr. Lawrence A. Farwell

22. Mr. Tomkins replied on March 8. His email stated, in part, as follows:

> Dr. Farwell,
>
> Your proposal is not acceptable to the Plaintiff for the following reasons:
>
> As I have previously advised, Brainwave is not amenable to releasing our code or remitting payment for the services of any evaluator/expert without a retainer agreement in place between Brainwave and the evaluator. Again, this is neither unreasonable nor unusual when securing the services of an independent, third-party evaluator. This may be accomplished by way of a tri-parte retainer agreement or a retainer agreement between Brainwave and the evaluator with an NDA and full release in favor of submitting Defendant(s).
>
> As I have also previously advised, the "Scope of Work" provision must include some verification by the subject matter expert(s) that the code submitted by Defendant(s) represents a bona fide representation of code to be demonstrated, sold or transferred by Defendant(s). I.E. the code should be able to be compiled into executable form and should be verified as a bona fide P300-related application. I have been advised by our technical staff that this verification should take no more than 2-3 hours. Absent such a verification, we have no way of confirming that the code being submitted for evaluation relates to the software which is the subject of the Court's Temporary Injunction Order.
>
> As I also have previously advised, the retainer agreement should provide the names and qualifications of all persons to be conducting the code analysis.

23. Although I already had a contract in place with Mindfire that met the requirements of the order of the Court, in order to be as forthcoming as possible, I sent an email to Tomkins stating that I would consider a tri-parte contract with Mindfire that included Plaintiff as a party in addition to myself, and that included all of the provisions specified by Tomkins in his above email of March 8.

24. I went so far as to prepare a tri-parte agreement for execution by Plaintiff, myself, and Mindfire that included everything that Tomkins said he wanted, and was modified so as to fully address all of the objections that he had raised to previous versions.  This is attached hereto as Exhibit I-A.

25. I emailed said proposed contract to Tomkins on March 11, 2022 with the following email text:

> Mr. Tomkins:
>
> I acknowledge receipt of the contract you proposed to Mindfire.   It appears to be signed by you, and not fully executed by both parties.
>
> As you know, I have a fully executed contract in place with Mindfire, signed by myself and Mindfire, to conduct the software comparison required by the court order.
>
> However, I am willing to consider signing a different contract that includes BWS and also includes all of the terms you have requested.
>
> I understand your concern that Mindfire should confirm that the code I submit is actually functional code.  If it is not, then there is no reason for them to continue with their comparison.  However, I will not consider a contract that includes Mindfire giving BWS any of my code or any information about my code, other than their professional confirmation that it is functional code. Anything else would be a clear violation of my confidentiality agreement with Mindfire.  This provision goes both ways.  Mindfire has the same obligation to protect your confidential information as they do to protect mine.  Mindfire will not be required to provide me with any of your code or anything else covered by your confidentiality agreement.  I will not consider any contract that includes a

7

    provision for a preliminary report to be evaluated by BWS.  A confirmation by Mindfire to both BWS and myself that my code is functional, as you have requested, is fine.  A "preliminary report" that provides you with any information whatsoever about my code is a total non-starter. That would be in direct contradiction of my confidentiality agreement with Mindfire, as well as with normal and ethical business practices for an independent third-party consultant.

    I have attached a draft of a contract that provides everything you have requested.  Kindly let me know if this is acceptable to you.  If so, we can forward it to Mindfire to insert the names and qualifications of their personnel.

    Sincerely,

    Dr. Lawrence A. Farwell

26. Mr. Tomkins did not reply to said email.  Instead, he filed the Motion of March 21 (ECF 54) in a transparent attempt to trick the Court into requiring me to allow Plaintiff, under the guise of software testing, to obtain my intellectual property from a purported software tester, and to participate in testing by a clearly unqualified and biased person such as Dr. Cohen.

27. In Summary, the report required by Judge Cogan's December 31, 2021 has not been prepared.  The required software testing has not taken place.  This is for the sole reason that the Plaintiff has repeatedly refused to abide by Judge Cogan's December 13, 2021 order and has repeatedly lied to the Court about said refusal and about the associated actions of the Plaintiff and the Defendants.

*Lawrence A. Farwell*

Dr. Lawrence A. Farwell, Defendant
November 3, 2022

8