# Exhibit I - A



# Litigation Support
# and Consulting Services Agreement

This Litigation Support and Consulting Services Agreement (the "Agreement") is made and effective
 March 11, 2022             ,

BETWEEN CLIENTS:

 Dr. Lawrence A. Farwell              ("Dr. Farwell"), an individual residing in
 the state of                 Washington          , its head office located at:

 Street Address:          28375 Sandy Beach Lane NE, PO Box 547
 City, State, Zip:         Kingston, WA 98346

and:

 Brainwave Science, Inc.              ("BWS"), a corporation organized and
 existing under the laws of the state of    Massachusetts       , its head office located at:

 Street Address:          257 Turnpike Road
 City, State, Zip:         Southborough, MA 10001

Collectively, "Farwell" and "BWS" shall be referred to herein as "Clients."


AND:           **Mindfire Consulting Group, LLC, dba Mindfire Technology** ("Mindfire"), a corporation
               organized and existing under the laws of the Utah, with its head office located at:

                         872 W Heritage Park Boulevard, Suite 200
                         Layton, UT, 84041


1.  LITIGATION SUPPORT AND CONSULTING SERVICES

Litigation Support and Consulting Services (the "Services") when used in this Agreement consist of the
performance of professional services that include but are not limited to software and technical
consultation, technical strategy, courtroom strategy, courtroom testimony, source code analysis, source
code comparison, manual and automated system analysis, creating analysis tools, writing code, source
code abstraction, filtration and comparison, documentation, reporting, document review and document
examination.  Specifically, Mindfire will perform the Services as outlined within the "Scope of Work"
within Attachment A hereto with personnel described in Attachment B hereto.


2.  CLIENTS' RESPONSIBILITIES

Clients may need to perform certain activities in order for Mindfire to fulfil its responsibilities under this
Agreement including but not limited to meetings or interviews in person or by other electronic means,
granting access to requirements, specifications, documents, files, test accounts, test devices, app store
accounts, third party accounts and software demos and testing. Unnecessary or unreasonable delays
attributable directly to Clients which result in additional costs to Mindfire are subject to additional
compensation to Mindfire.

3.   TERM OF THE AGREEMENT

This Agreement is effective as of the date it is signed by both parties. The terms and conditions of the Agreement will remain in effect until terminated by either party. In no event shall this Agreement be in effect for more than five (5) years unless both parties execute an amendment which extends the term of this Agreement. The expiration of this Agreement shall not affect the obligations of either party to the other with respect to those obligations established under this Agreement. Dr. Farwell, BWS, or Mindfire may terminate this Agreement for any reason upon prior written notice.  Both parties agree that they will give as much notice as possible in the event of early termination of this agreement.

4.   SURVIVAL BEYOND COMPLETION

The provisions herein and Services performed under this Agreement as well as confidentiality, use, indemnification, assignment, reproduction, warranty, ownership, return or destruction shall survive the delivery of the Services and the payment of associated charges.

5.   CONFIDENTIALITY AND SECURITY OF THE SYSTEMS

I. DR FARWELL AND MINDFIRE

Dr. Farwell and Mindfire each acknowledge that all material and information which has or will come into the possession and knowledge of each in connection with this Agreement or the performance hereof, consists of confidential and proprietary data, whose disclosure to or use by third parties could be damaging. Both parties, therefore, agree to hold such material and information in strictest confidence, not to make use thereof other than for the performance of this Agreement, to release it only to individuals requiring such information, and not to release or disclose it to any other party, except as approved by the parties or required by law.  For the purposes of this provision, BWS is a "third party."

II. BWS AND MINDFIRE

BWS and Mindfire each acknowledge that all material and information which has or will come into the possession and knowledge of each in connection with this Agreement or the performance hereof, consists of confidential and proprietary data, whose disclosure to or use by third parties could be damaging. Both parties, therefore, agree to hold such material and information in strictest confidence, not to make use thereof other than for the performance of this Agreement, to release it only to individuals requiring such information, and not to release or disclose it to any other party, except as approved by the parties or required by law. For the purposes of this provision, Dr. Farwell is a "third party."

6.   NON-DISCLOSURE / CONFIDENTIALITY

I. DR FARWELL AND MINDFIRE

This Agreement shall govern the conditions of disclosure by Dr. Farwell to Mindfire of certain "Confidential Information" including but not limited to prototypes, drawings, data, trade secrets and intellectual property relating to the business of Dr. Farwell.

With regard to the Confidential Information, Mindfire hereby agrees:

A.   To safeguard the information against disclosure to others with the same degree of care as exercised with its own information of a similar nature.
B.   Not to disclose the information to others, without the express written permission of Dr. Farwell, except that:
   a.   which Mindfire can demonstrate by written records was previously known;

   b. which are now, or become in the future, public knowledge other than through acts or omissions of Mindfire;

   c. which are lawfully obtained by Mindfire from sources independent of Dr. Farwell;

  C. That Mindfire shall not directly or indirectly acquire any interest in, or design, create, manufacture, sell or otherwise deal with any item or product, containing, based upon or derived from the information, except as may be expressly agreed to in writing by Dr. Farwell.

