UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

BRAINWAVE SCIENCE, INC.

Plaintiff

FILED
in the Clerk's Office
U.S. District Court, EDNY
NOv. 21, 2022 @ 2:54 AM
Brooklyn
Pro Se Office via Box.com

Affidavit of Defendant Dr. Lawrence A. Farwell in Response to Order of November 14, 2022 and Plaintiff's Attorney's Response of November 17, 2022

- against -

Civil Action No.: 21-cv-4402 (BMC-RLM)

ARSHEE, INC., DR. LAWRENCE A. FARWELL, DR. THIERRY MAISON and BRAIN FINGERPRINTING FOUNDATION

Defendants.

----------------------------------------------------------- X

1

Dr. Lawrence A. Farwell[1], being duly sworn, declares under penalty of perjury as follows:

1. I am a Defendant in the referenced case.

2. Dr. Farwell invented Brain Fingerprinting in 1985 and patented it in 1994, 1995, and 2010. Since the 1990s Dr. Farwell has provided "<u>bona fide versions of his code</u>" to dozens if not hundreds of individuals, agencies, and institutions, including the CIA, the FBI, the US Navy, the University of Illinois, Harvard University (where he graduated and was later a research associate), the University of Michigan, and many government and public-sector agencies around the world. These comprise many different software programs, some very similar to one another, and some highly differentiated. "<u>Bona fide versions of Dr. Farwell's code</u>" is a broad category that includes many different software programs.

3. In order for Defendant Dr. Farwell to carry out his responsibilities and practice his profession as a neuroscientist, it is necessary to for him to demonstrate, update, and transfer software implementing Dr. Farwell's invention of Brain Fingerprinting and other software involving the P300.

4. The Preliminary Injunction allowed for this by stating that any P300-related software that Dr. Farwell subsequently applied in a demonstration, sale, update, or transfer must not include Plaintiff's "confidential proprietary information."

5. Dr. Farwell developed a software program that, in his opinion, does not include Plaintiff's "confidential proprietary information." On or about March 7, 2022, Dr. Farwell executed an agreement with Mindfire Technologies ("Mindfire") to analyze said program, hereinafter referred to as "Dr. Farwell's Code to be Tested." Said agreement (hereinafter the "Executed Dr. Farwell-Mindfire Contract," Exhibit A in ECF #96) was fully executed, signed by Dr. Farwell and Mindfire.

6. Along with the Executed Dr. Farwell-Mindfire Contract, Dr. Farwell submitted his new software to be tested to Mindfire Technologies, as required by the Preliminary Injunction, prior to engaging in any demonstrations, sale, update, or transfer of the same. Although they have not yet begun testing, Mindfire still has Dr. Farwell's Code to be Tested.

---

[1] For the sake of clarity, I shall in some cases herein refer to myself in the third person.

7. Dr. Farwell then informed Plaintiff of said fully executed contract and further informed BWS that Dr. Farwell had delivered to Mindfire of Dr. Farwell's Code to Be Tested as per the Preliminary Injunction, and notified Plaintiff BWS Inc. of BWS' obligation under the Preliminary Injunction to submit BWS' software to Mindfire for comparison testing and to pay for the test.

8. Plaintiff BWS Inc. refused to comply with the requirement of the Preliminary Injunction to submit their software for testing and to pay for said testing, in direct violation of the Preliminary Injunction.

9. In a series of documents, plaintiff BWS specified terms under which BWS would comply with the Preliminary Injunction by submitting BWS' code for analysis to Mindfire and paying for the testing of Dr. Farwell's Code to Be Tested.

10. Dr. Farwell agreed to multiple demands of BWS Inc., resulting in a proposed software testing agreement wherein almost all of the terms were acceptable to both parties.

