**FILED**
**in the Clerk's Office**
**U.S. District Court, EDNY**
**NOv. 21, 2022 @ 2:56 AM**
**Brooklyn**
**Pro Se Office via Box.com**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

BRAINWAVE SCIENCE, INC.

    Plaintiff

                                                  Third Letter from Defendant
                                                  Dr. Lawrence A. Farwell to
                                                  Magistrate Judge Roanne L. Mann in
                                                  Response to Order of Nov. 14, 2022
                                                  and Second Response to Plaintiff's
                                                  Affidavit of Nov. 17, 2022

                   - against -

                                                  Civil Action No.: 21-cv-4402 (BMC-RLM)

ARSHEE, INC., DR. LAWRENCE A.
FARWELL, DR. THIERRY MAISON and
BRAIN FINGERPRINTING FOUNDATION

                          Defendants.

----------------------------------------------------------- X

1

Dear Judge Mann:

1. I, Dr. Lawrence A. Farwell[1], am a Defendant in this case.

2. On December 13, 2021, Judge Cogan issued a Preliminary Injunction that stated as follows:

    1. Defendants must take any and all commercially-practicable actions to recall or replace any software containing plaintiff's "confidential or proprietary information" from third parties;

    2. Defendants must not sell or transfer plaintiff's "confidential or proprietary information;"

    3. Defendants must not use plaintiff's "confidential or proprietary information" in any software update or product demonstration; and,

    4. Defendants must provide to plaintiff, at plaintiff's sole expense, a report from an independent third party confirming that any P300-related software demonstration, sale, update, or transfer by defendants does not include plaintiff's "confidential or proprietary information."

    For the purposes of this preliminary injunction, "confidential or proprietary information" is defined as any portion of the program plaintiff originally submitted to Codequiry as its code.

3. On October 31, 2022 Judge Mann filed the following order: "By November 7, 2022, the parties must file a joint status report regarding whether they have complied with Judge Cogan's December 13, 2021 Order that: "Defendants must provide to plaintiff, at plaintiff's sole expense, a report from an independent third party confirming that any P300-related software demonstration, sale, update, or transfer by defendants does not include plaintiff's 'confidential or proprietary information.'" In the event that the parties have not completed the comparison testing as ordered, they must explain why they have failed to do so. Ordered by Magistrate Judge Roanne L. Mann on 10/31/2022. (JP)."

4. On November 7, 2022 Plaintiff filed a status report (ECF #93) and Defendant Dr. Farwell filed a status report (ECF #94).

---

[1] For the sake of clarity, I shall sometimes herein refer to myself in the third person.

5. On November 8, 2022 Judge Mann filed the following Order to Show Cause: "Docket Text: ORDER TO SHOW CAUSE re [93] Status Report filed by Brainwave Science, Inc., [94] Status Report filed by Lawrence A. Farwell. On October 31, 2022, this Court directed the parties to file a joint status report regarding their compliance with Judge Cogan's December 13, 2021 Order directing the parties to undertake certain comparative testing of their respective P300-related software. Instead of submitting a joint report as requested, plaintiff and defendant Farwell each responded separately that the other side was to blame for the parties' failure to execute an agreement with a third-party expert to conduct the comparison testing. See DE #93, DE #94. Defendant Farwell has submitted a proposed agreement with Mindfire Technology (DE #59 at ECF pp. 16-24; DE #94-1) that appears to satisfy the concerns expressed by plaintiff that plaintiff be made a party to the agreement and that the third-party expert conduct a preliminary review of the code submitted by defendant Farwell to confirm that it "represents a functional code." By November 14, 2022, plaintiff must show cause why it should not be directed to execute the agreement proffered by defendant Farwell (DE #59 at ECF pp. 16-24; DE #94-1) so that the comparative testing, which Judge Cogan ordered almost one year ago, can be completed. Ordered by Magistrate Judge Roanne L. Mann on 11/8/2022. (JP)"

6. On November 14, 2022, this Court issued the following Order: "SCHEDULING ORDER re [95] Affidavit filed by Brainwave Science, Inc. By Order dated November 8, 2022, this Court directed plaintiff to show cause why it should not be directed to execute the agreement proffered by defendant Farwell for comparative testing of the parties' respective P300-related software. In response, plaintiff proposed an alternative to the "Scope of Work" provision drafted by defendant Farwell, which appears to be a reasonable compromise between the parties' positions. By November 17, 2022, defendant Farwell must respond to plaintiff's alternate proposal (DE #95-1). Ordered by Magistrate Judge Roanne L. Mann on 11/14/2022."

