**FILED
in the Clerk's Office
U.S. District Court,  EDNY
NOv. 21, 2022 @ 8:28 AM
Brooklyn
Pro Se Office via Box.com**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

BRAINWAVE SCIENCE, INC.

    Plaintiff

        Fourth Letter from Defendant Dr. Lawrence A. Farwell to Magistrate Judge Roanne L. Mann in Response to Order of Nov. 14, 2022 and Software Testing Agreement Signed by Dr. Farwell and Mindfire Technology.

- against -

Civil Action No.: 21-cv-4402 (BMC-RLM)

ARSHEE, INC., DR. LAWRENCE A. FARWELL, DR. THIERRY MAISON and BRAIN FINGERPRINTING FOUNDATION

        Defendants.

----------------------------------------------------------- X

1

Dear Judge Mann:

1. I, Dr. Lawrence A. Farwell, am a Defendant in the referenced case.

2. Earlier today, November 21, 2022, I, Defendant Dr. Lawrence A. Farwell, filed three documents, as follows:

    a. An Affidavit ("Dr. Farwell's November 21, 2022 Affidavit");

    b. A Second Letter in Response to this Court's Order of Nov. 14, 2022 and Plaintiffs Affidavit of Nov. 17, 2022 ("Dr. Farwell's November 21, 2022 Second Letter"; and

    c. A Third Letter in Response to this Court's Order of Nov. 14, 2022 and Plaintiffs Affidavit of Nov. 17, 2022 "(Dr. Farwell's November 21, 2022 Third Letter").

3. Said documents outlined the relevant procedural history, which will not be repeated in full here. Very briefly, said documents cited and were in response to the following:

4. On November 8, 2022 Judge Mann filed the following Order to Show Cause: "Docket Text: ORDER TO SHOW CAUSE re [93] Status Report filed by Brainwave Science, Inc., [94] Status Report filed by Lawrence A. Farwell. On October 31, 2022, this Court directed the parties to file a joint status report regarding their compliance with Judge Cogan's December 13, 2021 Order directing the parties to undertake certain comparative testing of their respective P300-related software. Instead of submitting a joint report as requested, plaintiff and defendant Farwell each responded separately that the other side was to blame for the parties' failure to execute an agreement with a third-party expert to conduct the comparison testing. See DE #93, DE #94. Defendant Farwell has submitted a proposed agreement with Mindfire Technology (DE #59 at ECF pp. 16-24; DE #94-1) that appears to satisfy the concerns expressed by plaintiff that plaintiff be made a party to the agreement and that the third-party expert conduct a preliminary review of the code submitted by defendant Farwell to confirm that it "represents a functional code." By November 14, 2022, plaintiff must show cause why it should not be directed to execute the agreement proffered by defendant Farwell (DE #59 at ECF pp. 16-24; DE #94-1) so that the comparative testing, which Judge Cogan ordered almost one year ago, can be completed. Ordered by Magistrate Judge Roanne L. Mann on 11/8/2022. (JP)"

5.

6. On November 14, 2022, this Court issued the following Order:

   SCHEDULING ORDER re [95] Affidavit filed by Brainwave Science, Inc. By Order dated November 8, 2022, this Court directed plaintiff to show cause why it should not be directed to execute the agreement proffered by defendant Farwell for comparative testing of the parties' respective P300-related software. In response, plaintiff proposed an alternative to the "Scope of Work" provision drafted by defendant Farwell, which appears to be a reasonable compromise between the parties' positions. By November 17, 2022, defendant Farwell must respond to plaintiff's alternate proposal (ECF #95-1). Ordered by Magistrate Judge Roanne L. Mann on 11/14/2022.

7. "Plaintiff's alternate proposal" (ECF #95) cited in said Order and the accompanying proposed wording for the Statement of Work in the proposed contract with Mindfire to conduct evaluation of Dr. Farwell's Code to Be Tested (ECF 95-1) shall be referred to herein as "Plaintiff's Attorney's November 14 Affirmation."

8. On November 16, 2022 Defendant Dr. Farwell filed "Dr. Farwell's Letter in Response to Order of Nov. 14, 2022" (ECF #96).

9. On November 17, 2022 Plaintiff filed an Affirmation in response to Dr. Farwell's Letter in Response to Order of Nov. 14, 2022 ("Plaintiff's November 17 Affirmation," ECF # 97).

