# Paul Forrest Tomkins, Esq.
11 Broadway, Suite 615, New York, NY 10004
607-221-1279 - pault@pftlaw.com

November 30, 2022

Honorable Brian M. Cogan
United States District Court Judge
U.S. Eastern District, New York
225 Cadman Plaza East
Brooklyn, NY 11201
**VIA ECF Filing**

                                          RE:    Brainwave Science, Inc. v. Arshee, Inc. et al
                                                     Case Number:  1:21-cv-04402-BMC

Dear Judge Cogan,

The undersigned represents Plaintiff Brainwave Science, Inc. ("Brainwave" or "Plaintiff") in the above-captioned matter. Plaintiff respectfully requests a pre-motion conference in connection with Plaintiff's anticipated motion for partial summary judgment in accordance with III(A)(2) of the Your Honor's Individual Practices.

### I.    Factual Background

Brainwave is in the business of developing and marketing technology solutions to international government agencies, and their respective vendors, in the National Security, Counterterrorism, Border Security, Human and Drug Trafficking, Criminal Justice, and Immigration Control sectors. Defendant Dr. Thierry Maison (hereinafter "Maison") served as the Chief Technology Officer for Brainwave from June 2013 to February 2019[1]. Defendant Dr. Lawrence A. Farwell (hereinafter "Farwell") served as Brainwave's Chief Scientific Officer from 2012 until November 2016.

The undisputed facts show that Brainwave has developed a technology to assist authorities in conducting humane questioning of subjects and exonerating wrongfully accused or convicted persons. The technology, iCognative®, involves measuring "P300" brainwave responses to confirm that certain information is or is not present within a person's brain. The underlying technology utilizing P300 "brainwaves" is not proprietary to Brainwave. However, the proprietary system developed by Brainwave has successfully addressed a number of problems which had previously prevented the effective use of P300-related technology by field agents. For instance,

---

[1] Brainwave Science was initially formed as Brainwave Science, LLC on or about August 1, 2012. On or about September 22, 2016, Brainwave Science, LLC was converted to a corporation under Delaware Law. The successor corporation, Brainwave Science, Inc. assumed all liabilities of, and was assigned all assets owned by, Brainwave Science, LLC. Brainwave Science, LLC and Brainwave Science, Inc. are collectively referred to herein as "Brainwave".

the code and algorithms developed by Brainwave's technology team, led by Maison, eliminated "noise" which could provide false positive or negative responses.

As Chief Technology Officer, Maison led Brainwave's Development Team's efforts in refining the code and algorithms used by Brainwave's system and provided "back end" programming. Maison also served as the architect for Brainwave's user interfaces. Maison acknowledges that, during his five and a half years of full-time employment with Brainwave, he and his two full-time assistants, and three part-time contractors, created a program consisting of approximately one million lines of code. Maison admits that "90 percent" of the code he created for Brainwave consisted of "open source" software. Maison further admits that the work performed by he and his team primarily consisted of locating appropriate pieces of code, "stitching" (integrating) the code together and testing the code.

It is also undisputed that, on September 23, 2013, Maison entered into an Employment Agreement, Non-Disclosure and Non-Competition Agreement and Confidentiality and Rights Agreement with Brainwave which provided that all inventions, "know-how" etc. developed by Maison in the course of his employment remain the property of Brainwave. Defendants further acknowledge that, in February 2019, Maison entered into a Separation Agreement with Brainwave wherein Maison, in exchange for substantial consideration, acknowledged his continuing obligation(s) to comply with the terms of the afore-referenced agreements.

Maison admits that in late 2019, following his separation from employment from Brainwave, he obtained a copy of the entirety of Brainwave's one million lines of code and utilized the code to create a system for Farwell. Maison admits that he recognized the code as Brainwave's code when he found it online. Maison claims the code had been posted in a public directory by unknown person(s). Maison claims that he replaced approximately 20% of Brainwave's code with alternate code before conveying the code to Farwell. Farwell has admitted to receiving the code from Maison and thereafter utilizing the code within his own system. Farwell has admitted that he incorporated portions of Brainwave's code, obtained from Maison in late 2019, within software he thereafter conveyed or sold to international clients and associates including the Forensic Science Laboratory, Delhi and the University of Canterbury, Christchurch, New Zealand.

