UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

BRAINWAVE SCIENCE, INC.

Plaintiff

- against -

ARSHEE, INC., DR. LAWRENCE A. FARWELL,
DR. THIERRY MAISON and BRAIN
FINGERPRINTING FOUNDATION

                Defendants.

----------------------------------------------------------- X

**FILED
in the Clerk's Office
U.S. District Court,
EDNY, Brooklyn
Dec 30, 2022, 6:41 PM
Pro Se Office via
Box.com**
*rec. in p drive 1/10/23 rg

Letter from Defendant Dr. Lawrence A. Farwell confirming compliance with Court's Order of December 19, 2022 regarding providing software to Mindfire.

Civil Action No.: 21-cv-4402 (BMC-RLM)

1

Honorable Brian M. Cogan
United States District Court Judge
U.S. Eastern District, New York

Dear Judge Cogan:                                                              December 30, 2022

I, Dr. Lawrence A. Farwell, am a defendant in this case. I am writing to report my compliance with your orders.

This Court's Preliminary Injunction ordered as follows:

"Defendants must take any and all commercially-practicable actions to recall or replace any software containing plaintiff's 'confidential or proprietary information' from third parties;"

"Defendants must provide to plaintiff, at plaintiff's sole expense, a report from an independent third party confirming that any P300-related software demonstration, sale, update, or transfer by defendants does not include plaintiff's 'confidential or proprietary information.'"

Defendants and Plaintiff have executed a contract with Mindfire Technology to conduct the necessary software testing and analysis and provide said report.

This Court's Order of December 19, 2022 ordered as follows:

"Dr. Farwell is ORDERED to provide Mindfire with all P300-related software demonstrations, sales, updates, or transfers conveyed to third parties *from 2019 to the present*. He must do so by January 15, 2023."

I am writing to confirm my compliance with both the applicable sections of the Preliminary Injunction and the cited provision of the Court's Order of December 19, 2022.

I have provided said software to Mindfire in the following two ways.

Some of the software is embedded in the Microsoft Visual Studio / .NET environment and resides in Dr. Maison's TFS, to which I no longer have access. For software that is developed in that environment, an account of the software that is adequate for a valid test – including, among other things, which actual program is being subjected to the testing – cannot be obtained except by directly accessing the TFS where the software resides. In this case, the software resides in Dr. Maison's TFS. Without direct access to Dr. Maison's TFS, Mindfire cannot conduct a valid test, and cannot produce a valid report that specifies what software was actually tested.

I have requested Dr. Maison to provide access to his TFS to Mindfire. This is a simple process that only takes a few minutes. I understand that Dr. Maison has communicated with Mindfire to obtain the necessary information from them to grant them access.

The remainder of my software, which is outside the Visual Studio / .NET / TFS environment, I have uploaded to Dropbox and provided Mindfire with access to it there.

For Brainwave Science's software, the access that is necessary for Mindfire is conduct its testing is BWS TFS (which is separate from Dr. Maison's TFS). Mindfire's software testing and analysis can begin as soon as BWS provides Mindfire access to its BWS TFS.

Addendum A provides information on terminology for future reference that may help to clarify future communications.

Sincerely,

*Lawrence A. Farwell*

Dr. Lawrence A. Farwell
Defendant

2

## Addendum A: A Note on Terminology Regarding the Term "P300-Related"

The term "P300-related" is overly broad to describe the software at issue in this case, is ambiguous when applied to my inventions and research, and could potentially cause confusion.

The P300 is a specific brain response that was discovered in the 1960s and has been studied in tens of thousands of research studies and publications.

In the 1980s I created two major inventions involving the P300. Only one of these is at issue in the present case. The present case is about my invention of Brain Fingerprinting, a technique I invented to detect concealed information stored in the brain. Brain Fingerprinting is a known term in the field of brainwave research and even to the general public, and in fact is in the Oxford English Dictionary since 2006. My original paper on Brain Fingerprinting has been cited in over 800 subsequent scientific publications. That invention of detecting concealed information stored in the brain is applied primarily for criminal investigations in the forensic science field, the field that Brainwave Science purports to be in.

My other P300-related invention has nothing to do with the present lawsuit and the software, science, and technology at issue here. In 1985, I invented the first brain-computer interface, whereby an individual can communicate from the brain to a computer using EEG signals. My original paper on this has been cited by five times as many scientific researchers as my first Brain Fingerprinting paper, over 4,000 citations in the scientific literature. In other words, most of the "P300-related" research I do has nothing to do with the applications, science, technology, and software at issue in this case. Although both of my inventions use the P300 brain response, only the Brain Fingerprinting software, science, and technology are it issue here, and not the brain-computer-interface invention.

The reason that this is relevant is that the term "P300-related" is overly broad to describe the science at issue here, and using it serves to confuse the issue rather than clarify it. "Brain Fingerprinting" or "brainwave-based detection of concealed information" or "P300-based detection of concealed information" are more accurate and less potentially confusing terms.

Fortunately, since 2019 I have not been extensively involved in "demonstrations, sales, updates, or transfers" – but only scientific research – regarding my P300-related invention of the brain-computer interface. Otherwise, use of the overly broad and ambiguous term "P300-related" could have resulted in voluminous extraneous and irrelevant material being introduced in this case.