  D. That the non-disclosure and confidentiality obligations of Mindfire with respect to the information shall continue for a period ending two years from the termination date of this Agreement.

  E. That the non-disclosure and confidentiality obligations of Mindfire with respect to the information shall include BWS; that is, no Confidential Information of Dr. Farwell shall be disclosed to BWS for any reason.

## II. BWS AND MINDFIRE

This Agreement shall govern the conditions of disclosure by BWS to Mindfire of certain "Confidential Information" including but not limited to prototypes, drawings, data, trade secrets and intellectual property relating to the business of BWS.

With regard to the Confidential Information, Mindfire hereby agrees:

  A. To safeguard the information against disclosure to others with the same degree of care as exercised with its own information of a similar nature.

  B. Not to disclose the information to others, without the express written permission of BWS, except that:

   a. which Mindfire can demonstrate by written records was previously known;

   b. which are now, or become in the future, public knowledge other than through acts or omissions of Mindfire;

   c. which are lawfully obtained by Mindfire from sources independent of BWS;

  C. That Mindfire shall not directly or indirectly acquire any interest in, or design, create, manufacture, sell or otherwise deal with any item or product, containing, based upon or derived from the information, except as may be expressly agreed to in writing by BWS.

  D. That the non-disclosure and confidentiality obligations of Mindfire with respect to the information shall continue for a period ending two years from the termination date of this Agreement.

  E. That the non-disclosure and confidentiality obligations of Mindfire with respect to the information shall include Dr. Farwell; that is, no Confidential Information of BWS shall be disclosed to Dr. Farwell for any reason.

## 7. CLIENTS' RIGHT TO CONTRACT FOR SIMILAR WORK

Clients reserve the right to contract with other parties for work similar to that being performed under this Agreement so long as that work does not violate its covenant of non-disclosure.

## 8. CANCELLATION

BWS and Dr. Farwell, each individually, shall have the right to cancel this Agreement at his/its option by written notice to Mindfire. In the event that BWS or Dr. Farwell elects to cancel this Agreement, BWS will pay Mindfire the amount equal to the actual time and materials charges incurred for that work so cancelled through the day of receipt of written notice of cancellation and any further work required to transfer work or services from Mindfire to Clients at the agreed upon Rate as set forth in Attachment A.

## 9. INVOICES AND PAYMENTS

In consideration of the Services to be performed hereunder BWS shall pay Mindfire as follows:

A. As full compensation for the Services performed in association with this Agreement, BWS agrees to pay Mindfire the applicable Rate per consultant engaged in the Services, as set forth in Attachment A.

B. BWS shall pay Mindfire a ("Retainer") in the amount set forth in Attachment A. Retainer will be held by Mindfire in a trust account and will not earn interest. Upon the issuance of each invoice, Mindfire is authorized to debit the amount of funds indicated on the invoice from the Retainer. Client agrees to remit the amount of the invoice to replenish the Retainer such that the Retainer account shall at all times remain positive. If the balance of the Retainer account drops below zero, Mindfire may suspend its performance of Services and delivery of any work product until the balance is restored. Final invoice will be applied against the funds in deposit. If total invoices do not exhaust the Retainer, Mindfire will refund the balance to BWS at the conclusion of the engagement and upon clearance of expected costs. Any payment made by credit card, is subject to a 2.5% credit card processing fee.

## 10. ATTORNEYS' FEES

If any dispute arises under this Agreement, the parties hereto shall negotiate in good faith to settle such dispute. If the parties cannot resolve such disputes themselves, then either party may submit the dispute to mediation by a mediator approved by both parties. If either party does not wish to abide by any decision of the mediator, they shall submit the dispute to litigation. The jurisdiction for any dispute shall be administered in Davis County, State of Utah. Prevailing party shall be entitled to attorneys' fees, court costs, accrued interest (18% per annum) in addition to any other relief it may be awarded, and any other costs to resolve such dispute.

## 11. GOVERNING LAW & JURISDICTION

This Agreement shall be governed by and construed in accordance with the laws of the state of Utah. All parties agree to the exclusive jurisdiction and venue of the Second Judicial District, Davis County Justice Court in the State of Utah.

## 12. INDEMNIFICATION INCLUSION OF COSTS

Each party hereunder agrees to indemnify the other against all losses, costs, expenses (including reasonable counsel fees) which may occur by reason of the breach of any term, provision, warranty or representation contained herein and/or in connection with the enforcement of this Agreement or any provision thereof.

## 13. ALL AMENDMENTS IN WRITING

No amendments to this Agreement shall be effective unless it is in writing and signed by duly authorized representative of all parties.

## 14. NON-SOLICITATION

Both Clients and Mindfire agree not to solicit employees or subcontractors from either party nor will solicitation be made to key business partners, suppliers, etc.