11. In a series of pleadings and other documents, Dr. Farwell agreed with almost all of BWS' demands for alterations in the contract governing the testing of Dr. Farwell's Code to Be Tested by Mindfire. As a result, Plaintiff Brainwave Science, Inc. (BWS) and Defendant Dr. Farwell have now agreed on the wording of a triparte Litigation Support and Consulting Services agreement for the software evaluation by Mindfire of Dr. Farwell's Code to Be Tested, except for the wording of the second (middle) paragraph of the Scope of Work section (the "SOW Paragraph), which remains in dispute. Said agreement constitutes an agreement between Mindfire Technologies, BWS, and Dr. Farwell (ECF #59, Exhibit I – A, the "Agreed-Upon Triparte Contract").

12. On November 8, 2022 Judge Mann filed the following Order to Show Cause: "Docket Text: ORDER TO SHOW CAUSE re [93] Status Report filed by Brainwave Science, Inc., [94] Status Report filed by Lawrence A. Farwell. On October 31, 2022, this Court directed the parties to file a joint status report regarding their compliance with Judge Cogan's December 13, 2021 Order directing the parties to undertake certain comparative testing of their respective P300-related software. Instead of submitting a joint report as requested, plaintiff and defendant Farwell each responded separately that the other side was to blame for the parties' failure to execute an agreement with a third-party expert to conduct the comparison

3

testing. See DE #93, DE #94. Defendant Farwell has submitted a proposed agreement with Mindfire Technology (DE #59 at ECF pp. 16-24; DE #94-1) that appears to satisfy the concerns expressed by plaintiff that plaintiff be made a party to the agreement and that the third-party expert conduct a preliminary review of the code submitted by defendant Farwell to confirm that it "represents a functional code." By November 14, 2022, plaintiff must show cause why it should not be directed to execute the agreement proffered by defendant Farwell (DE #59 at ECF pp. 16-24; DE #94-1) so that the comparative testing, which Judge Cogan ordered almost one year ago, can be completed. Ordered by Magistrate Judge Roanne L. Mann on 11/8/2022. (JP)"

13. On November 14, 2022 Plaintiff filed Plaintiff's Attorney's Affirmation in Response to Order to Show Cause of November 14, 2022 (ECF #95 "Plaintiff's Attorney's November 14 Affirmation").

14. On November 14, 2022, this Court issued the following Order: "SCHEDULING ORDER re [95] Affidavit filed by Brainwave Science, Inc. By Order dated November 8, 2022, this Court directed plaintiff to show cause why it should not be directed to execute the agreement proffered by defendant Farwell for comparative testing of the parties' respective P300-related software. In response, plaintiff proposed an alternative to the "Scope of Work" provision drafted by defendant Farwell, which appears to be a reasonable compromise between the parties' positions. By November 17, 2022, defendant Farwell must respond to plaintiff's alternate proposal (DE #95-1). Ordered by Magistrate Judge Roanne L. Mann on 11/14/2022."

15. On November 14, 2022 Plaintiff filed Plaintiff's Attorney's Affirmation in Response to Order to Show Cause of November 14, 2022 (ECF #95"Plaintiff's Attorney's November 14 Affirmation").

16. On November 14, 2022, this Court issued the following Order: "SCHEDULING ORDER re [95] Affidavit filed by Brainwave Science, Inc. By Order dated November 8, 2022, this Court directed plaintiff to show cause why it should not be directed to execute the agreement proffered by defendant Farwell for comparative testing of the parties' respective P300-related software. In response, plaintiff proposed an alternative to the "Scope of Work" provision drafted by defendant Farwell, which appears to be a reasonable compromise between the

parties' positions. By November 17, 2022, defendant Farwell must respond to plaintiff's alternate proposal (DE #95-1). Ordered by Magistrate Judge Roanne L. Mann on 11/14/2022."

17. On November 16, 2022 Defendant Dr. Farwell filed "Dr. Farwell's Letter in Response to Order of Nov. 14, 2022" (ECF #96).

18. On November 17, 2022 Plaintiff filed an Affirmation in response to Dr. Farwell's Letter in Response to Order of Nov. 14, 2022 ("Plaintiff's November 17 Affirmation," ECF # 97).