7. On November 14, 2022 Plaintiff filed Plaintiff's Attorney's Affirmation in Response to Order to Show Cause of November 14, 2022 (ECF #95"Plaintiff's Attorney's November 14 Affirmation").

8. On November 16, 2022 Defendant Dr. Farwell filed "Dr. Farwell's Letter in Response to Order of Nov. 14, 2022" (ECF #96).

9. On November 17, 2022 Plaintiff filed an Affirmation in response to Dr. Farwell's Letter in Response to Order of Nov. 14, 2022 ("Plaintiff's November 17 Affirmation," ECF # 97).

10. Plaintiff's November 17, 2022 Affirmation contained several demonstrably and unequivocally false statements of fact, including several statements that Plaintiff had made previously and that had already been proven to be false by Plaintiff's own documents submitted in this case; contained several spurious arguments; and presented a position that is unfair and unreasonable and, if accepted by this Court, would have allowed Plaintiff to trick this Court into creating an unworkable situation wherein the software testing at issue per the Preliminary Injunction would not take place.

11. This letter comprises my Third Letter Response to the November 14 Order, and my Second Letter Response to Plaintiff's November 17, 2022 Affirmation. My Second Letter Response to the November 14 Order, comprising my First Response of November 20, 2022, simply requested time, until November 25, 2022, to prepare a response. I am filing this incomplete response in case the Court does not immediately issue an Order as requested below and also does not allow me the necessary time to prepare a full response.

12. This response corrects the record on said false statements in Plaintiff's November 17, 2022 Affirmation, documents said correction, replies to Plaintiff's spurious arguments, and documents the current status of progress in implementing a contract to conduct for software evaluation as per the Preliminary Injunction in this lawsuit (as referenced below).

13. Defendant Dr. Lawrence Farwell has been carrying out his responsibilities and practicing his career as a forensic neuroscientist and the inventor and world's leading expert on Brain Fingerprinting since the 1980s, more than 25 years before Plaintiff Brainwave Science, Inc.'s ("BWS") CEO , Krishna Ika initially heard of Dr. Farwell's invention of Brain Fingerprinting and BWS Inc.'s predecessor Brainwave Science, LLC was founded in 2012.

14. Many of Dr. Farwell's scientific studies and scientific publications have involved a brain response known as the P300. The P300 is a brain response that is used in Dr. Farwell's invention of Brain Fingerprinting. It is used in many other related and unrelated applications,

including the software used by Plaintiff Brainwave Science, Inc. that is involved in the current lawsuit. The P300 was discovered in the 1960s and has been featured in thousands of scientific studies. Dr. Farwell's first paper on the P300 in 1988 alone has been cited over 3,000 times in the scientific literature.

15. Dr. Farwell invented Brain Fingerprinting in 1985 and patented it in 1994, 1995, and 2010. Since the 1990s Dr. Farwell has provided "<u>bona fide versions of his code</u>" to dozens if not hundreds of individuals, agencies, and institutions, including the CIA, the FBI, the US Navy, the University of Illinois, Harvard University (where he graduated and was later a research associate), the University of Michigan, and many government and public-sector agencies around the world. These comprise many different software programs, some very similar to one another, and some highly differentiated. "<u>Bona fide versions of Dr. Farwell's code</u>" is a broad category that includes many different software programs.

16. In order for Defendant Dr. Farwell to carry out his responsibilities and practice his profession as a neuroscientist, it is necessary to for him to demonstrate, update, and transfer software implementing Dr. Farwell's invention of Brain Fingerprinting and other software involving the P300.

17. The Preliminary Injunction allowed for this by stating that any P300-related software that Dr. Farwell subsequently applied in a demonstration, sale, update, or transfer must not include Plaintiff's "confidential proprietary information."

18. Dr. Farwell developed a software program that, in his opinion, does not include Plaintiff's "confidential proprietary information." On or about March 7, 2022, Dr. Farwell executed an agreement with Mindfire Technologies ("Mindfire") to analyze said program, hereinafter referred to as "Dr. Farwell's Code to be Tested." Said agreement (hereinafter the "Executed Dr. Farwell-Mindfire Contract," Exhibit A in ECF #96) was fully executed, signed by Dr. Farwell and Mindfire.