10. After a series of exchanges, Plaintiff Brainwave Science, Inc. (BWS) and Dr. Farwell have agreed on the wording of a triparte Litigation Support and Consulting Services agreement for said software evaluation, except for the wording of the second (middle) paragraph of the Scope of Work section (the "SOW Paragraph), which remains in dispute. Said agreement constitutes an agreement between Mindfire Technologies, BWS, and Dr. Farwell (ECF #59, Exhibit I – A, the "Agreed-Upon Triparte Contract").

11. I have prepared an agreement identical to the Agreed-Upon Triparte Contract, plus the version of the SOW Paragraph proposed in my Letter of November 16, 2022 (ECF #96) for testing of Dr. Farwell's Code to Be Tested; i.e., the code that I provided to Mindfire on or about March 7, 2022 in conjunction with the original fully executed Litigation Support and Consulting Agreement between Mindfire and myself. Said agreement is hereinafter referred to as the "Proposed Compromise Agreement." This is the proposed agreement specified in

3

Dr. Farwell's Letter in Response to Order of Nov. 14, 2022 (ECF #96). Defendant and Plaintiff have already agreed to all terms therein, except for the wording of the second paragraph of the Statement of Work, for which there are two alternative proposals, one by Defendant and one by Plaintiff, as described above.

12. The Proposed Compromise Agreement requires Dr. Farwell to execute an Affidavit containing specific statements designed to ensure that Dr. Farwell's Code to Be Tested is a "bona fide version of Dr. Farwell's code," along with specific related statements designed to ensure that Dr. Farwell's Code to Be Tested is genuine.

13. Dr. Farwell's November 21, 2022 Affidavit is an Affidavit executed by myself. Said Affidavit

    a. Provides the sworn statements by Dr. Farwell that mandated by the Statement of Work in the Proposed Compromise Agreement;

    b. Documents the fact that the statements contained in the Proposed Compromise Agreement and in Dr. Farwell's November 21, 2022 Affidavit fully satisfy all of the concerns raised by Plaintiff regarding Dr. Farwell's Code to Be Tested and the contract with Mindfire for said testing.

    c. Documents the fact that the proposed wording in Plaintiff's Attorney's November 14 Affirmation (ECF 95-1) is unfair, unnecessary, unreasonable, unjust, inequitable, and without foundation in fact or law, regarding the terms under which Dr. Farwell's Code to Be Tested is evaluated by Mindfire.

    d. Documents the fact that the proposed wording in Plaintiff's Attorney's November 14 Affirmation (ECF 95-1) contains two "poison pills" that render it unworkable and ensure that a contract containing such wording will never be signed;

    e. Documents the fact that, if this Court were to issue an Order directing Defendant Dr. Farwell to execute an affidavit with the wording proposed in Plaintiff's Attorney's November 14 Affirmation (ECF 95-1), Dr. Farwell's execution of said Affidavit would require Dr. Farwell to commit perjury. This is because the statements to which Dr. Farwell would be required to swear are false and directly contradict Dr. Farwell's truthful sworn statements in Dr. Farwell's November 21, 2022 Affidavit.

    f. Documents the fact that Dr. Farwell could not abide by such an order without committing perjury.

    g. Documents the fact that neither Mindfire nor any other competent, knowledgeable, and honest evaluator would agree to execute a contract containing the wording proposed in Plaintiff's Attorney's November 14 Affirmation due to the fatal flaws specified above and documented in detail in Dr. Farwell's Affidavit of November 21, 2022.

14. Dr. Farwell's November 21, 2022 Second Letter requests additional time to respond to Plaintiff's November 17 Affirmation.

15. Dr. Farwell's November 21, 2022 Third Letter corrects some of the many misstatements of fact and spurious arguments in Plaintiff's November 17 Affirmation, replies to some of the false accusations of Dr. Farwell contained therein, and provides additional support for Dr. Farwell's arguments in Dr. Farwell's November 21 Affidavit summarized above in ¶ 13 a. – g.

16. Dr. Farwell's Affidavit of November 21, 2022, Dr. Farwell's November 21, 2022 Third Letter, and Dr. Farwell's Letter of November 16, 2022 (ECF #96) maintain that, although neither Mindfire nor any other competent, knowledgeable, and honest evaluator would agree to sign a contract containing the wording of Plaintiff's Attorney's November 14 Affirmation (ECF #95 and #95-1), Mindfire would undoubtedly be happy to execute a contract to test Dr. Farwell's Code to Be Tested containing the wording proposed in the Proposed Compromise Agreement.