II. **Plaintiff is entitled to partial summary judgment with respect to liability as there is no genuine dispute as to any material fact that Defendants violated the Defend Trade Secrets Act.**

The Defend Trade Secrets Act ("DTSA") provides, in relevant part that "[a]n owner of a trade secret that is **misappropriated** may bring a civil action under this subsection…. 18 U.S.C. § 1836(b)(1) (emphasis added). The term "**misappropriation**" includes, in relevant part

(A) **acquisition** of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(B) **disclosure** or **use** of a trade secret of another without express or implied consent by a person who—
    (i) used improper means to acquire knowledge of the trade secret [or]

>(ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
>>(I) derived from or through a person who had used improper means to acquire the trade secret;
>>(II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret [or]
>>(III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret…(18 U.S.C. §1839(5)(A-B) (emphasis added).

Maison, by knowingly acquiring [downloading] Plaintiff's proprietary code, committed a misappropriation of Plaintiff's Trade Secrets as a matter of law. By knowingly using Plaintiff's proprietary code to create code for Farwell, and subsequently disclosing portions of Plaintiff's code to Farwell, Maison committed a misappropriation of Plaintiff's Trade Secrets as a matter of law. Farwell likewise committed a misappropriation of Plaintiff's Trade Secrets as a matter of law by acquiring Plaintiff's code from Maison and subsequently disclosing portions of Plaintiff's proprietary code to third parties.

Defendants assert that their actions fall outside the scope of the DTSA because, they claim, that "the Proprietary portion of [Plaintiff's] software was deleted and replaced with [Defendants'] development…" This justification fails as a matter of law on two fronts. First, Defendants violated the Defend Trade Secrets Act by acquiring and using "the entire [Brainwave] Source Code" – irrespective of whether they ultimately deleted those portions of the code they believed to have been created by the Plaintiff. Secondly, Defendants' purported deletion of that portion of the misappropriated system code developed by Plaintiff, even if demonstrated to be true, does not render the remaining compilation of code "in the public domain" and outside the scope of the DTSA.

The Defend Trade Secrets Act broadly defines the term "trade secret" to include "compilations" (18 U.S.C. §1839(3). "Trade secrets can "exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable trade secret. Id citing *Integrated Cash Mgmt. Serv., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 174 (2d Cir. 1990)*. Even assuming, *arguendo*, that code acquired, used and disclosed by Defendants omitted every line of the code created by Plaintiff, the remaining <u>compilation</u> of "open source" code, "integrated" and tested by Maison himself during his five and a half years of employment with Brainwave, is a protected Trade Secret. Defendants admitted use of Plaintiff's source code in building their system – as opposed to locating, assembling and compiling their own source code from publicly available "open source" repositories – demonstrates that the compilation offered Defendants a competitive advantage.

Based upon the foregoing, Plaintiff respectfully submits that Plaintiff is entitled to partial summary judgment with respect to liability as there is no genuine dispute as to any material fact that Defendants Farwell and Maison violated the Defend Trade Secrets Act.

The undersigned remains available at the Court's convenience.

  Respectfully submitted ,

*Paul F. Tomkins*
_____
Paul F. Tomkins, Esq.
*Attorney for Plaintiff*
*11 Broadway, Suite 615*
*New York, NY 10004*
*(607) 221-1279*

cc:    Brain Fingerprinting Foundation
       **VIA ECF AND EMAIL**: brainwave@larryfarwell.com

       Dr. Lawrence Farwell
       **VIA ECF AND EMAIL**: brainwave@larryfarwell.com

       Dr. Thierry Maison
       **VIA ECF AND EMAIL:** me@thierrymaison.com

       Andrew S. Black, Esq.
       **VIA ECF AND EMAIL:** gelbesq@aol.com