### 15.  SEVERABILITY

If any term or provision of this Agreement is found by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the Parties shall negotiate in good faith to modify this Agreement so as to affect the original intent of the Parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

### 16.  SUCCESSORS & ASSIGNS

This Agreement shall inure to the benefit of and be binding upon the Clients and Mindfire hereto and their respective permitted successors and permitted assigns. Mindfire shall not assign any of its rights or delegate any of its obligations under this Agreement to any person or entity without Dr. Farwell's and BWS' prior written consent, which may be given or withheld in Dr. Farwell's and BWS' sole discretion. Any purported assignment or delegation by Mindfire in violation of this Section shall be null and void and without any legal or binding effect.

### 17.  HEADINGS

The headings of articles, sections, and subsections in this Agreement are included for convenience and reference only and do not affect the interpretation of this Agreement.

### 18.  ENTIRE AGREEMENT

This Agreement constitutes the entire agreement between the parties with respect to the subject matter; all prior agreements, representations, statements, negotiations and undertakings are superseded hereby.


IN WITNESS WHEREOF, the parties have executed this Agreement on the dates set forth first above, with full knowledge of its content and significance and intending to be legally bound by the terms hereof.

[Signature Page Immediately Follows]

DR. FARWELL                                          MINDFIRE


_____                     _____
 Authorized Signature                                Authorized Signature


_____                     _____
 Dr. Lawrence A. Farwell                              Shane Willard, CEO
 Print Name                                           Print Name and Title




BRAINWAVE SCIENCE, INC.


_____
 Authorized Signature


_____
 Paul F. Tomkins, In House Counsel
 Print Name and Title



Attachment A

1. **RATE SCHEDULE**

   A.  $500 per hour: Dr. Stephen Beard or any other testifying witness affiliated with Mindfire.

   B.  $400 per hour: Any software engineer or project manager affiliated with Mindfire with more than 10 years' experience.

   C.  $275 per hour: Any software engineer or project manager affiliated with Mindfire with more than three but less than 10 years' experience.

   D.  $200 per hour: Any software engineer or project manager affiliated with Mindfire with less than three years' experience.

   E.  $150 per hour: Any time spent by non-engineer or non-project manager professionals associated with Mindfire.

A list of the individuals to be engaged by Mindfire in each of categories A – E is attached hereto as Attachment B.

2. **RETAINER**

BWS shall pay Mindfire an initial Retainer in the amount of $5,000.

3. **SCOPE OF WORK**

Mindfire to evaluate the defendants' software and determine whether it includes "confidential or proprietary information" of Brainwave Science, Inc. "Confidential or proprietary information" is defined as "any portion of the program Brainwave Science, Inc. originally submitted to Codequiry as its code," which shall constitute the code submitted by BWS to Mindfire, as per Preliminary Injunction in US District Court for the Eastern District of New York case 21-cv-4402.

Prior to conducting the code comparison, Mindfire will conduct a preliminary review of the code submitted by Dr. Farwell.  The purpose of this review is to ensure that the code submitted represents a functional code.  Mindfire will either (A) provide confirmation to Dr. Farwell and BWS that in Mindfire's professional evaluation the code represents a viable functional code that can be implemented in a workable format, and continue with the code comparison; or (B) provide confirmation to Dr. Farwell and BWS that in Mindfire's professional evaluation the code does not represent a viable functional code that can be implemented in a workable format, and cease further analysis.  As per the terms of the Confidentiality Agreement herein, Mindfire shall not provide any part of Dr. Farwell's code or any additional information whatsoever about Dr. Farwell's code to BWS.

Pursuant to the Court's Order, the code comparison is being conducted to confirm whether the code provided by Defendant Dr. Farwell contains any portion(s) of the code submitted by Plaintiff BWS.   If Mindfire finds any portion of the code provided by Defendant Farwell to contain any significant portion(s) of the code submitted by Plaintiff BWS, Mindfire will suspend its comparison and provide a report on same to Dr. Farwell and BWS.  Otherwise, Mindfire will complete its code comparison and submit a report on the same to Dr. Farwell and BWS.

# Attachment B

## Mindfire Personnel

| Rate | Name | Qualifications |
|------|------|----------------|
| A $500 | Dr. Stephen Beard | |
| B $400 | | [# years with Mindfire; title/position; other qualifications] |
| B $400 | | |
| C $275 | | |
| C $275 | | |
| C $275 | | |
| D $200 | | |
| D $200 | | |
| D $200 | | |
| E $150 | | |
| E $150 | | |
| E $150 | | |

# Billing Information Form

| | |
|---|---|
| Business Name | Business Name |
| Project Name | Project Name |
| Project Number/Code | Project Number |
| Project Contact Name | Project Contact Name |
| Client Project Manager (if different) | Client Project Manager |
| Physical Street Address | Physical Street Address |
| Physical City | Physical City |
| Physical State | Physical State |
| Physical Zip | Physical Zip |
| Main Phone | Main Phone |
| Alternate Phone | Alternate Phone |
| Main Email | Main Email |
| Additional Email | Additional Email |
| Billing Point of Contact | Billing POC |
| Billing POC Main Phone | Billing POC Main Phone |
| Billing POC Alternate Phone | Billing POC Alternate Phone |
| Billing POC Email | Billing POC Email |
| Other | Other |