19. In the various documents referenced throughout the procedural history summarized above, BWS made the following demands regarding the specific wording to be included in the SOW Paragraph of the contract governing the software testing of Dr. Farwell's Code to Be Tested by Mindfire; i.e., modifications in the Agreed-Upon Triparte Contract. BWS demanded that the SOW Paragraph must contain the following specific wording that requires Dr. Farwell to execute an affidavit that states that:

   a. Dr. Farwell's Code to Be Tested "**represents a viable functional code**," as referenced in Judge Mann's Order to Show Cause of November 8, 2022.

   b. Dr. Farwell's Code to Be Tested is "**a bona fide representation of _code to be demonstrated, sold or transferred by Defendant(s)_. I.E. the code should be able to be compiled into executable form and should be verified as a bona fide P300-related application,**" as referenced in ECF #96.

   c. In Plaintiff's Attorney's Affirmation in Response to Order to Show Cause of November 14, 2022 ("Plaintiff's Attorney's Affirmation"), Plaintiff's attorney Mr. Tomkins raises three objections to the Scope of Work proposed in , one objection in each of three sentences, as follows:

   > 9. *[1]* The Scope of Work provision within Defendant Farwell's proposed retainer agreement is unfair and unreasonable as it limits verification exclusively to whether the software submitted by Defendant Farwell "represents a viable functional code".
   >
   > 10. *[2]* Defendant Farwell's counter-proposal is also unfair and unreasonable as it omits any mechanism by which the independent third-party evaluator can confirm

that the code submitted by Defendant Farwell is <u>a bona fide version of his code.</u> *[3]* Defendant Farwell's counter-proposal further prevents any third party from confirming or refuting whether his submission to the evaluator is genuine, or from requesting clarification or substantiation of findings of the evaluator, by explicitly restricting the evaluator from providing "any additional information whatsoever about [the code submitted by Defendant Farwell for comparison] to BWS".  (Id.)

*[Emphasis in the original.  Numbers [1], [2], and [3] added to identify the three objections of BWS.]*

22. Dr. Farwell's Letter in Response to Order of Nov. 14, 2022 (ECF #96) proposed the following:

The middle paragraph of the Scope of Work will read as follows, comprised almost entirely of wording proposed by Mr. Tomkins himself.

> **Dr. Farwell shall submit affidavits confirming that code submitted to Mindfire represents a bona fide representation of code to be demonstrated, sold or transferred by Defendant(s).  I.E. the code should be able to be compiled into executable form and should be verified as a bona fide P300-related application, and is a true and accurate copy of the code to be conveyed to third parties. Prior to conducting the code comparison, Mindfire will conduct a preliminary review of the code submitted by Dr. Farwell. The purpose of this review is to ensure that the code submitted is able to be compiled into executable form and is verified as a bona fide P300-related application, and is a true and accurate copy of the code to be conveyed to third parties. Mindfire shall conduct, implement, and report upon this verification in a manner to be determined by Mindfire following input from both parties.**

23. Plaintiff's November 17 Affirmation," ECF # 97 did not dispute that all of the above requirements were met by the wording proposed in Dr. Farwell's Letter in Response to Order of Nov. 14, 2022, except for the phrase referenced in item 17 (c) [2]. Plaintiff maintains that Dr. Farwell's Letter in Response to Order of Nov. 14, 2022

fails to provide a "mechanism by which the independent third-party evaluator can confirm that the code submitted by Defendant Farwell is <u>a bona fide version of his code.</u>" Plaintiff accepts an affidavit from Dr. Farwell as such a "mechanism." However, Plaintiff disputes the wording in Dr. Farwell's Letter in Response to Order of Nov. 14, 2022 specifying exactly what wording said Affidavit must contain.

24. In summary, the remaining issue under contention is whether the wording of the SOW Paragraph proposed Dr. Farwell's Letter in Response to Order of Nov. 14, 2022 for the affidavit to be provided by Dr. Farwell provides a "mechanism by which the independent third-party evaluator can confirm that the code submitted by Defendant Farwell [i.e., Dr Farwell's Software to Be Tested] is <u>a bona fide version of his code,</u>" Note that there are two phases of said confirmation: A sworn affidavit from Dr. Farwell, and an independent determination that by Mindfire that Dr. Farwell's sworn statement is truthful. The requirement that the "the code submitted is able to be compiled into executable form and is verified as a bona fide P300-related application" is to be independently and objectively verified by Mindfire, not only by Dr. Farwell's sworn statement.