19. On or about March 7, 2022, along with the Executed Dr. Farwell-Mindfire Contract, Dr. Farwell submitted his code to be tested (Dr. Farwell's Code to Be Tested) to Mindfire Technologies, as required by the Preliminary Injunction, prior to engaging in any demonstrations, sale, update, or transfer of the same. Although they have not yet begun testing, Mindfire still has Dr. Farwell's Code to be Tested.

20. Dr. Farwell then informed Plaintiff of said fully executed contract and further informed BWS that Dr. Farwell had delivered to Mindfire of Dr. Farwell's Code to be Tested as per the Preliminary Injunction, and notified Plaintiff BWS Inc. of BWS' obligation under the Preliminary Injunction to submit BWS' software to Mindfire for testing and to pay for the test.

21. BWS Inc. refused to comply with the requirement of the Preliminary Injunction to submit their software for testing and to pay for said testing, in direct violation of the Preliminary Injunction.

22. BWS' attorney Paul Tomkins wrote an alternative proposed contract (the "BWS Unexecuted Proposed Contract," ECF 93-1) that contained two obvious "poison pills" that made it impossible for Dr. Farwell or Mindfire to sign. In addition to the report required by the order of the Court, the BWS Unexecuted Proposed Contract added an additional report to be delivered by the evaluator to the Plaintiff that comprised the transfer of Defendant Farwell's intellectual property to Plaintiff by the evaluator providing to the Plaintiff specific details of Defendant Dr. Farwell's new software (i.e., Dr. Farwell's Code to be Tested), including, among other things, screen shots.

23. Moreover, the BWS Unexecuted Proposed Contract usurped the responsibility of the independent evaluator to determine whether or not the software to be tested contained Plaintiff's "proprietary information," and transferred that power to Plaintiff BWS instead, stating "If ***our [Plaintiff BWS'] staff*** finds any portion of the code provided by Defendant(s) to contain any significant portion(s) of the code submitted by Brainwave, our office will suspend its comparison and provide a report on same." (ECF #93-1 at Page 5).

24. The two abovementioned provisions were obvious "poison pills" designed to ensure that Dr. Farwell could not sign the contract, and thus the testing would not take place, and BWS would use this Court as a tool to prevent Dr. Farwell from practicing his profession.

25. Mindfire refused to sign the BWS Unexecuted Proposed Contract. This is a reasonable decision. No legitimate, competent, and honest evaluator would sign such a contract – one which was in clear and obvious violation of the Preliminary Injunction.

26. Plaintiff's Attorney lied to this Court about the BWS Unexecuted Proposed Contract, falsely stating that it was a fully executed contract by BWS and Mindfire, when in fact Mindfire refused to sign it.  Note that in ECF #93-1 only BWS' signature appears, and Mindfire did not sign.

27. On November 8, 2022 Judge Mann filed the following Order to Show Cause: "Docket Text: ORDER TO SHOW CAUSE re [93] Status Report filed by Brainwave Science, Inc., [94] Status Report filed by Lawrence A. Farwell. On October 31, 2022, this Court directed the parties to file a joint status report regarding their compliance with Judge Cogan's December 13, 2021 Order directing the parties to undertake certain comparative testing of their respective P300-related software. Instead of submitting a joint report as requested, plaintiff and defendant Farwell each responded separately that the other side was to blame for the parties' failure to execute an agreement with a third-party expert to conduct the comparison testing. See DE #93, DE #94. Defendant Farwell has submitted a proposed agreement with Mindfire Technology (DE #59 at ECF pp. 16-24; DE #94-1) that appears to satisfy the concerns expressed by plaintiff that plaintiff be made a party to the agreement and that the third-party expert conduct a preliminary review of the code submitted by defendant Farwell to confirm that it "represents a functional code." By November 14, 2022, plaintiff must show cause why it should not be directed to execute the agreement proffered by defendant Farwell (DE #59 at ECF pp. 16-24; DE #94-1) so that the comparative testing, which Judge Cogan ordered almost one year ago, can be completed. Ordered by Magistrate Judge Roanne L. Mann on 11/8/2022. (JP)"

28. On November 14, 2022 Plaintiff filed Plaintiff's Attorney's Affirmation in Response to Order to Show Cause of November 14, 2022 (ECF #95 "Plaintiff's Attorney's November 14 Affirmation").