17. Today, Dr. Farwell put the premise of ¶ 16 that Mindfire would be happy to sign the Proposed Compromise Agreement to an empirical test by sending the Proposed Compromise Agreement to Mindfire and requesting that Mindfire evaluate it and, if Mindfire found it to be appropriate and to accomplish the agreed-upon testing, to sign it.

18. Mindfire signed the Proposed Compromise Agreement today. Mindfire also added the required information regarding the rates for each potential resource. (This is a required part of the contract requested by Plaintiff that had been left blank in previous versions.)

19. Dr. Farwell also signed the Proposed Compromise Agreement. A copy signed by Dr. Farwell and Mindfire is attached hereto as Exhibit A.

20. Mindfire already has Dr. Farwell's Code to Be Tested. Dr. Farwell delivered it to Mindfire as described in Dr. Farwell's Affidavit.

21. Now, the only remaining action required for the testing of Dr. Farwell's Code to Be Tested is for Plaintiff to execute Proposed Compromise Agreement, deliver the BWS software to Mindfire, and make the necessary payments.

22. If Plaintiff signs the Proposed Compromise Agreement, delivers the BWS software to Mindfire, and makes the agreed-upon payment, testing by Mindfire will begin immediately.

23. If Plaintiff refuses to sign the Proposed Compromise Agreement, the testing mandated by the Preliminary Injunction will not take place, for the reasons documented in Dr. Farwell's Affidavit of November 21, 2022, Dr. Farwell's November 21, 2022 Third Letter, and Dr. Farwell's Letter of November 16, 2022 (ECF #96).

24. I respectfully request that this Court issue an Order directing Plaintiff to immediately execute the Proposed Compromise Agreement, and further direct Plaintiff to pay Mindfire the retainer specified therein (and previously agreed by all parties), and to deliver BWS' software to Mindfire.

[Signature page immediately follows.]

Sincerely,

*Lawrence A. Farwell*

Dr. Lawrence A. Farwell, Defendant

Date: November 21, 2022
Email: brainwave@larryfarwell.com
Website: https://farwellbrainfingerprinting.com
Phone: +1 206-905-1009
Mobile: +1 206-250-5516
Address: 28375 Sandy Beach Lane NE
PO Box 547
Kingston, WA 98346

Exhibit A

Litigation Support and Consulting Services Agreement

Signed by Defendant Dr. Lawrence Farwell and evaluator Mindfire Technology



# Litigation Support and Consulting Services Agreement

This Litigation Support and Consulting Services Agreement (the "Agreement") is made and effective __November 19, 2022__ ,

**BETWEEN CLIENTS:**

  __Dr. Lawrence A. Farwell__ ("Dr. Farwell"), an individual residing in the state of __Washington__, its head office located at:

  Street Address:  28375 Sandy Beach Lane NE, PO Box 547
  City, State, Zip:  Kingston, WA 98346

  **and:**
  __Brainwave Science, Inc.__ ("BWS"), a corporation organized and existing under the laws of the state of __Massachusetts__, its head office located at:

  Street Address:  257 Turnpike Road
  City, State, Zip:  Southborough, MA 10001

**Collectively, "Farwell" and "BWS" shall be referred to herein as "Clients."**

**AND:**  **Mindfire Consulting Group, LLC, dba Mindfire Technology** ("Mindfire"), a corporation organized and existing under the laws of the Utah, with its head office located at:

    872 W Heritage Park Boulevard, Suite 200
    Layton, UT, 84041

## 1. LITIGATION SUPPORT AND CONSULTING SERVICES

Litigation Support and Consulting Services (the "Services") when used in this Agreement consist of the performance of professional services that include but are not limited to software and technical consultation, technical strategy, courtroom strategy, courtroom testimony, source code analysis, source code comparison, manual and automated system analysis, creating analysis tools, writing code, source code abstraction, filtration and comparison, documentation, reporting, document review and document examination. Specifically, Mindfire will perform the Services as outlined within the "Scope of Work" within Attachment A hereto with personnel described in Attachment B hereto.

## 2. CLIENTS' RESPONSIBILITIES

Clients may need to perform certain activities in order for Mindfire to fulfil its responsibilities under this Agreement including but not limited to meetings or interviews in person or by other electronic means, granting access to requirements, specifications, documents, files, test accounts, test devices, app store accounts, third party accounts and software demos and testing. Unnecessary or unreasonable delays attributable directly to Clients which result in additional costs to Mindfire are subject to additional compensation to Mindfire.