25. The primary purpose of this Affidavit is to provide this Court with a sworn statement from myself, Defendant Dr. Lawrence A. Farwell, that comprises the truth regarding Dr. Farwell's Code to Be Tested.

26. As delineated above, Dr. Farwell's Code to Be Tested was submitted to Mindfire on or about March 7, 2022, along with a fully executed contract for said testing, and conflict has arisen regarding the wording of the contract under which Mindfire will conduct testing of Dr. Farwell's Code to Be Tested.

27. The wording of this Affidavit is in accord with the proposed wording of the SOW Paragraph in Dr. Farwell's Letter in Response to Order of Nov. 14, 2022" (ECF #96), which in turn is the exact wording demanded by Plaintiff in the several documents cited above.

28. Regarding Dr. Farwell's Code to Be Tested, I, Defendant Dr. Lawrence A. Farwell, declare under penalty of perjury the following:

   a. **Dr. Farwell's Code to Be Tested, comprising "the code submitted to Mindfire" [by Dr. Farwell], represents a bona fide representation of**

  **code to be demonstrated, sold or transferred by Defendant(s);**

 b. **Dr. Farwell's Code to Be Tested, comprising "the code submitted to Mindfire" [by Dr. Farwell], is able to be compiled into executable form;**

 c. **Dr. Farwell's Code to Be Tested, comprising "the code submitted to Mindfire" [by Dr. Farwell], is a bona fide P300-related application;**

 d. **Dr. Farwell's Code to Be Tested, comprising "the code submitted to Mindfire" [by Dr. Farwell], is a true and accurate copy of the code to be conveyed to third parties.**

 e. **Dr. Farwell's Code to Be Tested, comprising "the code submitted to Mindfire" [by Dr. Farwell], has never, to my knowledge, been conveyed to, possessed by, or used by the Clinical Legal Studies Department at University of Canterbury, New Zealand and the Forensic Science Laboratory for the Government of Delhi. I have not conveyed Dr. Farwell's Code to Be Tested to any of the above.**

 f. **I, Dr. Lawrence A. Farwell, have conveyed "bona fide copies of Dr. Farwell's code" to dozens if not hundreds of parties in the past, ever since I invented Brain Fingerprinting in the 1980s. Said "bona fide copies of Dr. Farwell's code" comprise many different software programs. In pursuit of my profession as a forensic neuroscientist, I plan to convey many more "bona fide copies of Dr. Farwell's code," comprising many different software programs -- some of which may be similar to Dr. Farwell's Code to Be Tested and some not -- to many more third parties in the future. This is one of my major professional responsibilities as a neuroscientist.**

29. I have complied with the Preliminary Injunction throughout this case. I shall continue to comply with the Preliminary Injunction and other future court orders, in all actions I undertake in the future. Plaintiff's 11/17/2022 Affirmation (ECF #97) contains many demonstrably false statements and baseless accusations regarding said compliance. Most of these have been refuted in previous documents. Others will be refuted in future documents. However, it is not necessary to identify all of the false statements

in said document in order to conclude that the Order it proposes is unfair, unnecessary, unreasonable, unjust, inequitable, and without foundation in fact or law, as delineated below.

30. Plaintiff's Attorney's November 14 Affirmation proposed the following wording for the SOW Paragraph defining the parameters and requirements for Mindfire's testing of Dr. Farwell's Code to Be Tested.

> **Dr. Farwell shall submit affidavits confirming that code submitted to Mindfire includes true and accurate copies of code he submitted to the Clinical Legal Studies Department at University of Canterbury, New Zealand and the Forensic Science Laboratory for the Government of Delhi, India and any other third parties to whom Dr. Farwell intends to convey code. Prior to conducting the code comparison, Mindfire will conduct a preliminary review of the code submitted by Dr. Farwell. The purpose of this review is to ensure that the code submitted represents a true and accurate copies of code conveyed, or to be conveyed, by Dr. Farwell to the above referenced and/or other third parties. Mindfire shall conduct, implement and report upon this verification in a manner to be determined by Mindfire following input from both parties.**

31. Said proposed wording contains two obvious "poison pills" that render it unfair, unnecessary, unreasonable, unjust, inequitable, and without foundation in fact or law, as follows.