29. On November 14, 2022, this Court issued the following Order: "SCHEDULING ORDER re [95] Affidavit filed by Brainwave Science, Inc. By Order dated November 8, 2022, this Court directed plaintiff to show cause why it should not be directed to execute the agreement proffered by defendant Farwell for comparative testing of the parties' respective P300-related software. In response, plaintiff proposed an alternative to the "Scope of Work" provision drafted by defendant Farwell, which appears to be a reasonable compromise between the

7

parties' positions. By November 17, 2022, defendant Farwell must respond to plaintiff's alternate proposal (DE #95-1). Ordered by Magistrate Judge Roanne L. Mann on 11/14/2022."

30. On November 14, 2022 Plaintiff filed Plaintiff's Attorney's Affirmation in Response to Order to Show Cause of November 14, 2022 (ECF #95"Plaintiff's Attorney's November 14 Affirmation").

31. On November 14, 2022, this Court issued the following Order: "SCHEDULING ORDER re [95] Affidavit filed by Brainwave Science, Inc. By Order dated November 8, 2022, this Court directed plaintiff to show cause why it should not be directed to execute the agreement proffered by defendant Farwell for comparative testing of the parties' respective P300-related software. In response, plaintiff proposed an alternative to the "Scope of Work" provision drafted by defendant Farwell, which appears to be a reasonable compromise between the parties' positions. By November 17, 2022, defendant Farwell must respond to plaintiff's alternate proposal (DE #95-1). Ordered by Magistrate Judge Roanne L. Mann on 11/14/2022."

32. On November 16, 2022 Defendant Dr. Farwell filed "Dr. Farwell's Letter in Response to Order of Nov. 14, 2022" (ECF #96).

33. On November 17, 2022 Plaintiff filed an Affirmation in response to Dr. Farwell's Letter in Response to Order of Nov. 14, 2022 ("Plaintiff's November 17 Affirmation," ECF # 97).

34. After a series of exchanges, Plaintiff Brainwave Science, Inc. (BWS) and Dr. Farwell have agreed on the wording of a triparte Litigation Support and Consulting Services agreement for said software evaluation, except for the wording of the second (middle) paragraph of the Scope of Work section (the "SOW Paragraph), which remains in dispute. Said agreement constitutes an agreement between Mindfire Technologies, BWS, and Dr. Farwell (ECF #59, Exhibit I – A, the "Agreed-Upon Triparte Contract").

35. I have prepared an agreement identical to the Agreed-Upon Triparte Contract, plus the version of the SOW Paragraph proposed in my Letter of November 16, 2022 (ECF #96) for testing of Dr. Farwell's Code to Be Tested; i.e., the code that I provided to Mindfire on or about March 7, 2022 in conjunction with the original fully executed Litigation Support and

Consulting Agreement between Mindfire and myself. Said agreement is hereinafter referred to as the "Proposed Compromise Agreement." This is the proposed agreement specified in Dr. Farwell's Letter in Response to Order of Nov. 14, 2022 (ECF #96). Mindfire will begin the agreed-upon evaluation upon receipt of this agreement executed by myself, Defendant Dr. Lawrence A. Farwell, Brainwave Science, Inc., and Mindfire, along with the agreed-upon retainer from BWS.

36. I respectfully request that this Court direct Plaintiff and Defendant Dr. Farwell to execute the Proposed Compromise Agreement, and further direct Plaintiff to pay for the retainer specified therein (and previously agreed by all parties) immediately upon Mindfire's execution of said document. I will then submit the Proposed Compromise Agreement to Mindfire for their signature. Mindfire will begin the agreed-upon evaluation upon receipt of this agreement executed by myself, Defendant Dr. Lawrence A. Farwell, Brainwave Science, Inc., and Mindfire, along with the agreed-upon retainer from BWS.

37. I, Defendant Dr. Lawrence A. Farwell, have also executed an Affidavit, to be submitted today, that truthfully represents the facts regarding the testing of Dr. Farwell's Code to Be Tested.

38. Further details are contained in my Affidavit to be submitted today.

39. Plaintiff's Attorney's November 17 Affirmation did not address the relevant facts and arguments regarding the testing of Dr. Farwell's Code to Be Tested. This is further explained in my Affidavit to be submitted today.