3. TERM OF THE AGREEMENT

This Agreement is effective as of the date it is signed by all parties. The terms and conditions of the Agreement will remain in effect until terminated by either party. In no event shall this Agreement be in effect for more than five (5) years unless both parties execute an amendment which extends the term of this Agreement. The expiration of this Agreement shall not affect the obligations of either party to the other with respect to those obligations established under this Agreement. Dr. Farwell, BWS, or Mindfire may terminate this Agreement for any reason upon prior written notice.  All parties agree that they will give as much notice as possible in the event of early termination of this agreement.

4. SURVIVAL BEYOND COMPLETION

The provisions herein and Services performed under this Agreement as well as confidentiality, use, indemnification, assignment, reproduction, warranty, ownership, return or destruction shall survive the delivery of the Services and the payment of associated charges.

5. CONFIDENTIALITY AND SECURITY OF THE SYSTEMS

    I. DR FARWELL AND MINDFIRE

Dr. Farwell and Mindfire each acknowledge that all material and information which has or will come into the possession and knowledge of each in connection with this Agreement or the performance hereof, consists of confidential and proprietary data, whose disclosure to or use by third parties could be damaging. Both parties, therefore, agree to hold such material and information in strictest confidence, not to make use thereof other than for the performance of this Agreement, to release it only to individuals requiring such information, and not to release or disclose it to any other party, except as approved by the parties or required by law.  For the purposes of this provision, BWS is a "third party."

    II. BWS AND MINDFIRE

BWS and Mindfire each acknowledge that all material and information which has or will come into the possession and knowledge of each in connection with this Agreement or the performance hereof, consists of confidential and proprietary data, whose disclosure to or use by third parties could be damaging. Both parties, therefore, agree to hold such material and information in strictest confidence, not to make use thereof other than for the performance of this Agreement, to release it only to individuals requiring such information, and not to release or disclose it to any other party, except as approved by the parties or required by law. For the purposes of this provision, Dr. Farwell is a "third party."

6. NON-DISCLOSURE / CONFIDENTIALITY

    I. DR FARWELL AND MINDFIRE

This Agreement shall govern the conditions of disclosure by Dr. Farwell to Mindfire of certain "Confidential Information" including but not limited to prototypes, drawings, data, trade secrets and intellectual property relating to the business of Dr. Farwell.

With regard to the Confidential Information, Mindfire hereby agrees:

   A. To safeguard the information against disclosure to others with the same degree of care as exercised with its own information of a similar nature.
   B. Not to disclose the information to others, without the express written permission of Dr. Farwell, except that:
       a. which Mindfire can demonstrate by written records was previously known;

      b. which are now, or become in the future, public knowledge other than through acts or omissions of Mindfire;
      c. which are lawfully obtained by Mindfire from sources independent of Dr. Farwell;
- C. That Mindfire shall not directly or indirectly acquire any interest in, or design, create, manufacture, sell or otherwise deal with any item or product, containing, based upon or derived from the information, except as may be expressly agreed to in writing by Dr. Farwell.
- D. That the non-disclosure and confidentiality obligations of Mindfire with respect to the information shall continue for a period ending two years from the termination date of this Agreement.
- E. That the non-disclosure and confidentiality obligations of Mindfire with respect to the information shall include BWS; that is, no Confidential Information of Dr. Farwell shall be disclosed to BWS for any reason.

### II. BWS AND MINDFIRE

This Agreement shall govern the conditions of disclosure by BWS to Mindfire of certain "Confidential Information" including but not limited to prototypes, drawings, data, trade secrets and intellectual property relating to the business of BWS.

With regard to the Confidential Information, Mindfire hereby agrees:

- A. To safeguard the information against disclosure to others with the same degree of care as exercised with its own information of a similar nature.
- B. Not to disclose the information to others, without the express written permission of BWS, except that:
      a. which Mindfire can demonstrate by written records was previously known;
      b. which are now, or become in the future, public knowledge other than through acts or omissions of Mindfire;
      c. which are lawfully obtained by Mindfire from sources independent of BWS;
- C. That Mindfire shall not directly or indirectly acquire any interest in, or design, create, manufacture, sell or otherwise deal with any item or product, containing, based upon or derived from the information, except as may be expressly agreed to in writing by BWS.
- D. That the non-disclosure and confidentiality obligations of Mindfire with respect to the information shall continue for a period ending two years from the termination date of this Agreement.
- E. That the non-disclosure and confidentiality obligations of Mindfire with respect to the information shall include Dr. Farwell; that is, no Confidential Information of BWS shall be disclosed to Dr. Farwell for any reason.