32. The first poison pill is as follows. I, Defendant Dr. Farwell. have stated, under oath in this Affidavit, in ¶ 28 (e) above, that neither I nor anyone else, to my knowledge, has conveyed Dr. Farwell's Code to Be Tested, comprising "the code submitted to Mindfire" [by Dr. Farwell], Said statement is truthful. If the Plaintiff were to succeed in tricking this Court into issuing an Order containing the proposed wording of the proposed wording above, this Court would order me to state the exact opposite in a sworn statement. I would then have the choice of refusing to obey the Order of the Court, or committing perjury.

33. As a pro se litigant, I am not yet familiar with the laws that must specify that a court cannot order an individual to commit perjury or any other crime. However, such law must exist. If the law says that it would be legal for this Court to order me to commit perjury, then, in the words of Charles Dickens, "If the law supposes that…the law is a

9

ass—a idiot." [2]

34. On a practical level, if the Plaintiff succeeds in tricking this Court to issue such an order, there is no way that I can comply. To do so would be to commit perjury, and to provide the Court with irrefutable evidence that I had done so. I have sworn one thing in this Affidavit. Plaintiff seeks to have this Court issue an order requiring me to say the exact opposite. In this case, inevitably no contract will be executed, and the required testing will not take place.

35. Moreover, Mindfire is a sophisticated company with deep and broad understanding of both technology and law. It is extremely unlikely that Mindfire would agree to sign a contract with such an obvious poison pill embedded in it.

36. The second "poison pill" is as follows. As stated under oath in in ¶ 28 (e), throughout my lifetime career as a neuroscientist, I have conveyed many software programs comprising "bona fide copies of Dr. Farwell's code" to third parties. These comprise many different software programs, some of which are not at all similar to – and certainly not identical to – Dr. Farwell's Code to Be Tested, comprising "the code submitted to Mindfire." In continuing to practice my profession as a neuroscientist, I intend to continue to do so. I must continue to do so in order to practice my profession. If the judge were to issue an order as per the wording suggested by Plaintiff's Attorney's November 14 Affirmation, I would be prevented from practicing my profession, except to convey code identical to Dr. Farwell's Code to Be Tested, comprising "the code submitted to Mindfire."

37. Plaintiff's Attorney's November 14 Affirmation attempts unsuccessfully to establish an equivalence between three things that are fundamentally different:
    a. Dr. Farwell's Code to Be Tested, comprising "the code submitted to Mindfire."
    b. Previous code that has been conveyed to third parties that comprises "bona fide copies of Dr. Farwell's code"; and
    c. Code that Dr. Farwell will convey in the future to third parties.

38. There is nothing whatsoever in either the letter or the intent of the Preliminary Injunction that I, Defendant Dr. Farwell, should be prohibited from practicing my

---

[2] Charles Dickens, *Oliver Twist,* chapter 51, p. 489 (1970).

10

profession as a neuroscientist by providing software to my clients. Requiring me to sign an affidavit that I will restrict all of my future activity to providing clients with one particular set of code – Dr. Farwell's Code to Be Tested – in all future interactions would effectively end my career as a neuroscientist. This, is what Plaintiff's proposed is transparently attempting to do. This provision is not only unfair and unreasonable, it is totally contradictory to the established facts, to which I have sworn herein.

39. There is nothing whatsoever in either the letter or the intent of the Preliminary Injunction that I, Defendant Dr. Farwell, should be required to execute a sworn affidavit stating that Dr. Farwell's Code to Be Tested is identical to any of the multitude of programs constituting "bona fide versions of Dr. Farwell's code" that have been conveyed to third parties in the past. This provision is not only unfair and unreasonable, it is totally contradictory to the established facts, to which I have sworn herein.