40. Instead, Plaintiff's attorney leveled various spurious and false accusations against Dr. Farwell regarding compliance with the Preliminary Injunction. All of said accusations have been amply proven to be false and without basis in fact or law in previous documents. Examples follow.

41. Regarding Plaintiff's false accusations that Dr. Farwell stole a Farwell Brain Fingerprinting System, comprising hardware and software and specifically containing a particular electroencephalograph (EEG) headset, were previously proven false in the following documents previously submitted to this Court. The following is from Defendant Dr.

Farwell's Affirmation in Response to Order to Show Cause of August 22, 2022 (ECF #80, exhibit AAA, P. 30 – 32 of Exhibit, P. 80 – 82 of main document, ¶ 3.91 – 3.105).

> *3.90   On or about May 14, 2019 Tomkins falsely and fraudulently libeled Dr. Farwell  in communications to Dr. Farwell's client FSL.  Tomkins falsely accused Dr. Farwell of fraud, theft, sabotage, lying, dishonesty, bad faith, duplicity, unethical business practices, and other illicit and undesirable actions.*
>
> *3.91   On or about May 14, 2019 Tomkins wrote and caused to be delivered a letter ("Tomkins' Libelous Letter," Exhibit AU) to Dr. Farwell's client FSL.*
>
> *3.92   Tomkins' Libelous Letter falsely, fraudulently, and libelously claimed that Dr. Farwell had stolen hardware comprising Ika Parties' Counterfeit Product from Defendant Brainwave Science, Inc.*
>
> *3.93   Tomkins' Libelous Letter falsely, fraudulently, and libelously claimed that Dr. Farwell had sold to Dr. Farwell's client FSL said allegedly stolen hardware (comprising an EEG headset, as described in documents accompanying Tomkins' Libelous Letter).  It would be ludicrous for Dr. Farwell -- the inventor and developer of the genuine Brain Fingerprinting, who had been applying and selling his genuine Brain Fingerprinting system for decades before Ika Parties BWS LLC and BWS Inc existed -- would steal and attempt to sell a counterfeit system such as Ika Parties' Counterfeit Product. Moreover, such an accusation must be false for the following reason.  The headset that Dr. Farwell and his affiliated company Brain Fingerprinting, LLC sold to FSL (as part of the Farwell Brain Fingerprinting system purchased by FSL) was a custom headset ("Dr. Farwell's Custom Headset") designed by Dr. Farwell and custom manufactured in the USA. Based upon information and belief, Ika Parties Ika, BWS LLC, and BWS Inc. only use and only have ever possessed entirely different headsets manufactured in Taiwan, and all of their software works only with said Taiwanese headsets and not with Dr. Farwell's Custom Headset.  On information and belief, no one other than Dr. Farwell and his affiliated companies, Brain Fingerprinting, LLC and Brain Fingerprinting Laboratories, Inc., possesses Dr. Farwell's Custom Headset or any instantiation thereof. Ika Parties have never possessed any instantiation of Farwell's Custom Headset – the headset that Dr. Farwell sold to FSL. Consequently, any allegation that Dr. Farwell stole from Ika Parties the Farwell's Custom Headset that he sold to FSL (or anyone else) must be false, fraudulent, and libelous or slanderous.*
>
> *3.94   Tomkins' allegation that Dr. Farwell stole a headset from Ika Parties Ika and Brainwave Science Inc. is false and libelous with regard to the false accusation of theft.*
>
> *3.95   The allegation or implication in Tomkins' Libelous Letter that Dr. Farwell stole and then sold a headset from Ika Parties Ika and Brainwave Science Inc. is additionally*

*false and libelous with regard to the false accusation that Dr. Farwell sold stolen goods.*

*3.96  Tomkins' allegation or implication in Tomkins' Libelous Letter that Dr. Farwell sold Ika Parties' Counterfeit Product to FSL is additionally false and libelous in that such a sale would never be undertaken by Dr. Farwell or any other legitimate forensic scientist with expertise in Brain Fingerprinting. In falsely alleging that Dr. Farwell sold Ika Parties' Counterfeit Product, Tomkins implies that in the course such sale Dr. Farwell must have misrepresented that Ika Parties' Counterfeit Product had value and was worth buying – which it does not and is not, and that Ika Parties' Counterfeit Product had his endorsement or was represented by him – which it does not and is not. Such representations or implications are damaging to Dr. Farwell's reputation, stature, and professional success as a forensic scientist and expert in genuine Brain Fingerprinting. No legitimate forensic scientist with expertise in Brain Fingerprinting would make such misrepresentations regarding Ika Parties' Counterfeit Product or any other product that fails to meet the Brian Fingerprinting Scientific Standards.*