### 7. CLIENTS' RIGHT TO CONTRACT FOR SIMILAR WORK

Clients reserve the right to contract with other parties for work similar to that being performed under this Agreement so long as that work does not violate its covenant of non-disclosure.

### 8. CANCELLATION

BWS and Dr. Farwell, each individually, shall have the right to cancel this Agreement at his/its option by written notice to Mindfire. In the event that BWS or Dr. Farwell elects to cancel this Agreement, BWS will pay Mindfire the amount equal to the actual time and materials charges incurred for that work so cancelled through the day of receipt of written notice of cancellation and any further work required to transfer work or services from Mindfire to Clients at the agreed upon Rate as set forth in Attachment A.

### 9. INVOICES AND PAYMENTS

In consideration of the Services to be performed hereunder BWS shall pay Mindfire as follows:

A. As full compensation for the Services performed in association with this Agreement, BWS agrees to pay Mindfire the applicable Rate per consultant engaged in the Services, as set forth in Attachment A.

B. BWS shall pay Mindfire a ("Retainer") in the amount set forth in Attachment A. Retainer will be held by Mindfire in a trust account and will not earn interest. Upon the issuance of each invoice, Mindfire is authorized to debit the amount of funds indicated on the invoice from the Retainer. Client agrees to remit the amount of the invoice to replenish the Retainer such that the Retainer account shall at all times remain positive. If the balance of the Retainer account drops below zero, Mindfire may suspend its performance of Services and delivery of any work product until the balance is restored. Final invoice will be applied against the funds in deposit. If total invoices do not exhaust the Retainer, Mindfire will refund the balance to BWS at the conclusion of the engagement and upon clearance of expected costs. Any payment made by credit card, is subject to a 2.5% credit card processing fee.

## 10. ATTORNEYS' FEES

If any dispute arises under this Agreement, the parties hereto shall negotiate in good faith to settle such dispute. If the parties cannot resolve such disputes themselves, then either party may submit the dispute to mediation by a mediator approved by both parties. If either party does not wish to abide by any decision of the mediator, they shall submit the dispute to litigation. The jurisdiction for any dispute shall be administered in Davis County, State of Utah. Prevailing party shall be entitled to attorneys' fees, court costs, accrued interest (18% per annum) in addition to any other relief it may be awarded, and any other costs to resolve such dispute.

## 11. GOVERNING LAW & JURISDICTION

This Agreement shall be governed by and construed in accordance with the laws of the state of Utah. All parties agree to the exclusive jurisdiction and venue of the Second Judicial District, Davis County Justice Court in the State of Utah.

## 12. INDEMNIFICATION INCLUSION OF COSTS

Each party hereunder agrees to indemnify the other against all losses, costs, expenses (including reasonable counsel fees) which may occur by reason of the breach of any term, provision, warranty or representation contained herein and/or in connection with the enforcement of this Agreement or any provision thereof.

## 13. ALL AMENDMENTS IN WRITING

No amendments to this Agreement shall be effective unless it is in writing and signed by duly authorized representative of all parties.

## 14. NON-SOLICITATION

Both Clients and Mindfire agree not to solicit employees or subcontractors from either party nor will solicitation be made to key business partners, suppliers, etc.

15. SEVERABILITY

If any term or provision of this Agreement is found by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the Parties shall negotiate in good faith to modify this Agreement so as to affect the original intent of the Parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

16. SUCCESSORS & ASSIGNS

This Agreement shall inure to the benefit of and be binding upon the Clients and Mindfire hereto and their respective permitted successors and permitted assigns. Mindfire shall not assign any of its rights or delegate any of its obligations under this Agreement to any person or entity without Dr. Farwell's and BWS' prior written consent, which may be given or withheld in Dr. Farwell's and BWS' sole discretion. Any purported assignment or delegation by Mindfire in violation of this Section shall be null and void and without any legal or binding effect.

17. HEADINGS

The headings of articles, sections, and subsections in this Agreement are included for convenience and reference only and do not affect the interpretation of this Agreement.

18. ENTIRE AGREEMENT

This Agreement constitutes the entire agreement between the parties with respect to the subject matter; all prior agreements, representations, statements, negotiations and undertakings are superseded hereby.