40. By refusing to abide by the Preliminary Injunction, and repeatedly making demands that are entirely impossible for me, Defendant Dr. Farwell, to follow, Plaintiff has succeeded in preventing me from practicing my career as a neuroscientist for quite some time. If this Court were to issue the Order proposed in Plaintiff's Attorney's November 14 Affirmation, this would continue indefinitely. In the meantime, the required testing would certainly not take place.

41. Once again, Mindfire is a sophisticated company, and it is inconceivable that they would agree to sign a testing contract containing this additional poison pill, a contract regarding which they would be knowledgeable enough to realize would never result in any actual testing taking place or in any payments to their company.

42. The wording proposed in Dr. Farwell's Letter in Response to Order of Nov. 14, 2022 fully addresses all of the concerns raised by Plaintiff in their previous and current writings. It accomplishes this by using Plaintiff's exact wording regarding its demands for the necessary conditions for testing Dr. Farwell's Code to Be Tested as per the Preliminary Injunction.

43. If this Court issues an Order in accordance with the wording proposed in Dr. Farwell's Letter in Response to Order of Nov. 14, 2022 , the testing of Dr. Farwell's

11

Code to Be Tested will commence immediately.

44. If this Court issues an order in accordance with the wording proposed in Plaintiff's Attorney's November 14 Affirmation, it will be unfair, unnecessary, unreasonable, unjust, inequitable, and without foundation in fact or law – and, frankly, impossible – for either me, Defendant Dr. Farwell, or Mindfire to sign the contract containing such wording. In such an event, the testing will not take place, and such an order will undoubtedly not stand.

45. After a series of exchanges, Plaintiff Brainwave Science, Inc. (BWS) and Dr. Farwell have agreed on the wording of a triparte Litigation Support and Consulting Services agreement for said software evaluation, except for the wording of the second (middle) paragraph of the Scope of Work section (the "SOW Paragraph), which remains in dispute. Said agreement constitutes an agreement between Mindfire Technologies, BWS, and Dr. Farwell (ECF #59, Exhibit I – A, the "Agreed-Upon Triparte Contract").

46. I have prepared an agreement identical to the Agreed-Upon Triparte Contract, plus the version of the SOW Paragraph proposed in my Letter of November 16, 2022 (ECF #96) for testing of Dr. Farwell's Code to Be Tested (i.e., the code that I provided to Mindfire on or about March 7, 2022 in conjunction with the original fully executed Litigation Support and Consulting Agreement between Mindfire and myself). Said agreement is hereinafter referred to as the "Proposed Compromise Agreement." This is the proposed agreement specified in Dr. Farwell's Letter in Response to Order of Nov. 14, 2022 (ECF #96). Mindfire will begin the agreed-upon evaluation upon receipt of this agreement executed by myself, Defendant Dr. Lawrence A. Farwell, Brainwave Science, Inc., and Mindfire, along with the agreed-upon retainer from BWS.

47. I respectfully request that this Court direct Plaintiff and Defendant Dr. Farwell to execute the Proposed Compromise Agreement, and further direct Plaintiff to pay for the retainer specified therein (and previously agreed by all parties) immediately upon Mindfire's execution of said document. I will then submit the Proposed Compromise Agreement to Mindfire for their signature. Mindfire will begin the agreed-upon

        evaluation upon receipt of this agreement executed by myself, Defendant Dr. Lawrence A. Farwell, Brainwave Science, Inc., and Mindfire, along with the agreed-upon retainer from BWS.

[Signature page immediately follows.]

Dated: Kingston, WA
November 21, 2022

*Lawrence A. Farwell*

Dr. Lawrence A. Farwell


Sworn to before me this 21<u>st</u> day of November, 2022

State of <u>Washington</u>
County of <u>Kitsap</u>

On this, the_____day of November, 2021, before me, a notary public, the undersigned officer, personally appeared <u>Lawrence A. Farwell</u>, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

In witness hereof, I hereunto set my hand and official seal.

_____
Notary Public

14