*3.97  Tomkins' Libelous Letter also threatened Dr. Farwell's client FSL with criminal prosecution for possession of stolen property, on the basis of having purchased the same from Dr. Farwell.*

*3.98   Tomkins' Libelous Letter falsely and libelously stated that Dr. Farwell is being investigated by the FBI.  No such investigation exists.  Ika spoke to an FBI agent in 2016 regarding the various disputes at the time.  No investigation ensued, and no investigation was taking place at the time of Tomkins' Libelous Letter.*

*3.99 Tomkins' Libelous Letter falsely stated that Brainwave Science, Inc. is actively and fully cooperating with a (non-existent) FBI investigation of Dr. Farwell. No such cooperation is taking place. No such investigation is taking place, and no such investigation or cooperation was taking place at the time of Tomkins' Libelous Letter.*

*3.100 In the context of security clearances, Dr. Farwell has been investigated by numerous national and international law enforcement, intelligence, counterterrorism, and military agencies around the world, beginning with the FBI and the CIA in the early 1990s.*

*3.101 Throughout the last quarter of a century, including over 20 years prior to the existence of Ika Parties BWS LLC and BWS Inc., Dr. Farwell has cooperated and collaborated with national and international law enforcement, intelligence, counterterrorism, and military agencies around the world, beginning with the FBI and the CIA in the early 1990s, and has provided said agencies with his professional*

11

> *expertise as a forensic neuroscientist as well as his invention of Brain Fingerprinting.*
>
> *3.102 Based upon knowledge and belief and as described below and documented in the exhibits hereto, Ika Parties Ika, Tomkins, BWS LLC, BWS Inc. and their employees have never collaborated with national and international law enforcement, intelligence, counterterrorism, or military agencies and provided said agencies with professional expertise in forensic neuroscience, because Ika Parties lack any training, certification, qualification, credentials, education, knowledge, or expertise in forensic neuroscience, and specifically in the forensic neuroscience of Brain Fingerprinting.*
>
> *3.103 Tomkins' Libelous Letter contained additional false, fabricated, and remarkably fanciful hearsay apparently designed to disparage and defame Dr. Farwell and his science and technology.*
>
> *3.104 Tomkins' actions, including but not limited to libeling Dr. Farwell and threatening Dr. Farwell's client FSL with criminal prosecution for doing business with Dr. Farwell, can only reasonably be understood as an attempt to interfere with Dr. Farwell's contract and business relationship with FSL and Dr. Farwell's other clients, to defame Dr. Farwell, and to disparage Dr. Farwell's science and technology, and to weaken or intimidate Dr. Farwell as a potential witness in future criminal prosecutions of Ika based on authorities having accused Ika of fraud in Pakistan, South Africa, Nigeria, and Thailand, as Dr. Farwell has testified as a witness in a previous fraud case against Ika, as described herein.*
>
> *3.105 In Dr. Farwell's professional opinion as the inventor of Brain Fingerprinting, the world's leading expert in the science of Brain Fingerprinting, and the most experienced expert in applying Brain Fingerprinting in criminal, counterterrorism, and counterintelligence cases with national law enforcement and national security agencies around the world, any misguided attempt by unqualified persons to apply counterfeit technology, such as Ika Parties' Counterfeit Product, which Ika Parties Ika, BWS LLC, and/or BWS Inc are attempting to market, in real criminal or counterterrorism cases would be a serious threat to national security and justice. Other experts agree with this opinion, as documented below, and no known Brain Fingerprinting expert disagrees with this assessment.*

42. Once it had been amply proven that BWS' accusations against Dr. Farwell -- that Dr. Farwell stole a brainwave system from BWS and sold it to FSL Delhi – were demonstrably false, BWS ceased repeating said accusations. Until now, BWS has not repeated these accusations since Dr. Farwell filed the above cited ECF #80.

43. Now, apparently, in Plaintiff's Affirmation of November 17, Plaintiff's attorney is attempting to disinter said accusations of malfeasance by Dr. Farwell in conjunction with Dr. Farwell's client FSL Delhi.  In any case, said accusations have no basis in fact or law.