IN WITNESS WHEREOF, the parties have executed this Agreement on the dates set forth first above, with full knowledge of its content and significance and intending to be legally bound by the terms hereof.

[Signature Page Immediately Follows]

DR. FARWELL

*[signature: Lawrence A. Farwell]*

_____
Authorized Signature

Dr. Lawrence A. Farwell
_____
Print Name

MINDFIRE

*[signature]*

_____
Authorized Signature

Shane Willard
_____
Co-Founder

BRAINWAVE SCIENCE, INC.

_____
Authorized Signature

Paul F. Tomkins, In House Counsel
_____
Print Name and Title



# Attachment A

1. **RATE SCHEDULE**

    A. $500 per hour: Dr. Stephen Beard or any other testifying witness affiliated with Mindfire.

    B. $400 per hour: Any software engineer or project manager affiliated with Mindfire with more than 10 years' experience.

    C. $275 per hour: Any software engineer or project manager affiliated with Mindfire with more than three but less than 10 years' experience.

    D. $200 per hour: Any software engineer or project manager affiliated with Mindfire with less than three years' experience.

    E. $150 per hour: Any time spent by non-engineer or non-project manager professionals associated with Mindfire.

    A list of the individuals to be engaged by Mindfire in each of categories A – E is attached hereto as Attachment B.

2. **RETAINER**

    BWS shall pay Mindfire an initial Retainer in the amount of $5,000.

3. **SCOPE OF WORK**

    Mindfire to evaluate the defendants' software and determine whether it includes "confidential or proprietary information" of Brainwave Science, Inc. "Confidential or proprietary information" is defined as "any portion of the program Brainwave Science, Inc. originally submitted to Codequiry as its code," which shall constitute the code submitted by BWS to Mindfire, as per Preliminary Injunction in US District Court for the Eastern District of New York case 21-cv-4402.

    Dr. Farwell shall submit affidavits confirming that code submitted to Mindfire represents a bona fide representation of code to be demonstrated, sold or transferred by Defendant(s).  I.E. the code should be able to be compiled into executable form and should be verified as a bona fide P300-related application, and is a true and accurate copy of the code to be conveyed to  third parties. Prior to conducting the code comparison, Mindfire will conduct a preliminary review of the code submitted by Dr. Farwell. The purpose of this review is to ensure that the code submitted is able to be compiled into executable form and is verified as a bona fide P300-related application, and is a true and accurate copy of the code to be conveyed to  third parties. Mindfire shall conduct, implement, and report upon this verification in a manner to be determined by Mindfire following input from both parties.

    Pursuant to the Court's Order, the code comparison is being conducted to confirm whether the code provided by Defendant Dr. Farwell contains any portion(s) of the code submitted by Plaintiff BWS.   If Mindfire finds any portion of the code provided by Defendant Farwell to contain any significant portion(s) of the code submitted by Plaintiff BWS, Mindfire will suspend its comparison and provide a report on same to Dr. Farwell and BWS.  Otherwise, Mindfire will complete its code comparison and submit a report on the same to Dr. Farwell and BWS.

# Attachment B

## Mindfire Personnel

| Rate | Name | Qualifications |
|---|---|---|
| A $500 | Dr. Stephen Beard | Sr Software Engineer, University Instructor |
| B $400 | Nathan Zaugg | Sr Software Engineer |
| B $400 | Shane Willard | Software Executive/Business Analyst |
| C $400 | Phil Gilmore | Sr Software Engineer |
| C $400 | Tony Pitman | Sr Software Engineer |
| C $275 | Christopher Billingsley | Software Engineer |
| D $200 | | |
| D $200 | | |
| D $200 | | |
| E $150 | | |
| E $150 | | |
| E $150 | | |

# Billing Information Form

| Field | Value |
|---|---|
| Business Name | Business Name |
| Project Name | Project Name |
| Project Number/Code | Project Number |
| Project Contact Name | Project Contact Name |
| Client Project Manager (if different) | Client Project Manager |
| Physical Street Address | Physical Street Address |
| Physical City | Physical City |
| Physical State | Physical State |
| Physical Zip | Physical Zip |
| Main Phone | Main Phone |
| Alternate Phone | Alternate Phone |
| Main Email | Main Email |
| Additional Email | Additional Email |
| Billing Point of Contact | Billing POC |
| Billing POC Main Phone | Billing POC Main Phone |
| Billing POC Alternate Phone | Billing POC Alternate Phone |
| Billing POC Email | Billing POC Email |
| Other | Other |