44. Moreover, BWS' false and baseless accusations against Dr. Farwell not only have been thoroughly disproven, such accusations do not provide any rationale for BWS to attempt to have this Court issue an Order that, as is amply proven in the accompanying Affidavit, is unfair, unnecessary, unreasonable, unjust, inequitable, and without foundation in fact or law, regarding the terms under which Dr. Farwell's Code to Be Tested is evaluated by Mindfire.

45. Plaintiff's Attorney's Affirmation of November 17 also falsely accuses Dr. Farwell of "failing to recall" software.  Dr. Farwell has previously shown that this accusation is entirely without merit, in several previous documents.  One example follows, from Defendant Dr. Farwell's Affirmation in Response to Order to Show Cause of August 22, 2022 (ECF #80, P. 9). Note that the Preliminary Injunction stated, "Defendants must take any and all commercially-practicable actions to recall or replace any software containing plaintiff's 'confidential or proprietary information' from third parties;"

> *8. Regarding "commercially-practicable solutions," I have discussed the situation with my clients. To understand their reply, it is necessary to understand who my clients are. My clients are some of the top government agencies in the world in the field of counterterrorism and law enforcement and their close business associates. They have an extremely high level of technical sophistication, expertise in forensic neuroscience, and knowledge of the technology, the international players in the field, and the capabilities (or lack of same) and track record (or lack of same) of these players.*
>
> *All of my clients are well aware of Brainwave Science, Inc., independent of anything to do with me or this lawsuit. All of my clients know that Brainwave Science, Inc. ("BWS") and Krishna Ika currently stand accused of fraud by authorities in at least four countries, and that the specific fraud alleged comprises, among many other alleged offenses, Ika and BWS falsely representing themselves as experts in forensic neuroscience qualified to  effect a technology transfer of my brain fingerprinting invention to a government agency. This includes, for example, Mr. Ika allegedly faking demonstrations of his system by pretending to analyze brainwaves and in fact only displaying a pre-recorded graphics file purporting to represent brainwave analyses. All of my clients are aware that BWS has never sold its iCognative  system to any government agency, has never tested it in the scientific laboratory and published the results in peer-reviewed journals, and has never successfully applied their system in the laboratory or the field. In fact, my clients are some of the same people who have detected alleged attempted fraud by Ika and BWS and accused them of the same. In light of these facts, it is not surprising that my clients have responded to any discussion of "recall" of any software they have received from me as follows:*
>
> *a. They are not in possession of any software or hardware that contains anything that*

> *might be construed as proprietary to BWS. They have sufficient expertise to recognize the fact that any such claims by BWS are totally spurious.*
>
> *b. Even if they were in possession of such software or hardware, there is no way I can force them to remit it to me; that is, there is no way that I can force a "recall" of any software that they possess, whether it came originally from me or not, and whatever it contains.*
>
> *c. If I ever delivered to them any software or hardware that contained anything proprietary to BWS, they would reject it, because they know BWS has nothing proprietary that contributes in any way to the field of forensic neuroscience. They have sufficient scientific and technical expertise to know this definitively…*
>
> *9. The response of my clients eliminates the possibility of "commercially-practicable" "recall"…*

39. There are many other false and misleading statements in Plaintiff's Attorney's Affirmation of November 17 as well as in Plaintiff's Attorney's Affirmation in Response to Order to Show Cause of November 14, 2022. However, the most fundamental flaw in said document and also in is not the false and baseless accusations leveled by Plaintiff against Dr. Farwell. The most fundamental flaw in both of said agreements is that they contain provisions, which, if implemented by an Order of this Court, would order Dr. Farwell to execute a sworn affidavit that makes demonstrably false statements of fact, false statements that directly contradict the truthful sworn statements of fact contained in the Affidavit to be filed today. This is discussed in detail in the Affidavit to be filed today.

40. It is in consideration of the above, and in consideration of the facts and arguments contained in the Affidavit to be filed today, that I respectfully request this Court to issue an Order as specified above in ¶ 36.

[Signature page immediately follows.]

Sincerely,

*Lawrence A. Farwell*

Dr. Lawrence A. Farwell, Defendant
Date: November 16, 2022
Email: brainwave@larryfarwell.com
Website: https://farwellbrainfingerprinting.com
Phone: +1 206-905-1009
Mobile: +1 206-250-5516
Address: 28375 Sandy Beach Lane NE, PO Box 547, Kingston, WA 98346